UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

Case No. 3:24-cv-31

C.S., an individual,
        Plaintiff,

v.

SUBWAY        WORLDWIDE,        INC.,
DOCTOR'S        ASSOCIATES        LLC,
SUBWAY    IP    LLC,    FRANCHISE
WORLD HEADQUARTERS, LLC, GRB
INVESTMENTS, LLC, GRB SUBWAY
PROPERTIES   LLP   and   MIDWEST
SUBWAY DEVELOPMENT, LLP,
        Defendants.
_____/

_____

**MOTON OF DEFENDANTS SUBWAY WORLDWIDE, INC., DOCTOR'S
ASSOCIATES LLC, FRANCHISE WORLD HEADQUARTERS, LLC, AND SUBWAY IP
LLC TO DISMISS COMPLAINT UNDER FED. R. CIV. P. 8 AND 12(b)(6)**

_____

Nina Greene
ngreene@venable.com
W. Barry Blum
bblum@venable.com
Michael D. Joblove
mdjoblove@venable.com
VENABLE, LLP
100 Southeast Second Street, 44th Floor
Miami, Florida 33131
*Attorneys for Subway Worldwide, Inc.,
Doctor's Associates, LLC, franchise World
headquarters, LLC and Subway IP LLC*

**TABLE OF CONTENTS**

REFERENCES AND ABBREVIATIONS.......................................................v

I.     INTRODUCTION .............................................................................1

II.    BACKGROUND AND COMPLAINT .............................................1

    A.    The Complaint is a "shotgun" and "kitchen sink" pleading" that violates Rule 8(a) ...............................................1

    B.    Rangel's and Plaintiff's employment at the Jamestown Restaurant.......................2

    C.    The Jamestown Franchise Agreement ....................................3

    D.    The North Dakota DAA..........................................................4

    E.    The Franchisee Defendants.....................................................5

    F.    Defendants SWI and FWH: The Complaint does not plead any specific act, statement, communication, contract, or conduct by either Defendant SWI or Defendant FWH....................................5

    G.    Defendant SIP: The only allegation of specific conduct or communication by Defendant SIP is contradicted and disproven by the website relied on and embedded in the Complaint ...........6

    H.    Defendant DAL: The pleaded legal conclusions and characterizations of the Jamestown Franchise Agreement and the North Dakota DAA are contradicted and disproven by the actual documents referred to and embedded in the Complaint ..........8

    I.    The Complaint mischaracterizes the DAA relied upon and embedded in the Complaint...........................10

    J.    The Complaint mischaracterizes the Confidential Operations Manual relied upon and embedded in the Complaint ........12

III.    LEGAL ARGUMENT.........................................................13

    A.    The Complaint is a "kitchen sink" or "shotgun" pleading that violates Rule 8 and does not fairly apprise each Defendant of the claims against it .....................13

    B.    The Complaint fails in light of the established *Twombly* and *Iqbal* standards ................14

C.    The claims against the Subway Defendants all rest on the Franchisee Defendants or their employees being "agents" of the Subway Defendants; but the Complaint fails to plead facts that plausibly show the existence of an agency relationship under North Dakota law..........................15

1.    The Complaint does not plead facts supporting the conclusion that the Franchisee Defendants or their employees were actual agents of the Subway Defendants...............................................16

2.    The Complaint does not plead facts supporting the conclusion that the Franchisee Defendants or their employees were ostensible agents of the Subway Defendants...............................................17

3.    The Complaint fails to plead the requirements of "joint employment," a doctrine never applied in the context of the claims made here and inconsistent with North Dakota law......................18

D.    Count I: The Complaint fails to state claims under the TVPRA against the Subway Defendants..........................................................................20

1.    The Complaint fails to plead facts that the Subway Defendants—SWI, FWH, and SIP—knowingly benefitted from their participation in a venture that violated the TVPRA ................22

2.    The Complaint fails to plead the other elements of a TVPRA claim against any of the Subway Defendants ...............................................22

E.    Counts II-V: The negligence claims fail because the Complaint does not plausibly plead a "duty" owed to Plaintiff by any of the Subway Defendants ...........................................................................................25

F.    Counts VI-VII: Because Rangel was not an employee or agent of the Subway Defendants, the Complaint fails to plead claims against the Subway Defendants based on their vicarious liability for Rangel's intentional misconduct ...........................................................................26

IV.    CONCLUSION...........................................................................................27

## <u>TABLE OF AUTHORITIES</u>

*Argabright v. Rodgers*,
2003 ND 59, 659 N.W.2d 369 ...................................................................................16

*Barbie v. Minko Construction, Inc.*,
2009 ND 99, 766 N.W.2d 458 ...................................................................................25

*Basin Electric Power Cooperative v. Tri-State Generation & Transmission Ass'n*,
2022 WL 18622225 (D.N.D. Oct. 31, 2022) .............................................................15

*Binstock v. Fort Yates Public School District No. 4*,
463 N.W.2d 837 (N.D. 1990) ....................................................................................27

*Carpenter v. Rohrer*,
714 N.W.2d 804 (N.D. 2006) ....................................................................................17

*Lundstrom v. Holiday Hospitality Franchising, LLC*,
2023 WL 4424725 (D.N.D. May 22, 2023)..................................................17, 20-24

*Davis v. Ricketts*,
765 F.3d 823 (8th Cir. 2014) ..............................................................................18-19

*Doan ex rel. Doan v. City of Bismarck*,
2001 ND 152, 632 N.W.2d 815 .................................................................................26

*Doe #1 v. Red Roof Inns, Inc.*,
21 F.4th 714 (11th Cir. 2021) .............................................................................21-25

*Doe 1 v. Red Roof Inns, Inc.*,
2020 WL 1872335 (N.D. Ga. Apr. 13, 2020), *aff'd*, 21 F.4th 714 (11th Cir. 2021) ...................23

*Engelhardt v. S.P. Richards Co.*,
472 F.3d 1 (1st Cir. 2006)..........................................................................................20

*Firefighters Local 642 v. City of Fargo*,
321 N.W.2d 473 (N.D. 1982) ....................................................................................17

*Gurman v. Metro Housing & Redevelopment Authority*,
842 F. Supp. 2d 1151 (D. Minn. 2011).................................................................13, 14

*Hanover Insurance Co. v. Ameribuilt Buildings, Inc.*,
617 F. Supp. 3d 1057 (D.N.D. 2022)..........................................................................25

*H.G. v. Inter-Continental Hotels Corp.*,
489 F. Supp. 3d 697 (E.D. Mich. 2020).................................................................24-25

*Hughes v. City of Cedar Rapids*,
840 F.3d 987 (8th Cir. 2016) .....................................................................................15

*Lagerquist v. Stergo*,
2008 ND 138, 752 N.W.2d 168 .............................................................................16, 17

*Minter v. Ferny Properties, LLC*,
2022 WL 3348163 (D.N.D. Aug. 12, 2022) ...............................................................15

*Nelson v. Gillette,*
1997 ND 205, 571 N.W.2d 332 .................................................................................25, 27

*Nichols v. Jones Lang LaSalle Americas, Inc.,*
2019 WL 6341649 (D. Neb. Nov. 27, 2019) ..................................................................19

*Noble v. Weinstein,*
335 F. Supp. 3d 504 (S.D.N.Y. 2018)........................................................................ 23-24

*Saltsman v. Sharp,*
2011 ND 172, 803 N.W.2d 553 ....................................................................................25

*Schriener v. Quicken Loans, Inc.,*
774 F.3d 442 (8th Cir. 2014) .......................................................................................15

*Walden v. Shire,*
2023 WL 8004434 (D.N.D. Nov. 17, 2023) ..................................................................25

*Weiland v. Palm Beach County Sheriff's Office,*
792 F.3d 1313 (11th Cir. 2015) ...................................................................................14

## **Other Authorities**:

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008,
18 U.S.C. § 1591 *et seq.*...............................................................................................20

18 U.S.C. § 1595(a) ......................................................................................................21

N.D.C.C. ch. 3-01 .........................................................................................................16

N.D.C.C. § 3-01-03........................................................................................................16, 17

Fed. R. Civ. P. 8 ....................................................................................................1-2, 13-15

Fed. R. Civ. P. 8(a) ...............................................................................................1-2, 13-15

Fed. R. Civ. P. 12(b)(6).............................................................................................4, 14-15

## REFERENCES AND ABBREVIATIONS

In this motion to dismiss and supporting memorandum, the following references and abbreviations, most taken from the usages in the Complaint. will generally be used:

1.  **Complaint** will refer to the Complaint filed as Doc. 1 in this action on February 22, 2024.

2.  **Plaintiff** will refer to the Plaintiff identified in the case caption as "C.S."

3.  **Rangel** will refer to Zeferino Carlos Rangel, the individual first identified by name at ¶ 121 of the Complaint.

4.  **GRB** will refer to the named Defendant GRB Investments, LLC, identified in the Complaint as "GRB" beginning at ¶ 33 of the Complaint.

5.  **GRB Properties** will refer to the named Defendant GRB Subway Properties, LLC, identified in the Complaint as "GRB Subway Properties" beginning at ¶ 35 of the Complaint.

6.  **Midwest** will refer to the named Defendant Midwest Investment, LLC, identified in the Complaint as "Midwest" beginning at ¶ 37 of the Complaint.

7.  **Franchisee Defendants** will, consistent with the usage beginning at ¶ 40 of the Complaint, refer collectively to the Defendants GRB, GRB Properties, and Midwest.

8.  The identified principals of the Franchisee Defendants referred to beginning at ¶¶ 34-38 of the Complaint will be referred to as follows: **B. Olson** is Brent Olson; **R. Olson** is Richard Olson; **Clark** is John Clark; and **Knoff** is Peter Knoff.

9.  **SWI** will refer to the named Defendant Subway Worldwide, Inc., identified in the Complaint as "SWI" beginning at ¶ 42 of the Complaint.

10. **DAL** will refer to the named Defendant Doctor's Associates, LLC, identified in the Complaint as "DAL" beginning at ¶ 45 of the Complaint.

11. **SIP** will refer to the named Defendant Subway IP, LLC, identified in the Complaint as

"SIP" beginning at ¶ 49 of the Complaint.

12. **FWH** will refer to the named Defendant Franchising World Headquarters, LLC, identified in the Complaint as "FWH" beginning at ¶ 53 of the Complaint.

13. **Subway Defendants** will refer collectively to the four Defendants SWI, DAL, SIP, and FWH, all collectively referred to as "Franchisor Defendants" beginning at ¶ 56 of the Complaint.

14. **Jamestown Restaurant** will refer to the franchised SUBWAY® restaurant located at 1921 8th Ave SW, Jamestown, North Dakota 58401 where Plaintiff was employed as referred to beginning at ¶ 34 of the Complaint.

15. **Jamestown Franchise Agreement** will refer to the franchise agreement entered as of October 22, 2003 by DAL (then operating as Doctor's Associates, Inc.) and B. Olson and Knoff creating the franchise relationship in connection with the Jamestown Restaurant that is referred to repeartedly in the Complaint. A copy of the Jamestown Franchise Agreement is Exhibit A hereto.

16. **North Dakota DAA** will refer to the Development Agent Agreement, DA Agr. # 669, dated as of June 26, 1990, between DAL (then operating as Doctor's Associates, Inc.) and an individual, William Cornelius, together with several addenda through October 2002, by which time Cornelius transferred his interest, rights, and obligations under the North Dakota DAA to three individuals: B. Olson, Clark, and Knoff. The North Dakota DAA is the agreement referred to repeatedly in the Complaint beginning at ¶ 97 as creating "Business Developers" or "Business Development Agents" in a territory. A copy of the North Dakota DAA is Exhibit B hereto.

## I.      INTRODUCTION

This case involves grievous wrongs intentionally inflicted on Plaintiff by her supervisor Rangel, a despicable actor who should, if justice prevails, never again set foot outside of prison. The tragic facts, however, do not support any plausible claim for relief against the four Subway Defendants, none of whom had any dealings with Plaintiff or any connection to, knowledge of, or direct or indirect role in Rangel's heinous criminal conduct and Plaintiff's resulting injury. Rangel and Plaintiff were employed to work at the Jamestown Restaurant that was operated as an independent franchise under the Jamestown Franchise Agreement signed in 2003 between DAL and B. Olson and Knoff. Neither Rangel nor Plaintiff had any contact with any Subway Defendants, and no pleaded facts show any Subway Defendants knew or had reason to know of Rangel's sinister behavior. Moreover, the Jamestown Franchise Agreement by its terms (as opposed to mischaracterizations in the Complaint) expressly provided DAL had no rights or role whatsoever as to the franchisee's employment decisions.

Neither the Jamestown Franchise Agreement nor any fact properly pleaded in the Complaint supports an alleged agency relationship between DAL and any of the Franchisee Defendants, and the Complaint surely does not plausibly plead agency between the Franchisee Defendants and the other three Subway Defendants. Nor do the facts alleged support the oft-repeated legal conclusion that all seven Defendants were "joint employers" of Rangel and Plaintiff. The Complaint thus does not plausibly plead any basis for the Subway Defendants being directly or vicariously liable for Rangel's heinous conduct that underlies the Complaint.

## II.      BACKGROUND AND COMPLAINT

### A.   *The Complaint is a "shotgun" and "kitchen sink" pleading" that violates Rule 8(a).*

1.  The Complaint spans 58 pages, includes 306 numbered paragraphs, and asserts eight

counts, all brought against all seven Defendants. It is a classic "shotgun" or "kitchen sink" complaint that never pleads specifically (as opposed to setting out legal conclusions) that any of the four Subway Defendants actually committed or is responsible for any specific wrongdoing.

2.   Instead, the Complaint uses the collective nouns "Defendants" (defined as all seven Defendants) 269 times and "[Subway] Defendants" (defined as all four Subway Defendants) 102 times. Thus, the Complaint includes 371 statements about alleged actions of either four or seven Defendants with no specificity as to which of those Defendants is actually referred to in any given instance. Compounding those pleading improprieties, the Complaint misstates the terms of the two agreements on which much of the Complaint against the Subway Defendants rests: the Jamestown Franchise Agreement and the North Dakota DAA.

3.   As such, the Complaint fails to meet the standards of Rule 8(a) requiring a Plaintiff to provide a short and plain statement of its claims that reasonably apprises each Defendant of what it is being charged with. The Complaint also incorporates and restates every allegation made in each succeeding count, another indication of a "shotgun" complaint.

### B.   Rangel's and Plaintiff's employment at the Jamestown Restaurant.

4.   The wrongdoer Rangel was not employed by any of the Subway Defendants. Rather, as the Complaint states: "Rangel was an employee and/or agent of the Franchisee Defendants acting in the scope of his employment and/or authority when he engaged in the unlawful sex trafficking." Doc. 1 ¶ 232 (allegation incorporated in every count); *see id.* ¶ 122 ("at the time the Franchisee Defendants hired . . . Rangel"); ¶ 126 ("the Franchise[e] Defendants . . . hired Rangel"); ¶ 232 ("Rangel was an employee and/or agent of the Franchisee Defendants").

5.   There are no well-pleaded allegations that any Subway Defendants were in any way involved with Rangel's hiring, training, retention, or supervision.

6.   Plaintiff also was "employed' (allegedly by Defendant GRB) to work at the Jamestown Restaurant. *Id.*  ¶ 34 ("Defendant GRB . . . operat[es] and control[s] multiple Subway restaurants in North Dakota, including the [Jamestown] restaurant . . . where Plaintiff was employed."); ¶ 36 (GRB Properties is "the landlord for Defendant GRB and the property where Plaintiff was employed"); ¶ 41 ("the three Franchisee Defendants jointly employed Plaintiff through their exercise of control over the terms and conditions of her employment."). Although the Complaint alleges the Defendant GRB operated the Jamestown Restaurant, and thus presumably employed Plaintiff, GRB was not the franchisee under the Jamestown Franchise Agreement. B. Olson and Knoff were the franchisees. *See* Exhibit A hereto.

### C.   The Jamestown Franchise Agreement

7.   DAL is a party to the Jamestown Franchise Agreement signed in 2003 giving B. Olson and Knoff, as franchisees, a license to operate the Jamestown Restaurant as a franchised SUBWAY® restaurant. The only parties to the Jamestown Franchise Agreement at any time were DAL, as franchisor, and B. Olson and Knoff, as franchisees; neither SWI, FWH, nor SIP were parties to the Jamestown Franchise Agreement. Nor were any of the three Franchisee Defendants. *See* Exhibit A hereto.

8.   The Complaint refers repeatedly to the Jamestown Franchise Agreement and purports to quote or characterize the agreement terms in several places. *See, e.g.,* Doc. 1 ¶ 62 (alleging the franchise agreement is used to "jointly operate Subway restaurants throughout North Dakota, including the restaurants owned and operated by Defendants GRB ….); ¶ 86 ("the Subway Franchise Agreement requires franchises, including the [Jamestown Restaurant] owned and operated by the [Subway] Defendants, to do business as Subway in strict accordance with the extremely long and detailed Subway 'Confidential Operation Manual'"); ¶ 91 ("the [Subway]

3

Defendants' Franchise Agreements all state that they have: the right of entry and inspection of the premises at all times . . . ."). The Complaint recites the contents of the Jamestown Franchise Agreement, and the agreement is "embraced by the pleadings," and it may be considered by the Court on this Rule 12(b)(6) motion. *See* p. 15 fn. 2 *infra.* Thus, a copy of the Jamestown Franchise Agreement is attached as <u>Exhibit A</u> hereto.

**D.  *The North Dakota DAA***

9.  DAL is also party to a Development Agent Agreement ("North Dakota DAA") that the Complaint alleges is between Defendant Midwest and DAL, making Midwest "a Subway 'Business Development Agent.'" *See* Doc. 1 ¶ 39. The Complaint refers repeatedly to the North Dakota DAA and characterizes (or mischaracterizes) the terms of the agreement in several places. *See id.* ¶¶ 39, 59, 77, 97-100, 103. Those references permit the Court to consider the actual North Dakota DAA on a Rule 12(b)(6) motion. *See* p. 15 fn. 2 *infra.*  Thus, a copy of the North Dakota DAA is attached as <u>Exhibit B</u> hereto.

10. The North Dakota DAA was originally entered into in June 1990 by DAL (then operating as Doctor's Associates, Inc.) and an individual, William Cornelius, and the parties signed several addenda through October 2002, by which time Cornelius transferred his rights and obligations under the North Dakota DAA to three individuals: B. Olson, Clark, and Knoff. *See* <u>Exhibit B</u> p. 23. At all times material to the Complaint, the only parties to the North Dakota DAA were DAL and B. Olson, Clark, and Knoff. Neither the Franchisee Defendants nor SWI, FWH, or SIP are parties to the North Dakota DAA. *See* <u>Exhibit B.</u>

11. None of the Subway Defendants has any contractual relationship with any of the Franchisee Defendants.

12. Contrary to ¶ 39 of the Complaint, Defendant Midwest is not a party to the North Dakota

DAA. *See* <u>Exhibit B</u>.

### E.  The Franchisee Defendants

13. The Franchisee Defendants are owned or managed in different combinations by B. Olson, R. Olson, Clark, and Knoff, and none of the Subway Defendants owns any interest in the Franchisee Defendants. Doc. 1 ¶¶ 33-38.

14. None of B. Olson, R. Olson, Clark, and Knoff is a member of the management team of any of the Subway Defendants. *Id.* ¶¶ 42-56.

15. Contrary to the allegations of the Complaint, the actual documents referred to in the Complaint—the Jamestown Franchise Agreement and the North Dakota DAA—show than none of the Franchisee Defendants have any contractual or legal relationship with any of the Subway Defendants related to the Jamestown Restaurant. *See* <u>Exhibit A</u> and <u>Exhibit B</u>.

### F.  Defendants SWI and FWH: The Complaint does not plead any specific act, statement, communication, contract, or conduct by either Defendant SWI or Defendant FWH.

16. Apart from 371 collective references to "Defendants" or "Franchisor Defendants," the Complaint never once alleges any action or communication attributable to either Defendant SWI or Defendant FWH. Those two Defendants are referred to directly only in ¶¶ 42-56 of the Complaint, in allegations about the corporate particulars and affiliations of the Subway Defendants.

17. The Complaint does not plead that SWI, the alleged "ultimate parent company" of Defendant DAL, *id.* ¶ 48, or FWH, "an affiliate of [the other Subway] Defendants," *id.* ¶ 54, ever contracted with or even communicated with any of the Franchisee Defendants, had any actual direct connection to the Jamestown Restaurant, or ever had any contact or communication with either Rangel or Plaintiff. *Id.* ¶¶ 48, 54.

### G. Defendant SIP: The only allegation of specific conduct or communication by Defendant SIP is contradicted and disproven by the website relied on and embedded in the Complaint.

18. The single allegation of specific conduct or communication by Defendant SIP is that a website—https://apply.mysubwaycareer.com/us/en/careers/—allegedly "published by Defendant Subway IP LLC" made "material representations relied upon by current and prospective employees like Plaintiff" about benefits of employment such as "wellness, personal growth, training, and career opportunity." Doc. 1 ¶ 25 (emphases added).

19. The Complaint does not allege Plaintiff actually visited that website. *Compare id.* ¶¶ 25-26 with *id.* ¶¶ 127-31. But the Complaint alleges the website made it "reasonable for Plaintiff to believe that she was working for a large corporate employer," a conclusion then used to assert a factually-unsupported claim of "joint employment" of Plaintiff by all seven "Defendants" reiterated throughout the Complaint. *See, e.g. id.* ¶¶ 57, 62, 67, 105, 261, 272, 282, 290.

20. The content of the website allegedly "published by Defendant" SIP is alleged, relied on, and embedded in the Complaint and is critical to the claims against the Subway Defendants; so, like the Jamestown Franchise Agreement and the North Dakota DAA, the Court may consider the actual contents of the website based on the authorities cited in footnote 2 on page 16 *infra*. Thus, copies of key provisions of the website not mentioned in the Complaint are attached as Exhibit C hereto.

21. A review of the actual website shows it is not "published by Defendant Subway IP LLC," as alleged in ¶25 of the Complaint. The website actually bears a "2019©" copyright designation (before Plaintiff was hired by the franchisee) in favor of Independent Purchasing Cooperative, Inc., a non-party that is not a corporate affiliate of any of the Subway Defendants. *See* Exhibit C pp. 1, 2, 6. In addition, the "Terms and Conditions" tab of the website (not quoted in the Complaint)

states: "Independent Purchasing Cooperative, Inc. ("IPC") owns and operates the Internet site located at www.mysubwaycareer.com (the "Site"), located on servers in the United States." *See* Exhibit C p. 7. Thus, the actual website cited in the Complaint contradicts and is repugnant to the allegations in ¶ 25 that the website includes statements about career opportunities that were "published by Defendant Subway IP LLC."

22. In addition, the actual website relied on in ¶ 25 of the Complaint contradicts the allegation in ¶ 26 that a job applicant "like Plaintiff" reasonably believed he or she was applying for a job at one of the Subway Defendants. In truth, the "Employment Application" on the website (that was last revised in 2019 and thus would have been submitted by Plaintiff if she actually applied for employment through the website) expressly informs a job applicant that he or she is applying for a job at "an independently owned and operated Subway® Restaurant" and not a job with the Subway Defendants or their affiliates. Specifically, the online Employment Application found at www.mysubwaycareer.com (the "Site") includes the following acknowledgement by the job applicant:

> I acknowledge that I am applying for employment with an independently owned and operated Subway® Restaurant. I further acknowledge that such Subway® Restaurant is a separate company and employer not associated with Independent Purchasing Cooperative, Inc., Doctor's Associates Inc. or Franchise World Headquarters, LLC and any of their subsidiaries or affiliates.

*See* Exhibit C p. 6.

23. Aside from ¶ 25, the Complaint does not specifically attribute to Defendant SIP any other act, contract, conduct, or communication regarding the Franchisee Defendants, Plaintiff, the Jamestown Restaurant, Rangel, or any other person or entity material to the issues.

### H.  Defendant DAL: The pleaded legal conclusions and characterizations of the Jamestown Franchise Agreement and the North Dakota DAA are contradicted and disproven by the actual documents referred to and embedded in the Complaint.

24. Finally, as to the franchisor DAL, the Complaint alleges DAL's business includes "executing, signing, and enforcing Franchise Agreements with franchisees." Doc. 1 ¶ 47. It then inconsistently alleges that all four "Franchisor Defendants contract with and/or have agreements with numerous franchisees . . .  including the restaurants owned and operated by Defendants GRB, Midwest, and GRB Subway Properties, i.e. the Franchisee Defendants." *Id.* ¶ 62. The documents embedded in the Complaint—the Jamestown Franchise Agreement and the North Dakota DAA—also contradict those allegations, because none of the Franchisee Defendants own or operate the franchise under which the Jamestown Restaurant operated. *See* <u>Exhibit A</u> and <u>Exhibit B</u> hereto.

25. The Complaint also alleges, without either attaching or quoting any agreement, that all franchise agreements for SUBWAY® restaurants, including the Jamestown Franchise Agreement, give DAL, or as alleged all four "Franchisor Defendants," "control of the Franchisee Defendants' employment practices and policies" enforceable by a right to terminate the franchise, including "control and authority over [the franchisee's] employees and managers, i.e. **individual hiring and firing decisions." *See id.*  ¶¶ 85, 91, 92 (emphasis in Complaint ¶ 92).

26. The Complaint does not allege Plaintiff ever reviewed or read the Jamestown Franchise Agreement or relied on it in any way in connection with who controlled her employment decisions or as to the relationship between the franchisee and any of the Subway Defendants.

27. The express terms of the Jamestown Franchise Agreement contradict the constructions of the document pleaded in the Complaint. Specifically, as to employment decisions, the Jamestown Franchise Agreement actually states as follows:

**5. YOUR OBLIGATIONS**. You [franchisees] agree to do the following:

   \*\*\*

   b.   You will operate your business in compliance with applicable laws and governmental regulations, including, but not limited to, those concerning labor, taxes, health, and safety. . . .

   c.   . . . You will recruit, hire, train, terminate, and supervise all Restaurant employees, set pay rates. and pay all wages and related amounts, including any employment benefits, unemployment insurance, withholding taxes or other sums, and we will not have any responsibility for these matters.

   \*\*\*

   n.   You will always indicate your status as an independent franchised operator and franchisee to other and on any document or information released by you in connection with the [Jamestown] Restaurant.

<u>Exhibit A</u> pp. 5, 7 ¶¶ 5b., c., n. (emphasis added).

28. Further, as to the relationship of the franchisor DAL and the franchisees, B. Olson and

Knoff, the Jamestown Franchise Agreement expressly states:

**11. OBLIGATIONS OF THE PARTIES.** The parties also agree as follows:

   \*\*\*

   a.   You [franchisees] are and will at all times be identified as a natural person and an independent contractor <u>You are not our agent, partner, or employee</u>. This Agreement does not create a partnership, joint venture, or fiduciary relationship.

*Id.* p. 10 ¶ 11a.

29. The Complaint alleges at ¶ 91 that

the "[Subway] Defendants' Franchise Agreements all state that they have:

   the right of entry and inspection of the Premises at all reasonable times and, additionally, shall have the right to observe the manner in which you are rendering your services and conducting your operations, to confer with your employees and customers, to inspect your Computer Systems select ingredients, food and non-food products, beverages, and other items, products, materials and supplies for test of content and evaluation purposes to make certain that the services, ingredients, products, materials, equipment and operations are satisfactory and meet the quality control provisions and performance standards established by us ....

Doc. 1 ¶ 91.

30. The quoted language does not appear in the actual Jamestown Franchise Agreement. *See* Exhibit A. Instead, ¶ 91 of the Complaint quotes a more recent form of franchise agreement in use at independent SUBWAY® franchised restaurants that is different from the Jamestown Franchise Agreement. Moreover, the quoted language (not in the Jamestown Franchise Agreement) does not under any reasonable reading give DAL "control and authority over [the franchisee's] employees and managers, i.e. **individual hiring and firing decisions**" as alleged in the following ¶ 92 of the Complaint.

31. In addition, there are no facts pleaded that plausibly show that any Subway Defendants other than DAL were parties to any franchise agreement related to the Jamestown Restaurant or otherwise; to the contrary, the Jamestown Franchise Agreement shows they were not. *See* Exhibit A hereto.

### I.   *The Complaint mischaracterizes the DAA relied upon and embedded in the Complaint.*

32. The Complaint also refers to (inaccurately) and relies on the North Dakota DAA between DAL and B. Olson, Clark, and Knoff to suggest the Subway Defendants through that agreement somehow exercised day-to-day control over the franchisee or were joint employers of Plaintiff or Rangel. *See* Doc. 1 ¶¶ 27, 39, 59, 77, 97, 103, 120. As an example, the Complaint characterizes the contractual relationship between DAL and its "Business Development Agent" in North Dakota [B. Olson, Clark, and Knoff], stating:

> Defendant GRB and its owners [non-parties] Brent Olson and John Clark work directly for Defendant DAL and the Franchisor Defendants as so-called "Subway Business Developers"—also referred to as "Business Development **Agents"-(**emphasis added) through which they exercise oversight, control, and authority, on behalf of the Franchisor Defendants, over all aspects of the day-to-day operation of "all Subway franchises" in North Dakota.

*Id.* ¶ 59.

33. However, GRB is not a party to the DAA. Nor is any other of the Franchisee Defendants.

10

Also, the DAA, contrary to the characterization in the Complaint, does not address operation of a particular SUBWAY restaurant or the hiring or supervision of employees at a franchised store. Rather, the DAA, that the Complaint represents as showing that "Defendant GRB and its owners Brent Olson and John Clark work directly for Defendant DAL and the Franchisor Defendants," actually states:

> WHEREAS, the Development Agent [B. Olson, Clark, and Knoff] desires to act as the representative of the Company to work as an independent contractor to develop and service the Company's stores in [a specified] Territory . . .
>
> ***
>
> IT IS MUTUALLY AGREED:
>
> 2) The Development Agent agrees to:
>
> ***
>
> b) be responsible for all activities involved in the developing and servicing of stores, including but not limited to . . . inspecting stores, and providing business advice to franchisees. . . [and]
>
> ***
>
> o) inspect all units in the Territory at least once per month . . .
>
> ***
>
> 7) The parties hereto further agree that:
>
> a) the development agent is and shall be an independent contractor and not an employee of the company.

See Exhibit B pp. 2, 5, 8 ¶¶ 2, 7.

34. The DAA thus expressly provides that the Development Agent [B. Olson, Clark, and Knoff], and not any representative of DAL or the Subway Defendants, is responsible for visiting and inspecting North Dakota SUBWAY® locations. Id. pp. 2, 5 ¶ 2.

35. The DAA also provides that, in exchange for performing its obligations under the DAA, the Development Agent will be paid 50% of all initial franchisee fees and one-third of all royalties paid for locations developed under the DAA. Id. p. 6 ¶ 3.

36. Nothing in the DAA states any of the Franchisee Defendants, their principals, or any other

person or entity "work directly for" DAL or any of the Subway Defendants. *See generally id.*

37. There also is no allegation in the Complaint Plaintiff was actually employed by, or that she believed she was employed by any party other than the operator of the Jamestown Restaurant. Nor does the Complaint allege Plaintiff ever read or even knew about the DAA.

### J. The Complaint mischaracterizes the Confidential Operations Manual relied upon and embedded in the Complaint.

38. The Complaint also refers to, without attaching, the Confidential Operations Manual ("COM") DAL provides to franchisees under any franchise agreement to suggest the terms of the COM somehow communicated that DAL and its franchisees are in a principal and agent relationship. *See* Doc. 1 ¶¶ 86-90, 99. Because the contents of the COM are recited in the Complaint and relied on in support of the claims made, the actual document may be considered by the Court on a motion to dismiss based on the cases in at p. 15 fn. 2 *infra*. Thus, select provisions of the COM are attached hereto as Exhibit D.[1]

39. The Complaint asserts the COM contains "business policies and practices the Franchisor Defendants direct the Franchisee Defendants to exclusively employ and follow, including methods, forms, and policies for the hiring and supervision of Subway restaurant managers and supervisors." Doc. 1 ¶ 88.

40. The COM does not, as the Complaint alleges, direct franchisees to follow any employment procedure or policy. Rather, it shares general "best practices" and confirms the importance of having and enforcing policies related to employment. Specifically, in Section 8, addressing "Hiring

---

[1] The COM is, as its title suggests, confidential. Subway Defendants have attached at Exhibit D the selected portion of the COM necessary for this motion and that will not compromise SIP's confidential and proprietary business information. Should this Court require additional information from the COM, SIP requests that this Court allow it to file any such information under seal.

and Training," the COM expressly states that the information provided are "recommendations"
that the franchisee is "not required to follow." *See* <u>Exhibit D</u> pp. 5-7.

41. The mischaracterization of the COM in the Complaint cannot plausibly support any duty
owed by the Subway Defendants with regard to the franchisee or any employees at the Jamestown
Restaurant, including Rangel and Plaintiff.

### III.   LEGAL ARGUMENT

#### A.   *The Complaint is a "kitchen sink" or "shotgun" pleading that violates Rule 8 and does not fairly apprise each Defendant of the claims against it.*

Plaintiff has filed a "kitchen sink" or "shotgun" pleading that asserts, across 58 pages and 306
paragraphs, eight counts against all seven Defendants, without ever pleading specifically (as
opposed to setting out legal conclusions) which of the Subway Defendants committed or is
responsible for any specific wrongdoing. *See Gurman v. Metro Hous. & Redevelopment Auth.*, 842
F. Supp. 2d 1151, 1153 (D. Minn. 2011). "Such complaints are pernicious for many reasons." *Id.*
(citing *Davis v. Coca–Cola Bottling Co. Consol.,* 516 F.3d 955, 981 (11th Cir. 2008)). Here, the
Complaint attributes wrongdoing 371 times to either the collective seven "Defendants" or the four
"Franchisor Defendants," and it includes at most five allegations anywhere specifically directed to
a specific Defendant. That is especially problematic here because the Complaint names as
Defendants parties that have no connection to the key agreements, and then claims every
Defendant is liable for the actions of every other Defendant. The Complaint thus improperly "shifts
onto the defendant[s] and the court the burden of identifying the plaintiff's genuine claims and
determining which of those claims might have legal support." *Gurman*, 842 F. Supp. 2d at 1153
(criticizing plaintiffs for having "essentially coughed up an unsightly hairball of factual and legal
allegations, stepped to the side, and invited the defendants and the Court to pick through the mess
and determine if plaintiffs may have pleaded a viable claim or two."). The Complaint also sets out

221 common allegations that are incorporated into every count, and also every count incorporates

every allegation preceding it. That is a surefire sign of another type of "shotgun pleading." *See*

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015) ("we have

identified four rough types or categories of shotgun pleadings. The most common type—by a long

shot—is a complaint containing multiple counts where each count adopts the allegations of all

preceding counts, causing each successive count to carry all that came before and the last count to

be a combination of the entire complaint.")

In this case, the "kitchen sink" pleading makes it burdensome to address each count against

each Defendant, because the franchisor DAL, which has the only contractual relationships at all

related to the Jamestown Restaurant is crudely lumped together with the other three Subway

Defendants who have no contractual relationships at all with any other party, and all four Subway

Defendants are being sued based on the actions of all of the Franchisee Defendants, none of whom

are the franchisee or Development Agent related to the Jamestown Restaurant. The Complaint is

deficient simply because "plaintiff['s] attorneys have utterly failed to comply with Rule 8."

*Gurman*, 842 F. Supp. 2d at 1152.

**B.** ***The Complaint fails in light of the established _Twombly_ and _Iqbal_ standards.***

The standards for determining a Rule 12(b)(6) motion to dismiss are well-known:

> To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual
> matter, accepted as true, to state a claim to relief that is plausible on its face." A
> plaintiff must show that success on the merits is more than a "sheer possibility."
>
> > Plausibility is established when the plaintiff pleads factual content that
> > allows the court to draw the reasonable inference that the defendant is
> > liable for the misconduct alleged. Threadbare recitals supported by
> > conclusory statements, however, do not suffice to meet the plausibility
> > requirement.
>
> A complaint does not need detailed factual allegations, but it must contain more
> than labels and conclusions. [T]he Court must accept all factual allegations in the

14

> complaint as true, except for legal conclusions or "formulaic recitation of the
> elements of a cause of action." The determination of whether a complaint states
> a claim upon which relief can be granted is "a context-specific task that requires
> the reviewing court to draw on its judicial experience and common sense." "[T]he
> complaint should be read as a whole, not parsed piece by piece to determine
> whether each allegation, in isolation, is plausible."

*Minter v. Ferny Props., LLC*, No. 3:21-CV-210, 2022 WL 3348163, at *1–2 (D.N.D. Aug. 12,

2022) (Welte, C.J.) (dismissing negligence claim for failure to plead duty) (citations omitted).

"While *Twombly*'s plausibility standard is not a 'probability requirement,' 'it asks for more

than a sheer possibility that the defendant has acted unlawfully.'" *Basin Elec. Power Coop. v. Tri-*

*State Generation & Transmission Ass'n*, No. 3:21-CV-220, 2022 WL 18622225, at *9 (D.N.D.

Oct. 31, 2022) (Welte, C.J.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 556 (2009)). The Complaint here fails to plead facts, as opposed

to "[t]hreadbare recitals supported by conclusory statements," that support a plausible inference

that any of the Subway Defendants are "liable for the misconduct alleged."[2] The claims against

the Subway Defendants should be dismissed.

### C. The claims against the Subway Defendants all rest on the Franchisee Defendants or their employees being "agents" of the Subway Defendants; but the Complaint fails to plead facts that plausibly show the existence of an agency relationship under North Dakota law.

Agency is a threshold and dispositive issue as to the claims against the Subway Defendants

that must be addressed at the outset of the substantive arguments. Every claim made against the

Subway Defendants rests on a contention that either the "Franchisee Defendants," their principals,

---

[2] When considering a Rule 12(b)(6) motion, a court may consider "materials that are necessarily
embraced by the pleadings" without converting the motion to one for summary judgment.
*Schriener v. Quicken Loans, Inc*., 774 F.3d 442, 444 (8th Cir. 2014). "Those materials include
'documents whose contents are alleged in a complaint and whose authenticity no party questions,
but which are not physically attached to the pleadings.'" *Hughes v. City of Cedar Rapids*, 840 F.3d
987, 998 (8th Cir. 2016) (citation omitted).

or in some instances Plaintiff and Rangel were "agents" or "employees" of the Subway Defendants. *E.g.,* Doc. 1 ¶¶ 233, 236, 239, 245, 250, 260-62, 271-73, 281-83, 289-90, 296-97, 300. "An agency relationship is created when one person, called the principal, authorizes another, called the agent, to act for the principal in dealing with third persons." *Lagerquist v. Stergo*, 238 ND 138, ¶ 752 N.W.2d 168, 172. Under North Dakota law, the creation of agency is addressed by statute, N.D.C.C. ch. 3-01, and agency can be either actual or ostensible (also called apparent agency). *See* N.D.C.C. § 3-01-03. The Complaint, however, fails to allege <u>facts</u> supporting any such "agency" relationship under North Dakota law, and that failure is fatal to the claims against the Subway Defendants.

**1. The Complaint does not plead facts supporting the conclusion that the Franchisee Defendants or their employees were actual agents of the Subway Defendants.**

"An agency is actual when the agent really is employed by the principal." *Argabright v. Rodgers*, 2003 ND 59, ¶ 6, 659 N.W.2d 369, 371 (citing N.D.C.C. § 3-01-03). No facts are pleaded here showing that Rangel was "really employed by" any of the Subway Defendants. Instead, the Complaint pleads he was employed by "the Franchisee Defendants." *See* p. 2 *supra* ¶¶ 3-4. But there is no "actual agency" pleaded between the Franchisee Defendants and the Subway Defendants. Nor could there be, because the agreements relied on and embedded in the Complaint—the Jamestown Franchise Agreement and the North Dakota DAA—show there are no actual relationships whatsoever between any of the Franchisee Defendants and any of the Subway Defendants. *See* p. 3-4 *supra* ¶¶ 7-11 & <u>Exhibit A</u> and <u>Exhibit B</u> hereto. So, there is no basis for any inference of an actual agency between the Subway Defendants and the Franchisee Defendants or Rangel.

Moreover, as detailed above, both the Jamestown Franchise Agreement between DAL and B. Olson and Knoff (but not any of the Franchisee Defendants) and the North Dakota DAA between

DAL and B. Olson, Clark, and Knoff (but not any of the Franchisee Defendants) expressly provide that the parties are independent contractors and not agents of partners of each other. Those relationships between DAL do not support an "actual agency" between DAL and the Franchisee Defendants. *Cf. Lundstrom v. Holiday Hosp. Franchising, LLC*, No. 1:22-CV-056, 2023 WL 4424725, at *9 (D.N.D. May 22, 2023) (rejecting claim against franchisor based solely on argument that hotel franchisees were agents of the franchisor). Nor do they plausibly show that Rangel "really [was] employed by" the Subway Defendants.

### 2. The Complaint does not plead facts supporting the conclusion that the Franchisee Defendants or their employees were ostensible agents of the Subway Defendants.

To state a claim based on "ostensible" or "apparent" authority under North Dakota law, a plaintiff must plead that "the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent, who really is not employed by him." N.D.C.C. § 3-01-03. "An apparent or ostensible agency must rest upon <u>conduct or communications of the principal which, reasonably interpreted, causes a third person to believe that the agent has authority to act for and on behalf of the principal.</u>" *Lagerquist,* ¶10, 752 N.W.2d at 172 (emphasis added); *Carpenter v. Rohrer*, 2006 ND 111, ¶23, 714 N.W.2d 804, 812 (N.D. 2006) (same); *Firefighters Local 642 v. City of Fargo*, 321 N.W.2d 473, 475 (N.D. 1982) ("Ostensible authority occurs when the principal's conduct or communication, reasonably interpreted, causes a third person to believe that the agent was acting for and on behalf of the principal."). "Agency is never presumed." *Carpenter*, ¶23, 714 N.W.2d at 812.

Thus, a claim of "ostensible" agency requires well-pleaded facts of actions <u>by the alleged principals</u>—here the Subway Defendants—that reasonably caused a third party [here Plaintiff] to believe the purported "agent" [here Rangel] had authority to act for the Subway Defendants. There are no allegations that any Subway Defendants ever communicated at all with Plaintiff, let alone

did something to cause her to believe Rangel (or any of the Franchisee Defendants) was actually authorized to act on behalf of the Subway Defendants. Indeed, the only allegations of actual agreements between any parties go to Jamestown Franchise Agreement and the North Dakota DAA, to which only DAL is a party (but not any of the Franchisee Defendants), and both expressly disclaim any agency relationship with the individual counter-parties B. Olson, Clark, and Knoff. In any event, there are no allegations Plaintiff ever read or relied on either of those agreements.

Moreover, because "ostensible agency" can arise only based on the principals' conduct or communications that cause a plaintiff's reasonable reliance on the existence of the purported agency relationship, any allegations that Rangel claimed he worked for "Subway" or could advance Plaintiff's career "at Subway" are immaterial because they are not "<u>conduct or communications of the principal</u>." So too is the allegation at ¶ 25 of the Complaint about statements on a website published by another party. No well-pleaded facts support either element of ostensible agency as to any of the Subway Defendants, and the Court should disregard the repeated legal conclusions asserted that either the Franchisee Defendants, their principals, or Rangel were "agents" (actual or ostensible) of the Subway Defendants.

**3. The Complaint fails to plead the requirements of "joint employment," a doctrine never applied in the context of the claims made here and inconsistent with North Dakota law.**

To overcome the lack of facts supporting an agency relationship between the Subway Defendants and either Rangel or Plaintiff under North Dakota law, the Complaint invokes in legal conclusions permeating the pleading a legal theory of "joint employment." *See* Doc. 1 ¶¶ 57, 62, 67, 105, 261, 272, 282, 290. It does so presumably to create some duty owed to Plaintiff by the Subway Defendants on which the negligence claims in Counts II-IV could be based. "Joint employment" is a concept invoked under Title VII to expand the definition of "employer" across

"an integrated enterprise" when interpreting certain federal statutes. *See Davis v. Ricketts*, 765 F.3d 823, 827 (8th Cir. 2014) ("In certain circumstances, employees of separate entities may be combined for purposes of meeting the employee numerosity requirement" under 42 U.S.C. 2000e-b). As the Eighth Circuit explained: "An integrated enterprise is 'one in which the operations of two or more employers are considered so intertwined that they can be considered the single employer of the charging party." *Id.* (quoting in part EEOC Compliance Manual § 2–III(B)(1)(a)(iii)) (citing *Baker v. Stuart Broad. Co.,* 560 F.2d 389, 391–92 (8th Cir.1977) ("[The entities] are of such coagulation that they must be considered one.")); *accord Nichols v. Jones Lang LaSalle Am., Inc.*, No. 8:19-CV-35, 2019 WL 6341649, at *3 (D. Neb. Nov. 27, 2019) (same). North Dakota has never recognized the "joint employment" doctrine as a means of imputing to a franchisor or its affiliates respondeat superior liability for intentional tort claims committed by a franchisee's employee. Thus, "joint employer" does not apply here.

But even if the Court were to consider an unprecedented application of a new and controversial doctrine, the Complaint fails to plead that the day-to-day operations of the Subway Defendants were so intertwined with the day-to-day operations of the Franchisee Defendants that the seven entities were an "integrated enterprise" as is required for a determination of joint employment. As the Eighth Circuit clarified:

> In determining whether separate entities should be treated as an integrated enterprise, we consider the following factors: (1) the degree of interrelation between the operations, (2) the degree to which the entities share common management, (3) the centralized control of labor relations, and (4) the degree of common ownership or financial control over the entities. In situations where the court is asked to disregard the separate and distinct form of legal entities, the standards are narrow and rigorous, imposing a presumption of corporate separateness.

*Davis*, 765 F.3d at 827 (citations omitted). None of those factors are plausibly pleaded in the Complaint to support that the Subway Defendants and the Franchisee Defendants were "an

19

integrated enterprise."

Specifically, an interrelation of operations analysis "examines whether the two entities share managers and personnel, payroll, insurance programs, office space, and equipment. It also requires evaluation of whether the entities are operated as a single unit, and whether the entities' functions and purpose are similar or distinct." *Id.* (citations omitted). The Complaint does not allege, nor could it, that the Subway Defendants share corporate functions, headquarters, or administration with the three Franchisee Defendants. To the contrary, the Complaint alleges the Subway Defendants are located in Connecticut, and the Franchisee Defendants are North Dakota entities located in North Dakota. Those facts show no interrelation of operations. *See Engelhardt v. S.P. Richards Co.,* 472 F.3d 1, 6–7 (1st Cir. 2006) (finding no interrelation of operations when companies had separate headquarters, human resource departments, records and record keeping, and work sites which fulfilled distinct functions), cited in *Davis*, 765 F.3d at 827. Likewise, no pleaded facts show common management or ownership between the Franchisee Defendants and the Subway Defendants. Only B. Olson, R. Olson, Clark, and Knoff variously own and operate the Franchisee Defendants, Doc. 1 ¶¶ 34-40, and none own or manage the Subway Defendants. Moreover, the Jamestown Franchise Agreement and the North Dakota DAA require both the franchisees and the Development Agents to operate in North Dakota and not in Connecticut. *Id.* ¶¶ 43-56. Thus, the Complaint fails to plead any factual basis supporting its novel theory of "joint employment" of Rangel or Plaintiff.

### D. Count I: The Complaint fails to state claims under the TVPRA against the Subway Defendants.

Count I of the Complaint is brought under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 18 U.S.C. § 1591 *et seq.* (the "TVPRA"), a federal statute providing a civil cause of action against "those who facilitate [sex] trafficking." *See Lundstrom*,

2023 WL 4424725, at *3 (dismissing TVPRA claims against hotel franchisor where complaint

failed to set forth allegations of fact imputing knowledge to the franchisor about sex trafficking

occurring at an independently operated franchise). The TVPRA provides:

> An individual who is a victim of a violation of this chapter may bring a civil action
> against the perpetrator (or whoever knowingly benefits, financially or by
> receiving anything of value from participation in a venture which that person
> knew or should have known has engaged in an act in violation of this chapter) in
> an appropriate district court of the United States and may recover damages and
> reasonable attorneys fees.

18 U.S.C. § 1595(a) (emphasis added). To state a "beneficiary claim under Section 1595(a)"

against a party other than the perpetrator, a plaintiff must allege

> that the defendant (1) knowingly benefited, (2) from taking part in a common
> undertaking or enterprise involving risk and potential profit, (3) that undertaking or
> enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had
> constructive or actual knowledge that the undertaking or enterprise violated the
> TVPRA as to the plaintiff.

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021); *see Lundstrom*, 2023 WL

4424725, at *3 (to state a claim under § 1595(a), a plaintiff must plead ultimate facts demonstrating

that a particular "defendant (1) knowingly benefit[ted] financially or by receiving anything of

value (2) from participation in a venture that defendant knew or should have known has engaged

in sex trafficking."). The Complaint fails to plausibly plead facts that satisfy the elements of a

TVPRA claim against the Subway Defendants.

In *Lundstrom*, 2023 WL 4424725, Judge Hovland identified a "knowing benefit" as one of two

elements of a TVPRA claim, with the second being "participation in a venture that defendant knew

or should have known has engaged in sex trafficking." *Id.* at *3. In *Doe #1*, 21 F.4th 714, the

Eleventh Circuit set out the same first element, but separated the remaining considerations into

three elements: "(2) . . . taking part in a common undertaking or enterprise involving risk and

potential profit, (3) that . . . violated the TVPRA as to the plaintiff; and (4) . . . constructive or

actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Id.* at 726. Despite the differing articulations, both the *Lundstrom* and *Doe #1* courts reached the same conclusions: the complaints failed to state TVPRA claims against franchisors.

1. **The Complaint fails to plead facts that the Subway Defendants—SWI, FWH, and SIP—knowingly benefitted from their participation in a venture that violated the TVPRA.**

The first element, "knowingly benefitting," presents the lowest pleading threshold, but the Complaint cannot clear even that first hurdle as to three of the Subway Defendants. Courts have held that hotel franchisors receiving royalties from room rentals connected to sex trafficking can satisfy the "knowing benefit" element, even if the franchisor is unaware of the alleged trafficking. *Lundstrom*, 2023 WL 4424725, at *6 (citing cases). But, even under that broad interpretation, there is no plausible claim Defendants SWI, FWH, and SIP—none of which ever received any royalties—"knowingly benefitted" from participating in a venture that involved in alleged trafficking. The Jamestown Franchise Agreement shows DAL was the only party to an agreement that was paid royalties or other fees paid by the franchisees, and neither SWI, FWH, nor SIP ever received any payments. Thus, the Complaint fails to plead even the first element of a TVPRA claim against Defendants SWI, FWH, or SIP.

2. **The Complaint fails to plead the other elements of a TVPRA claim against any of the Subway Defendants.**

The Complaint does not plead facts sufficient to meet the other elements of a TVPRA claim, as those elements require the Subway Defendants' knowingly participated in the trafficking activities or, at minimum, had a reason to know specifically that Plaintiff was being trafficked as alleged. *See Doe #1*, 21 F.4th at 725 ("the Does must plead sufficient facts to plausibly allege that the venture in which the franchisors participated committed one of these crimes against them. . . . [T]he defendant must have either actual or constructive knowledge that the venture—in which it

voluntarily participated and from which it knowingly benefited—violated the TVPRA <u>as to the</u> <u>plaintiff</u>.); *Lundstrom*, 2023 WL 4424725, at *8 (a plaintiff must plausibly establish that a franchisor "should have known about what happened to this particular plaintiff [and] the Defendant/Franchisor participated in the sex trafficking of the plaintiff."). Under the TVPRA, "[a]ssociation [with a venture] alone cannot establish liability; instead, knowledge and some participation in the sex trafficking act itself must be shown" to plead a TVPRA claim. *Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-CV-03840-WMR, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020), *aff'd,* 21 F.4th 714 (11th Cir. 2021). Thus, the district court in *Doe 1* dismissed a TVPRA claim because plaintiff "failed to allege that the Franchisor and Corporate Affiliate Defendants ever dealt with the Plaintiff herself, [or] made any allegations that would make such interactions plausible." *Id.* There are no such allegations here meeting those elements of claims against the Subway Defendants.

In addition to three of the Subway Defendants (SWI, FWH, and SIP) neither participating in nor benefitting at all from the alleged "venture," there is nothing to support the pleaded conclusions that all four Subway Defendants "knew or should have known" the Plaintiff was being trafficked. The Complaint thus has not "plausibly alleged that [even the franchisor DAL] participated in a venture that violated the TVPRA." *Lundstrom*, 2023 WL 4424725, at *7. As Judge Hovland explained, to survive a motion to dismiss, a plaintiff "must establish that the "franchisor knew or should have known about the sex trafficking at its [branded locations] in North Dakota." *Id.* A complaint under the TVPRA must allege "specific conduct that furthered the sex trafficking venture [that] must have been undertaken with the knowledge, or in reckless disregard of the fact, that it was furthering the alleged sex trafficking." *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) ("Mere membership in the venture is insufficient if [the defendant] is ignorant of

the venture's sex trafficking activities"); *accord H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 704 (E.D. Mich. 2020) ("A plaintiff must plead facts showing that the defendant knew or should have known of sex trafficking *by the particular venture in which the defendant allegedly participated*."). That showing could be by "a direct agreement between [the] sex trafficker [Rangel] and [DAL], the franchisor," or other specific conduct by each specific defendant. *Id.* But, of course, no such agreement or any other conduct attributed to any of the Subway Defendants is alleged here.

Pleading other instances of trafficking at other franchised locations will not support a TVPRA claim, because the statute requires that the franchisor knew or should have known about the specific trafficking of the plaintiff. Thus, allegations that a "franchisor was on notice about the prevalence of sex trafficking generally at its hotels for years" were "not sufficient to show that the Defendant franchisor should have known about what happened to this particular plaintiff." *Lundstrom*, 2023 WL 4424725, at *8 (citing *S.J. v. Choice Hotels Int'l, Inc*, 473 F.Supp. 3d 147, 154 (E.D.N.Y. 2020) (§ 1595(a) "speaks in singular terms – 'participation in *a* venture which that person ... should have known *has* engaged in *an* act in violation of this chapter' . . .  Because plaintiff has not alleged that the franchisor defendants had the requisite knowledge of a specific sex trafficking venture, they cannot be held directly liable under the TVPRA."). Likewise, in *Doe #1*, allegations that "the franchisors investigated the individual hotels, took remedial action when revenue was down, read online reviews mentioning prostitution and crime occurring generally at the hotels, and controlled the training of managers and employees who were allegedly involved in facilitating sex trafficking at the hotels" were insufficient to state a TVPRA claim against the franchisors because the pleaded facts did not plausibly "suggest that the franchisors participated in an alleged common undertaking or enterprise with the Does' sex traffickers or others at the hotel

24

who violated the statute." *Doe #1*, 21 F.4th at 727; *accord H.G.*, 489 F. Supp. 3d at 704 (allegation about "facts that should have alerted Defendants' *franchisees* to sex trafficking by the venture" was insufficient to plead that franchisor-defendant knew or should have known about trafficking).[3] Thus, the irrelevant and improper allegations in ¶¶ 7-24 and 107-120 of the Complaint cannot save the claims against the Subway Defendants.

### E. Counts II-V: The negligence claims fail because the Complaint does not plausibly plead a "duty" owed to Plaintiff by any of the Subway Defendants.

Counts II-V sound in negligence related to the hiring, retention, and supervision of Rangel. Under North Dakota law, the elements of a negligence claim are "(1) duty; (2) breach of that duty; (3) causation; and (4) damages." *Barbie v. Minko Constr., Inc.*, 2009 ND 99, ¶ 8, 766 N.W.2d 458, 461. "Generally, the existence of a duty is a preliminary question of law for the court to decide." *Saltsman v. Sharp*, 2011 ND 172, 803 N.W.2d 553, 558 (quotation omitted). "If no duty exists, there is no negligence." *Hanover Ins. Co. v. Ameribuilt Bldgs., Inc.*, 617 F. Supp. 3d 1057, 1070 (D.N.D. 2022) (Welte, C.J.) (quoting *Rogstad v. Dakota Gasification Co.*, 2001 ND 54, ¶ 12, 623 N.W.2d 382, 385).

The negligence claims pleaded in the Complaint necessarily rest on duties allegedly owed to Plaintiff by her "employer," *see* Doc. 1 ¶¶ 245, 250, 266, 285, because "[n]egligent hiring, training, and supervision claims are direct negligence claims <u>against the employer</u> of a tortfeasor." *Walden v. Shire*, No. 1:22-CV-086, 2023 WL 8004434, at *2 (D.N.D. Nov. 17, 2023) (emphasis added) (citing *Nelson v. Gillette*, 1997 ND 205, ¶ 39, 571 N.W.2d 332, 340). But none of the Subway Defendants were Plaintiff's employer. Rather, the Complaint alleges both Plaintiff and Rangel

---

[3] There is a minimally logical connection between a hotel business and an alleged sex trafficking "venture" because the specific product or service offered—hotel rooms—are used in the actual trafficking. That nexus does not exist in a retail restaurant operation, as the trafficking activity is wholly-unrelated to the food service and products by the operating business.

were employed by the operator of the Jamestown Restaurant. *See* pp. 2-3 *supra* ¶¶ 4-6. And, as demonstrated above, the pleaded conclusions that the Subway Defendants were "joint employers" are not supported by facts or law. Nor are there any allegations that the Subway Defendants were actually involved in hiring, supervising, or retaining Rangel, or in hiring Plaintiff; indeed, there is no allegation that either Plaintiff or Rangel ever communicated with or met any representative of any of the Subway Defendants.

Likewise, because there are no plausible facts showing the franchisees B. Olson and Knoff were agents of the Subway Defendants, and were at most independent contractors under the Jamestown Franchise Agreement and North Dakota DAA with DAL, or that Plaintiff was even employed by the actual franchisees, no negligence claim can lie against the Subway Defendants. Under North Dakota law, "an employer is not liable for the negligence of its independent contractor, unless the employer retains control over the independent contractor's work." *Doan ex rel. Doan v. City of Bismarck*, 2001 ND 152, ¶ 20, 632 N.W.2d 815, 822 (citing *Rogstad,* 2001 ND 54, ¶ 14, 623 N.W.2d at 386). The Jamestown Franchise Agreement establishes that DAL expressly did not retain control over the franchisee's work related to its hiring, supervision, or termination of the franchisee's employees. *See* <u>Exhibit A</u>. So, no negligence claims are stated based on the Subway Defendants' vicarious liability for any of the Franchisee Defendants.

**F. Counts VI-VII: Because Rangel was not an employee or agent of the Subway Defendants, the Complaint fails to plead claims against the Subway Defendants based on their vicarious liability for Rangel's intentional misconduct.**

The intentional tort claims in Counts VI-VII all rest on respondeat superior: the Subway Defendants are being charged with liability for the intentional torts of Rangel, variously alleged to be the "agent and employee" of all of the Subway Defendants. Doc. 1 ¶¶ 289, 296, 303, 304. "Respondeat superior is a longstanding doctrine in [North Dakota] jurisprudence. . . . [T]he

doctrine means <u>an employer is liable for tortious acts of its employees</u> committed while they are acting within the scope of employment." *Nelson*, 1997 ND 205, ¶ 10, 571 N.W.2d 332, 334. *See Binstock v. Fort Yates Pub. Sch. Dist. No. 4*, 463 N.W.2d 837, 841–42 (N.D. 1990) ("As a general rule, entities are liable for torts committed <u>by their agents</u> while acting within the scope of their employment."). Because, as discussed fully at pages 16-21 *supra*, the Complaint fails to plausibly plead that Rangel was the "employee" or "agent" of the Subway Defendants (or that all of the Defendants were "joint employers" of Rangel), the Subway Defendants cannot be vicariously liable for Rangel's intentional wrongdoing. The intentional tort claims in Counts VI-VIII fail as to the Subway Defendants.

## IV.    CONCLUSION

The Complaint asserts claims against the Subway Defendants without pleading facts, as opposed to conclusions, that any of the Subway Defendants can plausibly be responsible for the intentional and outrageous acts of Rangel, an employee at the Jamestown Restaurant.   The Complaint never alleges any relationship at all between the Jamestown Restaurant and three of the Subway Defendants—SWI, FWH, and SIP. And, as to DAL, the Complaint mischaracterizes the terms of the Jamestown Franchise Agreement and the North Dakota DAA, and even misstates the parties to those agreements. The Complaint fails to state any claims against the Subway Defendants and should be dismissed as to them.

VENABLE, LLP
Miami Tower, 44th Floor
100 Southeast Second Street
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310


By:   /s/ *Nina Greene*            
        Nina Greene
        ngreene@venable.com
        W. Barry Blum
        bblum@venable.com
        Michael D. Joblove
        mdjoblove@venable.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF portal on this 14th day of March 2024 and will be served on all counsel of record appearing in the case via transmission of Notices of Electronic Filing generated by CM/ECF.


        /s/*Nina Greene*          
            Attorney

**SERVICE LIST**

*C.S. v. Subway Worldwide, Inc., Doctor's Associates LLC, Subway IP LLC, Franchise World Headquarters, LLC, GRB Investments, LLC, GRB Subway Properties LLP and Midwest Subway Development, LLP*
Case No. 3:24-cv-31

Michael D. Joblove, Esq.
mdjoblove@venable.com
Nina Greene, Esq.
ngreene@venable.com
W. Barry Blum, Esq.
bblum@venable.com
Venable, LLP
100 Southeast Second Street, 44th Floor
Miami, Florida 33131
Telephone:  305.349.2300
*Attorneys for Defendants Subway Worldwide, Inc., Doctor's Associates, LLC, franchise World headquarters, LLC and Subway IP LLC*

Benjamin E. Thomas, Esq.
bthomas@woldlaw.com
Mark A. Beauchene, Esq.
mbeauchene@woldlaw.com
Wold Johnson, P.C.
500 Second Avenue North
Suite 400
P.O. Box 1680
Fargo, ND 58107
*Attorneys for Plaintiff*

Brittany Deane Salyers, Esq.
salyers@halunenlaw.com
Pamela A. Johnson, Esq.
p.johnson@halunenlaw.com
Kyle P. Hahn, Esq.
hahn@halunenlaw.com
Paul M. Schinner, Esq.
schinner@halunenlaw.com
Halunen Law
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
*Attorneys for Plaintiff*