# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA
# EASTERN DIVISION

| | | |
|---|---|---|
| C.S., an individual, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | Case No. 3:24-cv-31 |
| | ) | |
| Subway Worldwide, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

Defendants Subway Worldwide, Inc., Doctor's Associates, LLC, Franchise World Headquarters, LLC, and Subway IP LLC (collectively, the "Subway Defendants") move to dismiss Plaintiff C.S.'s complaint for failure to state a claim upon which relief can be granted under Federal Rule of Procedure 12(b)(6). Doc. 10. C.S. opposes the motion. Doc. 26. For the reasons below, the motion is denied.

I.      **FACTUAL BACKGROUND**

The facts that are the catalyst for this case are tragic. See Doc. 1. In May of 2022, C.S. (at the time, a 17-year-old high school student) applied for a job at a Subway restaurant in Jamestown, North Dakota. Id. She was hired as a crew member/sandwich artist. Id. Also working at the same Subway was Zeferino Carlos Rangel. Id. Rangel was a supervisor and supervised C.S. Id. He was also a convicted child sex offender. Id. While they worked together, Rangel repeatedly drugged and sexually assaulted C.S.[1] Id. Eventually, C.S. disclosed the ongoing abuse to law enforcement.

---

[1] The abuse alleged in the complaint is voluminous and detailed. Doc. 1. There is no need to recount the details of the abuse for the purposes of this motion, as the factual allegations are accepted as true.

Id. Rangel was arrested and charged for the lengthy abuse and assaults, pleaded guilty, and was sentenced to 25 years in prison. Id.

This case is the civil follow up to Rangel's criminal conviction. And it presents a story of complex corporate structure and questions of civil liability for the abuse suffered by C.S. while at work. Subway is a national fast-food restaurant that franchises its restaurant concept to franchisees that own and operate local Subway restaurants across the country. Id.

As alleged, the Jamestown Subway where C.S. and Rangel worked was one of those franchises. Id. The Jamestown Subway franchise is owned and co-managed through three closely related limited liability partnerships (and named Defendants): Midwest Subway Development, LLP; GRB Investments, LLP; and GRB Subway Properties, LLP. Id. This group of Defendants are the Franchisee Defendants. Id. These three entities are owned and managed by partners Brent Olson, Richard Olson, Peter Knoff, and John Clark. Id.

The other group of Defendants are the Subway (or Franchisor) Defendants. Id. This group includes the parent company Subway Worldwide Inc., Doctor's Associates, LLC, Franchise World Headquarters, LLC, and Subway IP LLC. Id. These entities cover the corporate headquarters for Subway. Id.

The start of the link between the Franchisee Defendants and the Subway Defendants is the Jamestown Franchise Agreement. Id. at 16-23. But beyond the Franchise Agreement, the complaint alleges that the Franchisee Defendants, through its partners, were controlled and directed by the Subway Defendants. Id. For example, Brent Olson and Clark (partners of the Franchisee Defendants) were Business Development Agents ("BDA") of the Subway Defendants. Id. As alleged, BDAs are compensated and directed by executives of the Subway Defendants, provide day-to-day support for operations, and ensure compliance with the Subway Defendants'

2

operations policies and guidance. Id. The complaint also alleges that the Subway Defendants' human resources consultants routinely work with the BDAs to provide HR direction and oversight for franchise restaurants. Id.

C.S. alleges she reasonably believed that she worked for the Subway Defendants. Id. at 6, 14. She alleges that the Subway Defendants develop common tools, procedures, and policies that are used at all Subway restaurants throughout the country, including North Dakota and the Jamestown Subway. Id. at 16-23. As alleged, the Subway Defendants and the Franchisee Defendants act as a single integrated enterprise and "operates, directs, and controls most every aspect" of the Jamestown Subway, including its employment practices and procedures, training, and hiring. Id. Relatedly, the complaint alleges that all Subway franchises are required to do business in strict compliance with manuals "designed, maintained, provided, and enforced" by the Subway Defendants. Id.

Given this alleged level of connection, control, and direction between the Subway Defendants and the Franchisee Defendants, C.S. seeks to hold the Defendants civilly liable for her terrible abuse. So, C.S. alleges eight claims against all the Defendants: (1) violation of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (the "TVPRA"), 18 U.S.C. § 1591; (2) negligence; (3) negligent hiring; (4) negligent retention; (5) negligent supervision; (6) assault and battery; (7) sexual assault; and (8) false imprisonment. The Subway Defendants move to dismiss all claims for failure to state a claim upon which relief can be granted. Doc. 10.

## II.    LAW AND DISCUSSION

Federal Rule of Civil Procedure 8(a) requires a pleading to contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." But a complaint may be

3

dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Gorog v. Best Buy Co., 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." Id. at 570.

    A.    **Agency Liability and/or Joint Employer Liability**

To start, the Subway Defendants move to dismiss the tort claims because they argue the complaint contains no factual allegations of either actual or ostensible (apparent) agency, or a joint employer relationship—between the Subway Defendants and the Franchisee Defendants or its employees. Doc. 10 at 16. They also point to specific language in the Jamestown Franchise Agreement that disclaims any agency or joint employer relationship.

"Agency is generally a question of fact." Stockman Bank of Montana v. AGSCO, Inc., 2007 ND 26, ¶ 11, 728 N.W.2d 142 (citing Red River Commodities, Inc. v. Eidsness, 459 N.W.2d 805, 810 (N.D. 1990)). An agency relationship is created when one person, called the principal, authorizes another, called the agent, to act for the principal in dealing with third persons. Argabright v. Rodgers, 2003 ND 59, ¶ 6, 659 N.W.2d 369 (citing N.D. Cent. Code § 3-01-01). Agency is either actual or ostensible. Id. (citing N.D. Cent. Code § 3-01-03). "An agency is actual when the agent really is employed by the principal." Id. "An agency is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent, who really is not employed by him." Id. "An apparent or ostensible agency must rest upon conduct or communications of the principal which, reasonably interpreted, causes a third

4

person to believe that the agent has authority to act for and on behalf of the principal." Id. (citing Krank v. A.O. Smith Harvestore Prods., Inc., 456 N.W.2d 125, 128 (N.D. 1990)).

Here, the complaint alleges, over the course of several pages, that the Subway Defendants operated, directed, and controlled the Jamestown Subway and the Franchisee Defendants. Doc. 1 at 16-23. It also alleges the Subway Defendants and the Franchisee Defendants act as a single integrated enterprise. Id. Beyond that, the complaint also alleges the Subway Defendants' human resources consultants were involved with the employment practices, policies, and procedures for its franchises, including the Jamestown Subway. Id. C.S. alleges she believed she was employed by the parent company that includes the Subway Defendants. Id. These facts are sufficient to support a plausible agency relationship between the Franchisee Defendants and Subway Defendants. The level of control in an agency analysis is key, and the level of control is a material question of fact dependent on discovery and development of the factual record. See Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 598 (8th Cir. 2009). That is also why the contractual agency disclaimer in the Jamestown Franchise Agreement is not dispositive of the issue at this point. See Hersh v. CKE Restaurant Holdings, Inc., 2022 WL 407124, at * 10 (E.D. Miss. Feb. 10, 2022) ("Of course, such a contractual disclaimer is not dispositive."). Whether C.S. will ultimately be able to establish an agency relationship is a highly intensive fact question that cannot be resolved at this point in the case. See Johnson v. McDonald Corp., 542 F. Supp. 3d 888, 891 (E.D. Miss. 2021) ("[t]aken as true, these allegations are sufficient to raise the reasonable expectation that discovery will reveal evidence of a joint employer or agency relationship.").

A similar analysis applies to the joint employer theory of liability alleged by C.S. Id. C.S. alleges a joint employer relationship between the Subway Defendants and the Franchisee Defendants as an alternative theory of liability to agency liability. Doc. 1 at 16-23. And "there is

generally nothing wrong with pleading in the alternative." Codan Forsikring A/S v. ConGlobal Indus., Inc., 315 F. Supp. 3d 1085, 1091 (N.D. Ill. 2018). The same facts supporting the agency theory would also be used to support the joint employer theory. So, the legal question of whether such a relationship actually exists and whether it can be used to support liability need not be addressed at this stage of the case. C.S. has alleged sufficient facts to support a plausible agency and/or joint employer relationship between the Subway Defendants and the Franchisee Defendants, and the motion to dismiss is denied as to those theories of liability.

  **B.**  **TVPRA Claim**

The Subway Defendants also move to dismiss the TVPRA claim against them. The TVPRA prohibits the sex trafficking of children or adults by force, fraud, or coercion. 18 U.S.C. § 1591. In 2008, Congress amended the TVPRA to create a private right of action that allows a victim to bring a civil case against anyone that knowingly benefits from trafficking ventures. Pub. L. No. 108-193, 117 Stat. 2875 (2008). That private right of action states:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). To bring a plausible knowing beneficiary claim under 18 U.S.C. § 1595(a), a plaintiff must allege facts that a defendant (1) "knowingly benefit[ted] financially or by receiving anything of value" (2) from participation in a venture that defendant "knew or should have known has engaged in" sex trafficking. 18 U.S.C. § 1595(a); see A.B. v. Marriott Int'l, Inc., 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020). A plaintiff may satisfy these elements either directly or indirectly. A plaintiff may directly show that the defendant's own acts, omissions, and state of mind establish each element. Or a plaintiff may indirectly attribute to the defendant the acts, omissions, and state

6

of mind of an agent of the defendant. See A.B. v. Hilton Worldwide Holdings, Inc., 484 F. Supp. 3d 921, 2020 WL 5371459, at *6 (D. Ore. Sept. 8, 2020); B.M. v. Wyndham Hotels & Resorts, Inc., 2020 WL 4368214, at *4 (N.D. Cal. July 30, 2020).

Here, the issue is largely the indirect liability of the Subway Defendants based on an ostensible (apparent) agency theory that the Subway Defendants knew or should have known about Rangel's sexual abuse of C.S. On that issue, Lundstrom v. Holiday Hospitality Franchising, LLC, 2023 WL 4424725 at *9 (D.N.D. May 22, 2023) is instructive. Lundstrom offers a useful spectrum analysis of TVPRA allegations in a Rule 12(b)(6) context. On the one hand, Ricchio v. McLean, 853 F.3d 553 (1st Cir. 2017), represents the end of the spectrum that supports direct liability. In that case, the knowledge of hotel owner as to the trafficker and the trafficking operation was obvious and clear. Lundstrom, 2023 WL 4424725, at *7. On the other end of the spectrum is Lawson v. Rubin, 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018). There, a TVPRA claim based on indirect liability was dismissed because the plaintiff only alleged that the defendant should have known about the alleged trafficking based on a general duty to inspect the property. In Lundstorm, the court stated that the case fell somewhere in between Ricchio and Lawson. But because the plaintiff had only alleged facts "tending to show that the franchisors' involvement was limited to uniformity and standardization of the brand" and did not rely on any representations by the defendant, the court granted the motion to dismiss.

This case, when compared with Lundstrom, presents a few more substantive facts as to the agency relationship between C.S., the Franchisee Defendants, and the Subway Defendants. For example, C.S. alleges she informed the Franchisee Defendants that she needed help and wanted to transfer locations to get away from Rangel. Doc. 1 at 36. She alleges she reasonably believed she worked for Subway and the Subway Defendants. Id. at 6, 14. She also alleges more than

"uniformity" and "standardization" of the brand; she alleges the Subway Defendants exercised significant control over the day-to-day operations of the Jamestown Subway and the Franchisee Defendants. Id. at 16-23. This case is also distinguishable from the hotel and hospitality cases, as Rangel was C.S.'s supervisor in an employment setting, as opposed to a hotel franchise renting rooms to the general public. While the facts do not rise to the directly liability level in Ricchio, the complaint does allege more substantive facts as to ostensible (apparent) agency than those in Lawson and Lundstrom. And again, agency is a fact question that requires discovery and further development of the record. On this complaint, C.S. has pleaded facts sufficient to support a plausible TVPRA claim against the Subway Defendants.

### III.  CONCLUSION

C.S. has alleged sufficient facts that when taken as true support plausible claims for relief against the Subway Defendants. Discovery and a developed record are needed to determine the fact questions presented in her claims. For those reasons, the Subway Defendants' motion to dismiss (Doc. 10) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 12th day of February, 2025.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court