**UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| C.S. an individual,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Subway Worldwide, Inc.,<br>Doctor's Associates, LLC,<br>Subway IP, LLC,<br>Franchise World Headquarters, LLC,<br>GRB Investments, LLC,<br>GRB Subway Properties, LLP, and<br>Midwest Subway Development, LLP, , Brent<br>Olson, individually and as<br>owner/franchisee/development agent, Peter<br>Knoff, individually and as owner/franchisee,<br>and John Clark, individually and as<br>development agent<br>(all Defendants collectively d/b/a "Subway"),<br><br>　　　　　Defendants. | Case No. 3:24-cv-31-PDW-ARS<br><br><br>**DEFENDANTS GRB INVESTMENTS, LLC, GRB SUBWAY PROPERTIES, LLP, AND MIDWEST SUBWAY DEVELOPMENT, LLP'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Defendants GRB Investments, LLC, GRB Subway Properties, LLP, and Midwest Subway Development, LLP (collectively, "Franchisee Entity Defendants"), as for their timely Answer to Plaintiff's ("Plaintiff") First Amended Complaint, filed as Doc. 67, ("Complaint") in the above-captioned action, deny each and every allegation set forth in the Complaint except as hereinafter admitted, qualified, explained, clarified, or otherwise pleaded, and specifically answer as follows:

## ALLEGED INTRODUCTION

1.　　　This case is about Defendants' destruction of a young, vulnerable, human life.

**ANSWER:**　　Franchisee Entity Defendants deny the allegations in this paragraph.

2.      Plaintiff, a teenager excited about her first real job as a "sandwich artist" at local Subway in Jamestown, North Dakota, was repeatedly raped by her 51-year-old supervisor, both at work and outside of work, often after being plied with drugs.

**ANSWER:** Franchisee Entity Defendants admit that Plaintiff was a teenager when she started working as a sandwich artist at a Subway franchise located in Jamestown, North Dakota. Franchisee Entity Defendants deny the remaining allegations in this paragraph.

3.      Defendants, through their respective roles in the Subway Franchise System ("Subway"), are responsible for the unspeakable harm plaintiff suffered and continue to suffer because it was due to their actions and inactions that Plaintiff's rapist was hired despite being a known, registered sex offender recently released from prison with a conviction record of sexually assaulting children.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

4.      Subway is "one of the world's largest restaurant brands,"[1] boasting over 20,000 restaurants in the United States and thousands more around the globe. It casts itself as a good corporate citizen, touting its "core values of boldness, empowerment, and accountability," while purporting to be "doing what's right and conducting business with the highest standards of ethics, honesty, and integrity."[2]

---

[1] https://www.subway.com/en-us/aboutus

[2] Subway Vendor Code of Conduct (April 25, 2022).

2

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

5.      Sadly, and avoidably, as set forth herein, Subway creates, fosters, or otherwise permits to exist an unsafe and sexually abusive working environment for its employees, including Plaintiff.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

6.      Subway fosters this toxic culture at the highest levels, as illustrated by the fact that the person Subway held out as the face of its business for more than a decade, Jared Fogle, is a prolific child sexual predator and pornographer who has been sentenced to more than 15 years in prison for his crimes.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph regarding Jared Fogle. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny. Franchisee Entity Defendants deny the remaining allegations in this paragraph.

7.      As noted in a recent publication, during his long association with Subway, Fogle filmed more than 300 commercials and made countless personal appearances at Subway's direction and on its behalf. And they were wildly successful, as confirmed by Subway's former

chief marketing officer, who "attributed one-third to one-half of [Subway's] sales growth to Jared" during the time of its association with him.[3]

> **ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

8.      Having made a literal fortune (several fortunes, actually) off of a 15-year relationship with an individual Subway knew or should have known to be a child sexual predator, Subway cannot now credibly deny that the sexual exploitation and abuse of employees at its restaurants, including Plaintiff, is not foreseeable, particularly given that Fogle is far from the only predator employed or enabled by Subway, which, in an effort to protect its profits and public image, has long turned a blind eye to the incidents of sexual harassment, assault, or violence that have been, and continue to be, committed by, between, and among employees of its restaurants across the country.

> **ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

9.      Despite such knowledge, Subway has failed or refused to exercise ordinary care or to make reasonable efforts to prevent such incidents of sexual harassment, assault, or violence, or to reduce the frequency or severity of their occurrence. In fact, as set forth herein, Subway has taken actions that have increased the risk of such harassment, assaults, and violence.

---

[3] John Cawley, et al., The Role of Repugnance in Markets: How the Jared Fogle Scandal Affected Patronage of Subway, National Bureau of Economic Research (Oct. 2023) at pg. 5.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

10.     Subway employees across the country, many of them teenagers, are speaking out about the have suffered sexual harassment, violence, and abuse they have suffered while working for this omnipresent entity.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

11.     Plaintiff C.S. is one such employee, and this case arises out of the grooming, repeated sexual assaults, and other tortious and unlawful conduct to which she, as a then 17-year-old, was subjected by her then 51-year-old supervisor, Zeferino Carlos Rangel, while both were working at Subway restaurant located in Jamestown, North Dakota (believed to be identified in the Subway system as Jamestown Restaurant No. 28006, and hereinafter referred to as "the subject Subway Restaurant").

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

12.     The subject Subway Restaurant is owned and/or operated by Defendants Brent Olson, Peter Knoff, GRB Investments, LLC, GRB Subway Properties, LLP, and/or Midwest Subway Development, LLP, all of whom are hereinafter referred to collectively as "the Franchisee Defendants."

**ANSWER:** Franchisee Entity Defendants admit that the subject Subway Restaurant is owned and operated by GRB Investments, LLC. Franchisee Entity Defendants deny the remaining allegations in this paragraph.

13.    As detailed herein, Rangel is a convicted and registered sex offender, and has been since at least 2012, long before the Franchisee Defendants hired him to work at the subject Subway Restaurant.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

14.    Information about Rangel's sex crimes and convictions, including his propensity for inflicting sexual violence on children and on teenagers nearly the same age as Plaintiff, as well as his corresponding status as a registered sex offender, is readily available on public websites, including the North Dakota Sex Offender Registry,[4] and has been since his initial conviction.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

15.    Thus, at the time the Franchisee Defendants hired Rangel to work at the subject Subway Restaurant, they knew or should have known of his violent sexual proclivities and history, as well as his status as a registered sex offender, and of the specific nature of his criminal

---

[4] https://sexoffender.nd.gov/offender/details/74d92c4e-8d4c-46d7-acd7-cb7b322e5c9a

convictions, which include, but are not limited to, sex crimes against an eight-year old child, the rape of an unconscious 19-year-old girl, and forcing minors to perform "sexual acts"[5] upon him.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

16.     Despite such actual or constructive knowledge, the Franchisee Defendants hired Rangel and placed him in a position of authority over the then 17-year-old Plaintiff when they hired her to work at the subject Subway Restaurant in or around June 2022.

**ANSWER:** Franchisee Entity Defendants admit that GRB Investments, LLC employed Rangel and Plaintiff at the Subway Restaurant and that it hired Plaintiff in or around June 2022. Franchisee Entity Defendants deny the remaining allegations in this paragraph.

17.     Taking advantage of the negligence and other tortious conduct of each of the defendants named herein, and using his status, authority, and influence as Plaintiff's supervisor, as well as threats of violence and the termination of her employment, Rangel provided Plaintiff with, and coerced her to ingest, intoxicating substances (including but not limited to cocaine and methamphetamine) and subjected her to months of grooming, sexual assaults, abuse, physical and mental violence, and other unlawful conduct, including instances of assault and abuse that occurred during the course of, or immediately before or after, their shifts at the subject Subway Restaurant.

**ANSWER:** Franchisee Entity Defendants deny providing Rangel with any status, authority, or influence over Plaintiff and deny that they engaged in any negligent or tortious

---

[5] Per N.D. Cent. Code § 12.1-20-02, the term "sexual act" includes "sexual contact between human beings consisting of contact between the penis and the vulva, the penis and the anus, the mouth and the penis . . ."

conduct. Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

18.     Absent working together at the subject Subway Restaurant, it is a virtual certainty that Plaintiff would never have met Rangel, and he would not have had the opportunity to groom and rape her.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

19.     As set forth herein, the Franchisee Defendants operate the subject Subway Restaurant under a Franchise Agreement with Doctor's Associates, Inc., which is a limited liability company that does business as "Subway," and which is a predecessor in interest to Defendant Doctor's Associates LLC (hereinafter "DAL").[6]

**ANSWER:** Franchisee Entity Defendants state that Doctor's Associates Inc., Brent Olson, and Peter Knoff were parties to the Franchise Agreement, which speaks for itself, and therefore the deny the related allegations in this paragraph. Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in this

---

[6] A copy of the Franchise Agreement was previously filed as ECF No. 10-1, and it is incorporated herein by reference.

paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

20.     As also set forth herein, despite disavowing responsibility for the unlawful acts or omissions of the Franchisee Defendants, the Development Agent Defendants (i.e., Brent Olson, Peter Knoff, and John Clark), and Rangel, Defendants DAL, Subway Worldwide, Inc, Subway IP LLC, and Franchise World Headquarters (hereinafter referred to collectively as "the Subway Defendants"), either did exercise or failed to reasonably exercise the expansive dominion and control they retain over their franchise restaurants generally and over the subject Subway Restaurant in particular with respect to the day-to- day operations of said restaurants, including but not limited to the vetting, hiring, training, supervision, and retention of development agents, franchise owners, managers, supervisors, and employees, as well as the safety of said employees.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this Paragraph.

21.     As such, the Subway Defendants are vicariously liable for the negligent, tortious, or otherwise unlawful conduct of the Franchisee Defendants, the Development Agent Defendants, and Rangel, all of which is detailed herein, either as a joint employer of Plaintiff (and Rangel and each of the other employees who worked with them at the subject Subway Restaurant) or under an integrated enterprise or agency theory.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required, except Franchise Defendants deny engaging in any negligent, tortious or otherwise unlawful conduct. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

22.    In addition to their vicarious liability, the Subway Defendants owed or otherwise assumed, and breached, independent duties of care to Plaintiff, including: (a) the duty to act reasonably to protect Plaintiff from harm, including from dangers the Subway Defendants knew or should have known were present in the workplace; and (b) the duty to act reasonably in exercising the control they retained over the operations of the Franchisee Defendants and/or the Development Agent Defendants, including those relating to the day- to-day operation of the subject Subway Restaurant, including the vetting, hiring, training, supervision, and retention of development agents, franchise owners, managers, supervisors, and employees, as well as the safety of said employees.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

23.    As noted above, and as detailed further herein, among the dangers of which the Subway Defendants knew or should have known, and from which they, the Franchisee Defendants, and the Development Agent Defendants failed to protect Plaintiff, is the occurrence of acts of sexual harassment, assault, or other physical or mental violence at the hands of her supervisors or co-workers.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

24.    Plaintiff's experience in this case is illustrative of Subway's systemic sexual harassment and assault history. Rather than protect child workers, Subway franchise owners and

general managers as well as its franchisors' corporate regional supervisors, field consultants, trainers, and human resources professionals with direct influence and authority over daily franchise operations, stood by and allowed the subject violent threats, assault, rape, and trafficking, to continue unabated.

> **ANSWER:** To the extent that "Subway" refers to any of the Franchisee Entity Defendants, Franchisee Entity Defendants deny the allegations in this paragraph. To the extent that "Subway" refers to any other entity, Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent any further answer is deemed necessary, Franchisee Entity Defendants deny.

25.     In many instances, instead of protecting their vulnerable employees, Subway retaliated against those who complained, consistent with Subway's system-wide strategy of causing and tolerating the hiring of managers with a history of sexual misconduct and then ignoring the consequences and the foreseeable harm that follows.

> **ANSWER:** To the extent that "Subway" refers to any of the Franchisee Entity Defendants, Franchisee Entity Defendants deny the allegations in this paragraph.  To the extent that "Subway" refers to any other entity, Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent any further answer is deemed necessary, Franchisee Entity Defendants deny.

26.     In addition to the financial motivation inherent in concealing and/or turning a blind eye to employee misconduct, each Defendant also has a financial motivation to implement and tolerate recklessly low hiring standards and to ignore glaring red flags when making hiring

decisions.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

27.    For example, Defendants each desire Subway restaurants, including the subject Subway Restaurant, to fill staffing needs as quickly as possible as cheaply as possible, because this means more revenue and lower costs.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

28.    As set forth herein, despite having notice of the pervasive occurrence of incidents of sexual harassment and assault against mostly minor-aged employees at its franchise restaurants nationwide, Subway's executives have declined to take any meaningful steps to prevent or address sexual assault by Subway employees or the company culture that enables it.

**ANSWER:** To the extent that "Subway" refers to any of the Franchisee Entity Defendants, Franchisee Entity Defendants deny the allegations in this paragraph.  To the extent that "Subway" refers to any other entity, Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent any further answer is deemed necessary, Franchisee Entity Defendants deny.

29.    For example, despite having the duty, knowledge and wherewithal:

a.    Defendants have failed to ensure that adequate training occurs at Subway restaurants regarding sexual assault, sexual harassment, and/or sex trafficking.

12

    b.      Defendants have failed to effectively train their respective employees and managers about how to prevent, identify, investigate, or respond to reports of sexual assault, sexual harassment, and/or sex trafficking; or how to prevent the hiring of convicted sexual predators.

    c.      Defendants have failed to effectively address, hold accountable, or otherwise change the behavior of managers who hire sexual predators or rapists and/or tolerate or allow sexual assault, sexual harassment, and/or sex trafficking to occur at their respective Subway restaurants.

    d.      Defendants have failed to adequately train regional managers, consultants, and other agents who supervise Subway restaurants on how to avoid hiring sexual predators and/or prevent, identify, and investigate sexual assault, harassment, and/or sex trafficking.

    e.      Defendants failed to provide effective human resource services or training, or to assist in enabling effective investigation of reports of sexual assault, sexual harassment, and/or sex trafficking.

    f.      Defendants have failed to adequately address or prevent repeat offenses at problem restaurants or problem areas or regions, instead permitting management to simply shuffle harassers and assaulters around to different restaurants, where they are free to harass and assault again.

**ANSWER:** Franchise Defendants deny the allegations in this paragraph.

30.    Making matters worse, Defendants omit the above failures in the material representations relied upon by current and prospective employees like Plaintiff, such as in

Subway's centralized, corporate-driven recruitment pitch, published by Defendant Subway IP LLC at https://apply.mysubwaycareer.com/us/en/careers/, which misrepresents wellness, personal growth, training, and career opportunity as among the many benefits Subway provides.

**ANSWER:** Franchise Defendants deny the allegations in this paragraph.

31.    Instead of taking responsibility to address and eliminate this dangerous environment at its restaurants, Defendants, through their respective agents and employees, exert operational pressure on individual and regional Subway restaurant managers and "business development agents" to continue to staff restaurants with minimal personnel with little to no experience, training, or supervision in order to achieve revenue projections and profit.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

32.    Because of Defendants' respective actions and inactions, there exists reckless disregard and grossly negligent supervision of managers' and supervisors' conduct and hiring decisions, which perpetuates hostile and dangerous work environments, including the one that resulted in teenaged Plaintiff being assaulted by a 51-year-old convicted rapist.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

33.    And in Plaintiff's case, Defendants, through their respective agents, knew or should have known that Plaintiff was being sexually assaulted and trafficked by her Subway supervisor.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

34.     In short, Subway puts profits above people, protecting pedophiles, rapists, and sex traffickers so long as they keep making and selling sandwiches.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.


35.     Underage employees, especially underage female employees, have suffered unimaginable harms because of the dangerous environment that Subway perpetuates. Many are impressionable, vulnerable high school students working in low-paid, menial roles because they have few other options due to their age, lack of education, and circumstances. These traumatic experiences stay with them for a lifetime, causing pain from which they will never fully recover.

**ANSWER:** To the extent that "Subway" refers to any of the Franchisee Entity Defendants, Franchisee Entity Defendants deny the allegations in this paragraph.  To the extent that "Subway" refers to any other entity, Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent any further answer is deemed necessary, Franchisee Entity Defendants deny.


36.     This is such a case. Indeed, as a direct result of the negligent, tortious, and unlawful conduct of each of the Defendants herein, and of the corresponding physical, sexual, and mental abuse and other traumas she was forced to endure while working at the subject Subway Restaurant, Plaintiff has suffered permanent physical and psychological injuries, has dropped out of high school, has experienced periods of homelessness as she has battled drug addiction and the ongoing consequences of said abuse and trauma, and has otherwise suffered damages as described herein.

**ANSWER:** Franchisee Entity Defendants deny engaging in negligent, tortious, or unlawful conduct. Franchisee Entity Defendants lack knowledge or information sufficient to admit

or deny the remaining allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

## ALLEGED PARTIES

37.    At all times material herein, Plaintiff was and is a resident of the State of North Dakota.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

### A.    The Franchisee Defendants

38.    At all times material herein, Defendant Brent Olson was and is a resident of the State of North Dakota.

**ANSWER:** Franchise Entity Defendants admit the allegations in this paragraph.

39.    At all times material herein, Defendant Peter Knoff was and is a resident of the State of North Dakota.

**ANSWER:** Franchise Entity Defendants admit the allegations in this paragraph.

40.    At all times material herein, Defendants Olson and Knoff were engaged, with their co-defendants, in the ownership, operation, and control of Subway restaurants in North Dakota, including the subject Subway Restaurant where Plaintiff and Rangel were employed.

**ANSWER:** Franchise Entity Defendants deny the allegations in this paragraph.

41.    At all times material herein, Defendant GRB Investments, LLC ("GRB Investments") was and is a North Dakota limited liability company with a principal place of business located at 73 Broadway, Fargo, North Dakota 58107.

**ANSWER:** Defendant GRB Investments, LLC admits that it is a limited liability company with its principal place of business located at 73 Broadway, Fargo, North Dakota. Franchisee Entity Defendants deny the remaining allegations in this paragraph.

42.    At all times material herein, Defendant GRB Investments was engaged, with its co-defendants and through its owners and agents, in the ownership, operation, and control of Subway restaurants in North Dakota, including the subject Subway Restaurant where Plaintiff and Rangel were employed.

**ANSWER:** Defendant GRB Investments, LLC admits that it owned and operated Subway-branded restaurants in North Dakota, including the restaurant where Plaintiff and Rangel were employed. Franchisee Entity Defendants deny the remaining allegations in this paragraph.

43.    Upon information and belief, at all times material herein, Defendant GRB Investments was owned, operated, or managed by several individuals, including, upon information and belief, Defendants Brent Olson and Peter Knoff.

**ANSWER:** Franchisee Entity Defendants admit that Defendants Brent Olson and Peter Knoff own equity interests in GRB Investments, LLC. Franchisee Entity Defendants deny the remaining allegations in this paragraph.

44.    Defendants Brent Olson and Peter Knoff are signatories to a Franchisee Agreement with Defendant DAL (ECF No. 10-1), pursuant to which they and/or Defendant GRB Investments operate the subject Subway Restaurant where Plaintiff and Rangel were employed.

**ANSWER:** Franchisee Entity Defendants state that the alleged Franchise Agreement speaks for itself, and therefore the deny the allegations in this paragraph.

45.    At all times material herein, Defendants GRB Investments, Olson, and Knoff were employers of Plaintiff and Rangel (and each of the other employees who worked with them at the subject Subway Restaurant).

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

46.    At all times material herein, Defendant GRB Subway Properties ("GRB Subway") was and is a North Dakota limited liability partnership with a principal place of business located at 73 Broadway, Fargo, North Dakota 58107.

**ANSWER:** Franchisee Entity Defendants admit the allegations in this paragraph.

47.    Upon information and belief, at all times material herein, Defendant GRB Subway was owned, operated, or managed by several individuals, including Defendant Brent Olson, and was engaged, with its co-defendants and through its owners and agents, in the ownership,

operation, and control of Subway restaurants in North Dakota, including the subject Subway Restaurant where Plaintiff and Rangel were employed.

**ANSWER:** Franchise Entity Defendants deny the allegations in this paragraph.

48.    At all times material herein, Defendant Midwest Subway Development, LLP ("Midwest") was and is a North Dakota limited liability partnership with a principal place of business located at 73 Broadway, Fargo, North Dakota 58107.

**ANSWER:** Franchisee Entity Defendants admit the allegations in this paragraph.

49.    Upon information and belief, at all times material herein, Defendant Midwest was owned, operated, or managed by several individuals, including Defendants Brent Olson, Peter Knoff, and Richard Clark, and was engaged, with its co-defendants and through its owners and agents, in the ownership, operation, and control of Subway restaurants in North Dakota, including the subject Subway Restaurant where Plaintiff and Rangel were employed.

**ANSWER:** Franchise Entity Defendants admit that Brent Olson, Peter Knoff, and others own equity interests in Defendant Midwest. Franchise Entity Defendants deny the remaining allegations in this paragraph.

50.    Upon information and belief, Defendant Midwest, along with its owners Brent Olson and John Clark, is also a Subway "Business Development Agent," in which capacity they are directed by the Subway Defendants (identified below) to engage in and oversee franchise sales activities, franchise site location assistance, franchise management training and supervision; and franchisee day-to-day operations, including Defendants GRB, Midwest, and GRB Subway Properties.

**ANSWER:** Franchise Entity Defendants admit that Defendant Midwest, Brent Olson, and John Clark have engaged in developing Subway-branded franchises. Franchise Entity Defendants deny the remaining allegations in this paragraph.

51.    At all times material herein, Defendants GRB Investments, GRB Subway, and Midwest, all of which operated out of the same office in Fargo, and all of which, upon information and belief, share common ownership, management, and/or financial control, comprised as a single integrated enterprise, and/or were joint employers with respect to Plaintiff, with each retaining or exercising authority over her hiring and firing, her work environment, and the terms and conditions of her employment, including but not limited to: human resources policies and practices; the physical work environment; the hiring, training, and/or supervision of restaurant managers, shift supervisors, and crew members; and the workplace policies, practices, procedures, rules, and/or codes of conduct (or lack thereof) that caused her injuries described herein.

**ANSWER:** Franchisee Entity Defendants admit that their respective principal place of business is 73 Broadway, Fargo, North Dakota 58102 and that they have the same registered agent. Franchisee Entity Defendants deny the remaining allegations in this paragraph.

52.    Additionally, based on their relationship, conduct, course of dealings, and communications, at all times material herein, the Franchisee Defendants were actual or ostensible agents of the Subway Defendants and were acting on behalf of the Subway Defendants with actual or apparent authority and subject to their direction and control.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

53.     At all times material herein, the Franchisee Defendants acted in concert with each of the other named defendants in committing the tortious or otherwise unlawful acts or omissions described herein that caused Plaintiff's injuries and damages and/or: (a) aided or encouraged the commission of said tortious acts or omissions; or (b) ratified or adopted said acts or omissions for their benefit; as such the Franchisee Defendants and each of the other named defendants are jointly liable for the injuries and damages Plaintiff has suffered.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

### B.     The Development Agent Defendants

54.     At all times material herein, Defendant John Clark was and is a resident of the State of North Dakota.

**ANSWER:** Franchise Entity Defendants admit the allegations in this paragraph.

55.     At all times material herein, Defendants Brent Olson, Peter Knoff, and John Clark, hereinafter referred to collectively as the "Development Agent Defendants," were parties to a Development Agent Agreement ("DAA") with Doctor's Associates, Inc., which, as noted above, is a limited liability company that does business as "Subway," and which is a predecessor in interest to Defendant DAL.[7]

**ANSWER:** Franchisee Entity Defendants admit that Brent Olson, Peter Knoff, and John Clark are parties to the Development Agent Agreement, which speaks for itself. Franchisee

---

[7] A copy of the Development Agent Agreement was previously filed as ECF Doc. 10-2, and it is incorporated herein by reference.

Entity Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

56.    Pursuant to the DAA, Defendants Olson, Knoff, and Clark served as Development Agents for Subway, in which capacity they agreed to "act as the representative[s] of the Company" and to "be responsible for all activities involved in the development and servicing of stores" in their territory, which comprises "the entire state of North Dakota." Such "activities" include, but are not limited to, conducting regular inspections (at least once per month) of each store in their territory, including the subject Subway Restaurant, and notifying the Subway Defendants of any failure to comply "with the Company's Operating Manual and Rules or Franchise Agreement," as well as "providing additional training" and "business advice" to the Franchisee Defendants.[8]

**ANSWER:** Franchisee Entity Defendants state that the Development Agent Agreement speaks for itself, and therefore the deny the allegations in this paragraph.

57.    As such, based on their relationship, conduct, course of dealings, and communications, at all times material herein, the Development Agent Defendants were employees or agents, either actual or ostensible, of the Subway Defendants and were acting on behalf of the Subway Defendants with actual or apparent authority and subject to their direction and control.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

---

[8] *See* ECF No. 10-2 at ¶ 2(a), (e), (i), and (o).

58.     Additionally, at all times material herein, the Development Agent Defendants, along with the Franchisee Defendants and the Subway Defendants, were joint employers with respect to Plaintiff, with each retaining or exercising authority over her hiring and firing, her work environment, and the terms and conditions of her employment, including but not limited to: human resources policies and practices; the physical work environment; the hiring, training, and/or supervision of restaurant managers, shift supervisors, and crew members;  and the workplace policies, practices, procedures, rules, and/or codes of conduct (or lack thereof) that caused her injuries described herein.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.


59.     At all times material herein, the Development Agent Defendants acted in concert with each of the other named defendants in committing the tortious or otherwise unlawful acts or omissions described herein that caused Plaintiff's injuries and damages and/or: (a) aided or encouraged the commission of said tortious acts; or (b) ratified or adopted said acts for their benefit; as such the Franchisee Defendants and each of the other named defendants are jointly liable for the injuries and damages Plaintiff has suffered.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.


### C.     The Subway Defendants

60.     At all times material herein, Defendant DAL was and is a Florida limited liability company with a principal place of business located at 325 Sub Way, Milford, CT 06461.

23

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

61.    At all times material herein, Defendant DAL did and does business throughout the United States and globally as "Subway." The business of Defendant DAL includes the sale, oversight, development, and operation of Subway restaurants and franchises, with Defendant DAL executing: (a) Franchise Agreements with franchisees, including the Franchisee Defendants herein; and (b) Development Agent Agreements with Development Agents or Business Developers, including the Development Agent Defendants herein.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

62.    At all times material herein, Defendant Subway IP, LLC ("Subway IP") was and is a Delaware limited liability company with a principal place of business located at 325 Sub Way, Milford CT 06461.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

63.     Defendant Subway IP does business globally and throughout the United States under the name "Subway" through various affiliates, including each of the co- defendants in this action.

ANSWER: Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

64.     At all times material herein, Defendant Subway IP was and is an affiliate of Defendants DAL and Subway Worldwide, Inc., and was the owner and licensor of the Subway® trademark and all recipes, formulas, food preparation procedures, business methods, business forms, and business policies (known as the "System") that govern the operation of Subway restaurants, including the subject Subway Restaurant. Defendant Subway IP licenses the "System" to Subway affiliates, including Defendant DAL and the other Subway Defendants, to use in developing Subway restaurants in the United States and around the world.

ANSWER: Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

65.     Like Defendant DAL, Defendant Subway IP's ultimate parent company is Defendant Subway Worldwide, Inc., which controls, operates, and owns Defendant Subway IP through its agents, employees, executive management, and a series of holding companies, including Subway SIP Holdings, LLC; Subway US Holdings, LLC; Subway Systems Holdings, LLC; and Subway Worldwide Holdings, LLC.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

66.     At all times material herein, Defendant Franchise Worldwide Headquarters, LLC ("FWH") was and is a Connecticut limited liability company with a principal place of business located at 325 Milford, CT 06461.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

67.     Defendant FWH is an affiliate of Defendants Subway Worldwide Inc, DAL, and Subway IP, and, in concert with said Defendant provides direction, control, and oversight of franchisee operations, including sales paperwork; research and development, marketing, management training; retail technology; POS System support; restaurant design; legal and accounting operations; negotiating, administering, and renewing leases/licenses for restaurant premises; and staffing and hiring policies and practices.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

68.     Like Defendant DAL and Subway IP, Defendant FWH's ultimate parent company is Defendant SWI, which controls, operates and owns Defendant FWH through its agents,

employees, executive management, and a series of holding companies, including Subway US Holdings, LLC, Subway Systems Holdings, LLC, and Subway Worldwide Holdings, LLC.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

69.    At all times material herein, Defendant Subway Worldwide Inc. ("SWI"), was and is a Delaware corporation with its principal place of business located at 325 Sub Way, Milford, Connecticut 06461.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

70.    Defendant SWI is the ultimate parent of Defendant DAL and it, along with various affiliates, including the other Subway Defendants, does business globally and throughout the United States under the name "Subway."

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

71.    The business of Defendant SWI and its affiliates includes the sale and operation of Subway franchises, with Defendant SWI exercising oversight and control over its affiliates through its agents, employees, and executives.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

72.    At all times material herein, Defendants provided or caused the provision of training to franchisees, including the Franchisee Defendants herein, regarding the hiring and supervision of restaurant managers and supervisors which was recklessly inadequate and/or grossly negligent insofar as it failed to address or prevent the hiring of a convicted sexual predator and subsequent sexual assault and battery and harassment against Plaintiff, which occurred onsite at one of Defendants' Subway restaurants.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

73.    At all times material herein, the Subway Defendants, all of which operated out of the same headquarters in Connecticut, and all of which, upon information and belief, share common ownership, management, of financial control, comprised as a single integrated enterprise, and/or were, along with the Franchisee Defendants and the Development Agent Defendants, joint employers with respect to Plaintiff, with each retaining or exercising authority over her hiring and firing, her work environment, and the terms and conditions of her employment, including but not limited to: human resources policies and practices; the physical work environment; the hiring, training, and/or supervision of restaurant managers, shift supervisors, and crew members; and the workplace policies, practices, procedures, rules, and/or codes of conduct (or lack thereof) that caused her injuries described herein.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

74.    At all times material herein, the Subway Defendants acted in concert with each of the other named defendants in committing the tortious or otherwise unlawful acts or omissions described herein that caused Plaintiff's injuries and damages and/or: (a) aided or encouraged the commission of said tortious acts or omissions; or (b) ratified or adopted said acts or omissions for their benefit; as such the Subway Defendants and each of the other named defendants are jointly liable for the injuries and damages Plaintiff has suffered.

**ANSWER:** Franchisee Entity Defendants deny engaging in tortious or unlawful acts or omissions. The remaining allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

**JURISDICTION AND VENUE**

75.    This Court has original federal question jurisdiction over Plaintiff's claim alleging violations of the William Wilberforce Trafficking Victims Protection Act of 2008 ("TVPRA") pursuant to 28 U.S.C. § 1331, as such claim is one "arising under the Constitution, laws, or treaties of the United States."

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

76.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because all such claims arise from a common nucleus of operative facts and are so related to claims in the action that are within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

77.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

## FACTS COMMON TO ALL CLAIMS

**A.     Defendants hire Plaintiff to work at the subject Subway Restaurant and place her under the supervision of "Uncle Carlos," a 51-year-old man whom Defendants hired with actual or constructive knowledge that he was a registered sex offender then on probation for committing sex crimes against minors.**

**ANSWER:** This paragraph is a heading to which no response is required. To the extent an answer is deemed necessary, the Franchisee Entity Defendants deny the allegations.

78.     In or around May 2022, Plaintiff, who had just turned 17-years-old, was informed by one of her high-school classmates that the subject Subway Restaurant was hiring and was open to hiring high school applicants.

30

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

79.     In fact, Subway actively pursues teenagers and high school students, touting itself as the "[p]erfect restaurant job for high school students and college students!"[9] and promising the "opportunity" to "earn University course credits."[10]

**ANSWER:** To the extent that "Subway" refers to any of the Franchisee Entity Defendants, Franchisee Entity Defendants deny the allegations in this paragraph.  To the extent that "Subway" refers to any other entity, Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent any further answer is deemed necessary, Franchisee Entity Defendants deny.

80.     Plaintiff obtained an application, which, to the best of her recollection, was emblazoned with the Subway logo.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

---

[9] *See* https://www.subwayhires.com/job-roles/sandwich-artist

[10] *See* https://mysubwaycareer.com/careers-us-en

81.    At the time Plaintiff applied to work at the subject Subway Restaurant, she was living at home with her mother and siblings, and was attending Jamestown High School, where she was about to begin summer school classes.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

82.    Plaintiff was selected for an interview at the subject Subway Restaurant, which, to the best of Plaintiff's recollection, was conducted in the subject Subway Restaurant by General Manager (GM) MariAnn Letcher.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

83.    During the hiring process, Plaintiff informed GM Letcher that she was a 17- year-old high school student.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

84.    Pursuant to the terms of the Franchise Agreement (ECF No. 10-1), the Franchisee Defendants were required to "display the following notice in a prominent place at the Restaurant: *'The SUBWAY® trademarks are owned by Doctor's Associates, Inc. and the independent franchised operator of this restaurant is a licensed user of such trademarks.'"* (*Id*. at 6 (bold and italics in original).)

**ANSWER:** Franchisee Entity Defendants state that the alleged Franchise Agreement speaks for itself, and therefore the deny the allegations in this paragraph.

85.     Plaintiff does not recall seeing the foregoing notice, or any similar notice, in the subject Subway Restaurant at the time of her interview or at any time thereafter, and at no point during the interview or her ensuing employment did GM Letcher (or anyone else) inform Plaintiff that the subject Subway Restaurant was a franchise or that it was owned by anyone other than Subway.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

86.     As a 17-year-old who had just finished her sophomore year of high school, Plaintiff had no understanding of franchisor-franchisee relationships, or the legal significance thereof, at the time she applied for the job or worked at the subject Subway Restaurant.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

87.     The Subway Defendants go to great lengths to ensure that all Subway restaurants look and operate uniformly from location to location, and to ensure that they are indistinguishable from one another in appearance or any other meaningful respect. An illustrative, but by no means exhaustive, list of requirements confirming the extent of the dominion and control the Subway

Defendants exercise: (a) over their development agents and franchisees, including the Development Agent Defendants and Franchisee Defendants herein; and (b) over the day-to-day operation of their franchised restaurants, including the subject Subway Restaurant, includes the following:

- the Subway Defendants require their franchisees to maintain the condition and appearance of the interior and exterior of each restaurant consistent with quality controls and standards promulgated by said Defendants, and provide that should the general state or repair of a particular restaurant not meet the Subway Defendants' quality control or standards, said Defendants retain the right to enter their franchise restaurants and effect such repairs, painting, decorating, or replacements they deem necessary in the exercise of their business judgment;

- the Subway Defendants have developed and implemented a "national menu;"

- the Subway Defendants have developed and implemented a "Gold Standard Program" for certification of all food suppliers to "promote consistency across the Subway® system, with all products within any category being virtually identical regardless of supplier;"

- the Subway Defendants have developed and implemented the Marketwide Option Program and Store Operation Program "to promote consistency of items offered for sale, including methods of preparation and presentation . . .;"

- the Subway Defendants utilize a ubiquitous national marketing/advertising campaign to promote the Subway brand, pursuant to which said Defendants:

- prohibit their franchisees from utilizing any advertising materials that they have not preapproved; and (b) mandate that any use of social media by their franchisees must comply with Social Media Guidelines developed by the Subway Defendants;

- the Subway Defendants require their franchisees to operate their restaurants in compliance with Subway's comprehensive Operations Manual, which: (a) sets uniform standards for all aspects of the operation and appearance of Subway restaurants; (b) sets forth "requirements" that "are necessary and reasonable to preserve the identity, reputation, and goodwill we [the Subway Defendants] developed;"[11] and (c) includes chapters specifically dedicated to ensuring such uniform operation and appearance of Subway restaurants,

---

[11] ECF No. 10-1 at ¶ 5(b).

including but not limited to: "Store Design and Décor," "Signage," "Items Offered for Sale and Purchasing," "Logo Use and Restrictions;" "Employee Development" (which includes sections on "Hiring and Training," "Recruiting," "Interviewing," "Evaluating Team Members," and "Code of Business Conduct"); "Restaurant Evaluations & Compliance" (which includes sections on "The Restaurant Visit," "Performance-Based Evaluations," "Compliance," and "Evaluating Your Own Restaurant"); "Security and Safety" (which includes sections on "Security Training," "Personal Harm and Injury," "Handling Negative Publicity and Crisis Situations," and "Responding to the Media"); and "Policy and Procedure" (which includes sections on "Communication," "Code of Business Conduct," and "Transparency Policy");

- upon information and belief, the Subway Defendants require their franchisees to comply with additional "System Standards," which, per the Subway Defendants, are "the mandatory specifications, operating procedures prescribed from time to time by us for Subway® Restaurants;"

- the Subway Defendants require their franchisees to successfully complete a training program designed by and to the satisfaction of said Defendants;[12] Upon information and belief, said training program includes modules devoted to employee recruiting and hiring, staff development, and restaurant security and video surveillance;

- the Subway Defendants subject their franchisees to periodic restaurant visits or inspections to ensure compliance with Subway's standards, specifications, and operational mandates;

- the Subway Defendants require their franchisees to purchase all food, equipment, beverages, and other products or services exclusively from sources that have been previously approved by the Subway Defendants;

- the Subway Defendants require their franchisees to become members of the Independent Purchasing Cooperative (IPC)—which is the purchasing and services cooperative for Subway Franchisees in the United States, Canada, Puerto Rico and U.S. Virgin Islands—and to purchase all furniture, equipment, and décor through the approved IPC-managed ordering systems;

- the Subway Defendants retain the right to physically remove from any Subway restaurant any equipment, fixtures, furniture, signs, or decorating materials that do not meet the assigned specifications or that the Subway

---

[12] *Id.* at ¶ 5(a)(2).

Defendants otherwise believe is necessary to protect the goodwill associated with the Subway Marks;

- the Subway Defendants require franchisees to "operate and promote the Restaurant under the name SUBWAY® . . . without prefix or suffix added to the name;"[13]

- the Subway Defendants prohibit franchisees, including the Franchisee Defendants, from using any Subway Marks as part of another corporate or trade name;

- the Subway Defendants prohibit franchisees, including the Franchisee Defendants, from displaying any Subway Mark with any modifying words, terms, or designs or in any modified form;

- the Subway Defendants require franchisees to "allow our representatives and our development agent and our development agent's representatives to enter your business premises without prior notice during regular business hours to inspect, audit, photocopy, and videotape your business operations and records, and to interview the Restaurant's employees and customers" to ensure compliance with the Operations Manual and other corporate dictates;[14]

- the Subway Defendants hire and retain Development Agents, including the Development Agent Defendants herein, who, as noted above, "act as the representative" of the Subway Defendants and who are obligated perform various duties on their behalf, including but not limited to: (1) notifying the Subway Defendants "in writing of . . . any non-compliance of any franchised unit with the standards set forth in the Company's Operating Manual and Rules or Franchise Agreement;" (2) "being responsible for the installation of equipment . . . which meets the [Subway Defendants'] standards for design construction, appearance and function as specified in the [Subway Defendants'] Operating Manual and Rules;" (3) "advis[ing] franchisees in the proper construction of their units, including but not limited to color scheme [and] design of the interior," which "advice shall be in accordance with the guidelines established by the [Subway Defendants];" (4) "provid[ing] advertising advice, direction and training to franchisees in accordance with the guidelines established by the [Subway Defendants];" (5) providing an additional "qualified and trained representative to . . . give additional training to franchisees and their employees in accordance with the standards set forth by the Company;" and (5) inspect[nig] all units in the Territory at least once per month and report[ing] to [the Subway

---

[13] *See* ECF No. 10-1 at ¶5.m.

[14] *See* ECF No. 10-1 at ¶5.g.

Defendants] whenever products sold, equipment utilized or appearance of the unit are not in compliance with the standards as specified in the [Subway Defendants'] Operations Manual and Rules and the [Subway Defendants'] Compliance Manual";[15]

- the Subway Defendants contractually agree to "train approved franchisees,"[16] including by providing "a training program for establishing and operating a restaurant using the System"[17] (i.e., the Subway Defendants' "proprietary system for establishing and operating restaurants featuring sandwiches and salads under our trade name and service mark Subway®");[18]

- in addition to the foregoing training provided by the Subway Defendants, said Defendants require their development agents to provide "a qualified and trained representative to give advice to franchisees upon the opening of their unit in the Territory and thereafter give additional training to franchisees and their employees in accordance with the standards set forth by the Company,"[19] i.e., Subway;

- the Subway Defendants retain the right to reduce the royalty payments to which their Development Agents are contractually entitled "if a store is not in substantial compliance with the standards specified in the Operating Manual and Rules and the Compliance Manual;"[20]

- the Subway Defendants retain the right to terminate franchise agreements, including the agreement with the Franchisee Defendants herein, if the franchisee "fail[s] to operate the Restaurant in accordance with the Operations Manual;"[21]

- upon information and belief, the Subway Defendants have promulgated a "Code of Conduct," the goal of which purports to be "improving the lives

---

[15] *See* ECF No. 10-2, Development Agent Agreement at ¶ 2(e), (h), (k), (l), (m), and (o).

[16] *Id*. at ¶ 3(h).

[17] ECF No. 10-1 Franchise Agreement at ¶ 4(a).

[18] *Id*. at ¶ A.

[19] ECF No. 10-2, Development Agent Agreement at ¶ 2(m).

[20] *Id*. at ¶ 3(b).

[21] ECF No. 10-1 at ¶¶ 5.b and 8.b(iv).

of our customers, franchisees, employees, vendors, and communities worldwide." Pursuant to said Code of Conduct, the Subway Defendants "expect . . . franchisees to support this commitment to integrity by complying with and training their employees on this Code of conduct," which includes such mandates as: "prohibit physical abuse of employees and prohibit . . . any form of human trafficking;" "eliminate discrimination;" "maintain workplaces that are free from discrimination or physical or verbal harassment;" and "provide a secure, safe, and healthy workplace."

**ANSWER:** Franchisee Entity Defendants state that the alleged Franchise Agreement and Development Agreement speak for themselves, and therefore they deny the allegations in this paragraph.

88.     Given the foregoing, to the then 17-year-old Plaintiff, the subject Subway Restaurant was indistinguishable from any other Subway she had visited, and she believed she had applied, and was being interviewed, for employment with "Subway," i.e., the Subway Defendants.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

89.     During the interview, GM Letcher asked Plaintiff if she could pass a background check, thus indicating that she (GM Letcher) and Defendants herein understood that background checks were an important component of the hiring process.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

90.     Plaintiff responded that she could pass a background check but does not know if the Defendants conducted a background check on her. If they did, she was not informed of the results.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

91.    In June 2022, Defendants hired Plaintiff to work at the subject Subway Restaurant as a Sandwich Artist.

**ANSWER:**  GRB Investments, LLC admits that it hired Plaintiff to work at the subject Subway-branded restaurant in June 2022. Franchisee Entity Defendants deny the remaining allegations in this paragraph.

92.    At the time of her hiring, Plaintiff was issued a uniform that, to the best of her recollection, included a shirt, headwear, and nametag, all bearing the Subway logo; this further confirmed her understanding that she had been hired by, and was working for, "Subway," i.e., the Subway Defendants.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

93.    After being hired, Plaintiff was typically assigned to work the "closing shift," which, to the best of her recollection, generally ran from approximately 4:30 – 9:00 p.m. on weekdays and approximately noon to 9:00 p.m. on weekends.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

94.    GM Letcher informed Plaintiff that her shift supervisor would be Zeferino Carlos Rangel, whom she introduced to Plaintiff as "Uncle Carlos," and invited Plaintiff to refer to him as such.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

95.    Upon information and belief, Defendants hired Rangel in or around 2020, and at the time of Plaintiff's hire he was working as a supervisor at the subject Subway Restaurant.

**ANSWER:**  GRB Investments, LLC admits that it hired Rangel in or around 2020. Franchisee Entity Defendants deny the allegations in this paragraph.

96.    GM Letcher praised Rangel to, and in front of, Plaintiff, referring to him as a "star employee" and lauding him as a dependable worker who could always be counted on.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

97.    GM Letcher instructed Plaintiff to listen to Rangel, explaining that "he was in charge," and noting that there were only two employees who had keys to the restaurant— herself and Rangel.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

98.    At the time of Plaintiff's hire, Rangel was approximately 51 years old, more than 30 years Plaintiff's senior.

**ANSWER:** Franchisee Entity Defendants admit the allegations in this paragraph.

99.     As noted above, at the time he was hired, Rangel was also a registered and convicted sex offender with an extensive and well-documented history of sexual violence directed at children including minors similar in age to Plaintiff. For example:

- In 2002, Rangel was charged with felony aggravated sexual assault in Webb County, Texas (he pled guilty to a lesser included offense— misdemeanor assault—and was placed on probation for one year); and

- In 2012, Rangel was convicted in Pembina County District Court of Gross Sexual Imposition in violation of N.D.C.C. § 12.1-20-03; the publicly available description of the conduct that led to Rangel's 2012 conviction is as follows:

    > RANGEL HAD SEXUAL INTERCOURSE WITH A 19-YEAR OLD FEMALE WHILE SHE WAS PASSED OUT. RANGLE [sic] ALSO FORCED A 14-YEAR-OLD MALE AND AN 8-YEAR OLD FEMALE TO PEFORM ORAL SEX ON HIM ON SEVERAL OCCASIONS.[22]

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

100.    On or about April 22, 2020, which, upon information and belief, is before Defendants hired Rangel to work at the subject Subway Restaurant, the Jamestown Police issued a warning to the public about Rangel, describing him as a "convicted high risk sex offender residing in Jamestown."[23] The warning provided a description and photograph of Rangel, as well as his new address. The warning went on to note that Rangel "has been assigned a high risk

---

[22] https://sexoffender.nd.gov/offender/details/74d92c4e-8d4c-46d7-acd7-acd7-acd7b322e5c9a (all caps in original).

[23] https://csinewsnow.com/?p=197355

assessment by the North Dakota risk level committee of the North Dakota Attorney General's Office," and to detail his criminal offenses, i.e., "Gross Sexual Imposition involving a 19 year old female while she was passed out," as well as "forc[ing] a 14 year old male and an eight year old female to engage in oral sex with him on several occasions."[24]

> **ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

101.     Upon information and belief, at the time Rangel applied to work at the subject Subway restaurant, the North Dakota Sex Offender Registry, which is searchable by the public, included the following information relative to his criminal history:[25]

| Name and status | Last Known Address | Convictions |
|---|---|---|
| RANGEL, ZEFERINO CARLOS **Status:** INCARCERATED **Risk Level:** UNDETERMINED **Expiration Date:** UNDETERMINED Aliases: RANGEL, CARLOS ZEFERINO | STATE PENETENTIARY 3100 RAILROAD AVE BISMARCK, ND 58501 BURLEIGH COUNTY **Last Updated Date:** 8/5/2019 | **7/3/2012** PEMBINA COUNTY DISTRICT COURT, ND GROSS SEXUAL IMPOSITION 25 YEARS 13 SUSPENDED 748 DAYS CREDIT 10 YEARS SUPERVISED PROBATION CONCURRENT |

---

[24] *Id.*

[25] https://web.archive.org/web/20190919220303/http://www.sexoffender.nd.gov/Offender WebSearch/DownloadPDF

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

102.    Given the foregoing, at the time Rangel applied to work at the subject Subway Restaurant, and at all other times material herein, Defendants knew or should have known that he was a convicted and registered sex offender and that he was on supervised probation after serving 10 years of a 25-year prison sentence for raping a 19-year-old girl and forcing other children to perform sex acts on him.

**ANSWER:** Franchise Defendants deny the allegations in this paragraph.

103.    With that knowledge, Defendants hired Rangel and later hired Plaintiff, placing her under Rangel's supervision.

**ANSWER:** GRB Investments, LLC admits that it hired Rangel and Plaintiff. Franchisee Entity Defendants deny the remaining allegations in this paragraph.

104.    At no time before (or after) hiring Plaintiff did Defendants inform her that Rangel was a registered sex offender or that he had any criminal history, much less a criminal history that involved the sexual assault of children of a similar age to her. Unlike Defendants, Plaintiff did not know, or have reason to know, those things.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

105.    At no time during her tenure working at the subject Subway Restaurant did Defendants provide Plaintiff with training or guidance regarding workplace violence, sexual harassment, or sexual assault. Nor did Defendants provide Plaintiff with any training or guidance as to how to report incidents of workplace violence, sexual harassment, or sexual assault should they occur.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

106.    Upon information and belief, Defendants also failed to provide any such training or guidance to any employee who worked on Plaintiff's shift.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

107.    The only training or guidance that Plaintiff recalls receiving while working for Defendants was how to make Subway sandwiches and that she was to listen to Rangel.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

      **B.**    **After Defendants negligently hired Rangel, they negligently failed to supervise him and continued to employ him while he provided Plaintiff with drugs, groomed her, and subjected her to repeated incidents of sexual assault.**

**ANSWER:** This paragraph is a heading to which no response is required. To the extent an answer is deemed necessary, the Franchisee Entity Defendants deny the allegations.

108.    Upon information and belief, as GM of the subject Subway Restaurant, part of Letcher's job was to oversee the day-to-day operation of said restaurant, the revenue from which flowed to all Defendants.

**ANSWER:** GRB Investments, LLC admits that Letcher was the store manager of the subject Subway Restaurant and was involved in the day-to-day operation of said restaurant. Franchise Entity Defendants deny the remaining allegations in this paragraph.

109.    Upon information and belief, also included among Letcher's responsibilities as GM was oversight of the physical condition of the subject Subway Restaurant and the scheduling, supervision, evaluation, and safety of the employees who worked there, including Plaintiff and Rangel.

**ANSWER:** GRB Investments, LLC admits that Letcher was the store manager of the subject Subway Restaurant and was involved in the day-to-day operation of said restaurant. Franchise Entity Defendants deny the remaining allegations in this paragraph.

110.    Shortly after being hired, Plaintiff became aware that there were security cameras in the subject Subway Restaurant; however, Rangel informed her that they were inoperable.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

111.    Upon information and belief, the Franchisee Defendants and Development Agent Defendants failed or neglected to inspect, maintain, or repair said cameras to ensure they were in

proper working condition and/or failed or neglected to monitor them or review the data they recorded.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

112.    Despite knowing or having reason to know that Rangel was a convicted and registered sex offender whose crimes involved victims who were children of a similar age to Plaintiff, GM Letcher and the Franchisee Defendants scheduled or permitted Rangel to work alone in the subject Subway Restaurant while supervising Plaintiff, and/or scheduled or permitted Plaintiff and Rangel to work together with other employees, but without the presence of other management or supervisory personnel. At all times material herein, Plaintiff was subject to Rangel's supervision.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

113.    Upon information and belief, during Plaintiff's tenure, in addition to Rangel, Defendants also employed other male individuals who, unbeknownst to Plaintiff at the time, were also registered sex offenders or had criminal histories involving sex-based offenses, and said Defendants also assigned those employees to work, at times, on the same shift as Plaintiff at the subject Subway Restaurant.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

114.    GM Letcher was often absent from the restaurant during times she was scheduled to be there, and when she was present, she often failed to provide appropriate supervision or oversight to her employees.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

115.    Upon information and belief, on the occasions that GM Letcher was absent from the restaurant, she would often instruct Rangel or other employees to clock her in or out to conceal her absence.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

116.    In short, at all times material herein, Defendants managed their operations at the subject Subway Restaurant not only so that Plaintiff, a 17-year-old female, worked with, and was subject to the supervision of, a 51-year-old convicted and registered sex offender, but also so that she often did so alone, or in the presence of other male employees who, upon information and belief, also had a criminal history involving sex-based offenses.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

117.    During or around Plaintiff's first week of work at the subject Subway Restaurant, Rangel began to groom her for his deviant sexual desires.

47

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

118.    Rangel began by befriending Plaintiff and thereafter approaching her during one of their work shifts, telling her he noticed she looked tired.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

119.    In response, Plaintiff told Rangel she was feeling exhausted, and that when she was not at work, she was attending summer school. Plaintiff also told Rangel she was also helping to take care of her younger siblings.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

120.    Eager to do well at work and to be seen as an employee worthy of her employers' confidence, Plaintiff apologized to Rangel for appearing tired and was quick to point out that even with everything on her plate, she was determined to do well at her job.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

121.    During a subsequent shift, Rangel presented Plaintiff with a substance he said would help her feel less tired, handed her a Subway straw, and instructed her on how to inhale the substance.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

122.    At that time, Plaintiff did not know what the white powder was, but later learned it was cocaine.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

123.    Prior to Rangel providing it to her at the subject Subway Restaurant, Plaintiff had never taken cocaine.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

124.    During another of their joint shifts sometime later, Rangel provided Plaintiff with another substance, which he said would also help her, and instructed her to take it.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

125.    Plaintiff did not know it at the time but now knows that substance to have been crystal methamphetamine.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

126.    Prior to Rangel providing it to her at the subject Subway Restaurant, Plaintiff had never used crystal methamphetamine.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

127.    In the weeks that followed, Rangel often had illegal drugs, including methamphetamine and cocaine, delivered to the subject Subway Restaurant while he and Plaintiff were working.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

128.    Plaintiff became addicted to the drugs that Rangel provided and pressured her to use, so much so that she became unable to function effectively at work or school without them.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

129.    Eventually, Rangel was regularly providing Plaintiff with drugs.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

130.    Once Plaintiff became addicted, Rangel continued to provide her with drugs in exchange for sex acts. Numerous times while Plaintiff was under the influence of the drugs he provided, including during the shifts they worked together at the subject Subway Restaurant, Rangel sexually harassed, abused, and/or assaulted her.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

131.    Because Rangel's drivers' license was suspended, he and GM Letcher required or pressured Plaintiff to give him rides to or from work, which Rangel often used to facilitate the exchange of drugs for sex.

**ANSWER:** Franchisee Entity Defendants deny requiring Plaintiff to give rides to Rangel. Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

132.    Because Letcher and Rangel were her supervisors, Plaintiff did not believe she could refuse to provide Rangel with transportation to or from work.

**ANSWER:** Franchisee Entity Defendants deny that Rangel was a supervisor. Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

133.    In a pattern that repeated itself, Rangel would provide drugs to Plaintiff during the course of their shift at the subject Subway Restaurant demanding in exchange that before leaving the subject Subway Restaurant Plaintiff agree to perform sex acts— either at the restaurant before leaving or while Plaintiff was dropping him off or at his house after she gave him the ride home from work.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

134.    Rangel sexually abused, assaulted, and raped Plaintiff, including on work premises at the subject Subway Restaurant.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

135.    In a drugged state and fearing for her job and her own safety as well as her family members should she refuse, Plaintiff submitted to Rangel's sexual demands.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

136.    Plaintiff's fear for her job was justified, as Rangel frequently reminded her of his status as her supervisor and threatened her with violence or termination. He also coerced Plaintiff into performing sex acts by promising career advancement opportunities and by providing her with free Subway food, including food to share with her younger siblings as well.

**ANSWER:** Franchisee Entity Defendants deny that Rangel was a supervisor. Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

137.    Plaintiff also observed Rangel provide free Subway food to drug dealers who he had come to the Subway store as part of drug exchanges.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

138.    On occasion, and unbeknownst to Plaintiff at the time, Rangel recorded the sex acts on his phone; in one such recording Plaintiff can be seen in her Subway work shirt performing oral sex on him.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

139.    In another such recording, Plaintiff can be heard saying she wants to stop the sex act, but Rangel is seen and heard saying she is not allowed to stop because he is her boss (or words to that effect).

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

140.    On several occasions when Plaintiff transported Rangel to his home, he would demand that she accompany him inside, whereupon he would take Plaintiff to his bedroom, lock and barricade the door (using multiple locks, a board under the doorknob, and bent nails over the door's entrance), and sexually assault her.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

141.     On many occasions Rangel did not wear a condom when he sexually assaulted Plaintiff, putting her at risk for pregnancy, sexually transmitted infections, and other physical harm.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

142.     At one point, Rangel provided Plaintiff with a pregnancy test and demanded she take it in front of him; it was positive, indicating that Plaintiff was pregnant.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

143.     Upon seeing the positive result of the pregnancy test, Rangel forced Plaintiff to ingest large quantities of liquor and drugs, demanding Plaintiff take *all of it*, in order to force an abortion After doing so, Plaintiff fell unconscious and awoke sometime later, bleeding and severely ill.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

144.    Thereafter Rangel forced Plaintiff to take another pregnancy test in the Subway Restaurant bathroom during a work shift. It was now negative; the abortion forced upon Plaintiff and caused by Rangel had worked.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

145.    On the occasions that Plaintiff tried to resist Rangel's sexual demands, he threatened her job, stating he would fire her if she refused, and threatened her physical safety, as well as that of her family members.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

146.    Plaintiff was terrified of Rangel and believed his threats because he showed her weapons, which he said he would use to carry them out.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

147.    Despite the fact that it was illegal for Rangel to possess a firearm due to his past criminal convictions, Rangel demanded that Plaintiff bring him one of her grandfather's guns and threatened Plaintiff's family if she did not comply.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

148.    Despite her fear of retribution, Plaintiff called GM Letcher and requested a transfer to another Subway location, explaining that she was feeling uncomfortable at work, specifically with respect to the other employees on her shift, including Rangel, and asking to switch stores or to be assigned to a shift other than the night/closing shift.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

149.    GM Letcher told Plaintiff that she would "take care of it," but took no action. Upon information and belief, GM Letcher and the Franchisee Defendants made no effort to investigate Plaintiff's concerns.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

150.    Plaintiff's mother was also concerned about her work at the subject Subway Restaurant and, upon information and belief, contacted GM Letcher to report that Subway was keeping Plaintiff at work too late, going on to note her belief that minor children were not permitted to work so late into the evening.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

151.    GM Letcher responded by stating that she could not talk with Plaintiff's mother about her work schedule, and by stating it was not her (Letcher's) job to "play babysitter."

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

152.    On one particular occasion multiple employees quit their jobs at the Jamestown Subway in one day. General Manager Letcher was angry because that meant she had to come in and help cover the shifts in their place. Plaintiff was relieved and hopeful that Letcher's presence at closing time would deter Rangel from harming Plaintiff that night.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

153.    The relief was short lived: Letcher was in a terrible mood, stated that she should not have to do the cleaning (which was customarily done before closing), and that as the General Manager, she was above cleaning the Subway store. Letcher stated that she was not staying until the end of the shift, that Plaintiff and Rangel needed to do the cleaning by themselves, and then left in a huff—leaving Plaintiff alone to close with Rangel. That night, like so many others, Rangel sexually assaulted Plaintiff.

**ANSWER:** Franchisee Entity Defendants deny the allegations contained in the first and second sentences of this paragraph. Franchisee Entity Defendants lack knowledge or

information sufficient to admit or deny the remaining allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

154.    As time passed and Plaintiff's drug addiction became more severe, her attendance at school dwindled.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

155.    On or around November 15, 2022, Plaintiff was at school when her then- principal, John Conway, pulled her aside to ask if she was okay.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

156.    Plaintiff responded that she was not and broke down as she described the abuse and sexual violence to which she was being subjected while working at Subway.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

157.    Principal Conway called the Jamestown Police Department, which dispatched an officer to the high school to take a statement from Plaintiff. Plaintiff did her best to describe her

experience working at the subject Subway Restaurant and the unlawful conduct and trauma to which she had been subjected, but her ability to fully do so was hindered by the fact that she was suffering from drug addiction and the physical, psychological, and emotional abuse to which she had been subjected.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

158.    Plaintiff then went to the hospital, where staff performed a rape kit and Plaintiff told law enforcement officers what happened to her.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

159.    Plaintiff went from the hospital to the subject Subway Restaurant and gave her notice of resignation and crossed her name of the employee list.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

160.    Thereafter, Defendants refused to timely pay, or cause to be paid, Plaintiff's last paycheck.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

161.    Defendants stated that the reason Subway was holding Plaintiff's final paycheck was because Plaintiff failed to turn in her Subway uniform work shirt.  However, she could not return the Subway uniform work shirt because it was in police custody as evidence of Rangel's crimes against Plaintiff.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

162.    On or about November 16, 2022, Rangel was arrested; he was wearing the Subway uniform Defendants provided and required him to wear:



**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

163.    Initially, Rangel denied Plaintiff's allegations, but on May 3, 2023, he appeared before the Honorable Cherie L. Clark in Stutsman County District Court and pled guilty to five felony counts: (1) patronizing a minor for commercial sexual activity; (2) corruption or solicitation

of a minor; (3) certain materials prohibited; (4) promoting or directing a sexual performance by a minor; and (5) felon in possession of a firearm.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

164.    On August 21, 2023, Rangel again appeared in front of Judge Clark, who sentenced him to a total of 25 years in prison for his crimes. In doing so, Judge Clark noted that Plaintiff "had serious harm, serious trauma," and that "[h]er innocence was stolen." The judge went on to note, in relevant part, that:

- "The Defendant callously got a child addicted to drugs who was in his, not care, but in his employ while working at Subway. He got her addicted to drugs, used that addiction for sexual reasons."

- ". . . the Defendant's criminal history is extensive. He has an assault; he has a DUI . . . he has gross sexual imposition in Pembina County; an abuse or neglect of a child in Pembina County. A delivery to certain persons unlawful in Pembina County and another gross sexual imposition in Pembina County, and then pending he has a terrorizing which is not this case."

- "He was convicted of gross sexual imposition twice involving minors and again here we are today . . ."

- "I heard no remorse. I didn't hear him take any responsibility or be concerned at all with the victim of this crime."

- "He committed these offenses while he was on probation."

- "He lacks remorse. He continues to commit serious crimes."

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

165.    In considering whether Plaintiff's conduct "induced or facilitated" the commission of Rangel's crimes, as is required in connection with her sentencing decision, Judge Clark concluded, "Absolutely not. She's a child. She did nothing to cause this to happen to her in any way shape or form."

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

166.    And in holding that Rangel's sentences on some of his criminal counts would run consecutively, rather than concurrently, the Court reasoned as follows:

> I'm basing the consecutive sentence on the Defendant's lack of remorse. The vulnerability of the victims [sic], the getting her hooked on drugs and then having her perform sexual acts, also to take a video which memorializes it. That is reprehensible to this Court and that is my Judgment.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

167.    As a result of the abuse, assaults, and trauma to which she was subjected while working at the subject Subway Restaurant, and the corresponding tortious and otherwise unlawful conduct of each of the Defendants herein, Plaintiff has suffered severe and permanent—indeed virtually unimaginable—physical and psychological injuries, has suffered and will continue to suffer severe emotional distress, mental anguish, humiliation, embarrassment, fear, and loss of enjoyment of life, and has incurred economic damages including past wage loss, loss of earning

capacity, and past and future medical expenses.

**ANSWER:** Franchisee Entity Defendants deny engaging in tortious or otherwise unlawful conduct. Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

C.   **The Subway Defendants Exercise, or Retain the Right to Exercise, Dominion and Control Over Virtually All Aspects of the Day-to-Day Operation of Their Franchisees and Development Agents, including the Franchisee and Development Agent Defendants herein.**

**ANSWER:** This paragraph is a heading to which no response is required. To the extent an answer is deemed necessary, the Franchisee Entity Defendants deny the allegations.

168.   Defendants herein jointly operate, oversee, direct, or control approximately 67 restaurants in North Dakota, including the subject Subway Restaurant where Plaintiff and Rangel worked.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

169.   From their common Connecticut headquarters, the Subway Defendants develop, adopt, implement, and enforce (or fail to enforce) common policies, practices, and procedures that apply at all Subway restaurants, including the subject Subway Restaurant where Plaintiff and Rangel worked.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

170. As described above, such common policies, practices, and procedures include those pertaining to the day-to-day operation of said Subway restaurants, including but not limited to the vetting, hiring, training, supervision, and retention of development agents, franchise owners, managers, supervisors, and employees, as well as the safety of said employees.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

171. Subway Franchisees and Development Agents, including the Franchisee Defendants and Development Agent Defendants herein, utilize and apply (or fail to utilize and apply) those policies, practices, or procedures to operate their restaurants, as required by, and under the direction, control, and scrutiny of, the Subway Defendants.

**ANSWER:** Franchise Entity Defendants deny the allegations in this paragraph.

172. The Subway Defendants' control of the Franchisee Defendants' employment policies and procedures starts at the top, with Chief Human Resources Officer Lisa Shea. A 25-year veteran of Subway's corporate leadership team with an operations background, Ms. Shea is responsible for Subway's human resources (HR) strategies, including talent management and recruitment, workplace safety, employee relations, and System-wide HR policies.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

173.    The Subway Defendants' control over their Development Agents and franchisees, including the Franchisee Defendants and Development Agent Defendants herein, also spans the entire life of the franchise, starting from their participation in selection and approval of the restaurant's location and continuing through the conduct of regular audits, inspections, site visits, and other forms of direct and indirect oversight conducted by, or at the direction of, the Subway Defendants (including but not limited to their use of Development Agents, field consultants, and regional executives).

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

174.    The Subway Defendants' control of the Franchisee Defendants' employment practices and policies begins with the initial training the Subway Defendants require and provide, completion of which is required to open and operate a Subway restaurant.

**ANSWER:** Franchise Entity Defendants deny the allegations in this paragraph.

175.    For example, upon information and belief, the Subway Defendants provide training to franchisees on-site at their corporate headquarters, where the Franchise Training Program is designed and implemented through their officers, executives, employees, and agents (including

Nicole Misencik, Manager of Global Learning & Development).

> **ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

176.    Included among the requirements for Subway Franchisees is that they, or a designated manager, complete the Subway Defendants' "Franchise Training Program," which, upon information and belief, includes 60 hours of on-the-job training provided in a Subway restaurant, as well as 40 hours of web-based training courses and 10 hours of facilitated training.

> **ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

177.    As noted above, the Subway Defendants also require their franchisees, including the Franchisee Defendants herein, to operate their restaurants in compliance with Subway's System Standards and Comprehensive Operations Manual, which sets forth "requirements" that "are necessary and reasonable to preserve the identity, reputation, and goodwill we [the Subway Defendants] developed,"26 and which, as noted above, includes chapters specifically dedicated to: (a) "Employee Development" (this chapter further includes sections on "Hiring and Training," "Recruiting," "Interviewing," "Evaluating Team Members," and "Code of Business Conduct"); (b) "Restaurant Evaluations & Compliance" (which includes sections on "The Restaurant Visit," "Performance-Based Evaluations," "Compliance," and "Evaluating Your Own Restaurant"); (c)

---

26 ECF No. 10-1 at ¶ 5(b).

"Security and Safety" (which includes sections on "Security Training," "Personal Harm and Injury," "Handling Negative Publicity and Crisis Situations," and "Responding to the Media"); and (d) "Policy and Procedure" (which includes sections on "Communication," "Code of Business Conduct," and "Transparency Policy").

> **ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

178.    Upon information and belief, the Subway Defendants monitor compliance with the Confidential Operations Manual and System Standards via periodic inspections during which they or their field consultants complete Restaurant Evaluation and Compliance Reviews (or similar reports) to document and record areas of noncompliance.

> **ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

179.    As noted above, to facilitate such control and supervision, the Subway Defendants require the Franchisee Defendants to "allow our representative and our development agent and our development agent's representatives to enter your business premises without prior notice during regular business hours to inspect, audit, photocopy and videotape your business operations and records, and to interview the Restaurant's employees and customers."[27]

---

[27] ECF No. 10-1 at ¶ 5.g.

**ANSWER:** The Franchise Agreement speaks for itself. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

180.    As also noted above, the Subway Defendants retain the right to terminate the Franchisee Defendants' franchise a "fail[s] to operate the Restaurant in accordance with the Operations Manual."[28]

**ANSWER:** The Franchise Agreement speaks for itself.  To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

181.    Pursuant to the foregoing illustrative, but non-exhaustive, list of policies, practices, and procedures, the Subway Defendants exercise, or retain the right to exercise, control over virtually every aspect of the Development Agent Defendants' conduct and over the Franchisee Defendants' day-to-day operation of the subject Subway Restaurant and employment-related policies, practices and procedures, including, as most relevant herein, those related to recruiting, hiring, training, and supervising and franchise managers, supervisors, and employees, as well as those policies and procedures related to workplace conduct and employee safety.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

182.    Unfortunately, the Subway Defendants provide inadequate training on employment practices such as manager and supervisor hiring, training, supervision, and retention, as illustrated by the hourly allocation of their 40-hours of web-based training courses, which, upon information and belief, is as follows:

---

[28] ECF No. 10-1 at ¶¶ 5.b and 8.b(vi).

| | |
|---|---|
| Sandwich Artistry, POS, Guest Services & Thru-Put, and Sales/Inventory Reporting | **24 hours** |
| Recruiting & Hiring, Developing Staff | **1 hour** |

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

183.    Similarly, upon information and belief, the Subway Defendants' 60 hours of on-the-job training does not specifically allocate any time to employment policies, practices, or procedures, but rather focuses on food preparation, maintenance, and general restaurant operations.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

184.    In short, while the Subway Defendants have promulgated policies with respect to the prevention of sexual harassment and/or assault in Subway franchise restaurants, as well as policies related to reporting and investigating complaints of such sexual harassment or assault, they have intentionally minimized the role of such polices in their franchisee training and have failed to act reasonably to ensure, via training or oversight, that such policies are understood, implemented, and/or followed by their franchisees, including the Franchisee Defendants. Accordingly, whether by intention or negligence, those policies are inadequate and ineffective.

70

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

185.    The Subway Defendants' control and authority over the Franchisee Defendants also extends to the identity of the latter's employees and managers, i.e., individual hiring and firing decisions.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

186.    For example, in addition to requiring that all franchisees keep them informed at all times of the identity of a "Designated Manager," the Subway Defendants maintain the right to replace any managers, including but not limited to any of the Designated Managers, who they determine are not qualified or suitable to operate a Subway Restaurant.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

187.    Indeed, the Subway Defendants are directly involved in the hiring process for individual franchises, including the Franchisee Defendants, via their centralized "carriers" website, which solicits and processes job applications for individual Subway restaurants.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

188.    The Subway Defendants exercise their authority over their franchises much the same way any large business exercises control over regional and local operations, i.e., through various levels of executives and regional managers acting on their behalf.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

189.    In turn, these agents act to ensure that other agents, e.g., individual business units and employees, i.e., the Franchisee Defendants and their staff, are acting on the Franchisor's behalf in the desired manner.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

190.    For example, Business Developers, also referred to by the Subway Defendants as "Business Development Agents," "Development Agents," and/or "franchise brokers," are, in reality, the operational equivalent of a Regional Vice President or similar mid-level corporate executive with operational authority over and responsibility for operations in multiple locales, and who reports to a more senior corporate executive.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

191.    Compensated and directed by the Subway Defendants' Connecticut and Florida-based senior executives, Business Developers or Development Agents are among the Subway Defendants' "eyes, ears, and arms" and primary representatives in the field.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

192.    Specifically, as noted above, Business Developers or Development Agents provide wide-ranging, day-to-day support and direction to franchisees in all their operations, including

food preparation and safety issues, customer relations, sales, site selection and leasing, and employment practices, in addition to conducting inspections to make sure that franchisees are acting effectively on behalf of the Subway and complying with their mandates.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

193.    Through not only their Business Developers or Development Agents but also other agents and employees, the Subway Defendants are responsible for the Franchisee Defendants' compliance with all Subway HR and employment policies and procedures, including ensuring that all HR practices, principles, policies, and procedures are followed and applied effectively.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

194.    For example, the Subway Defendants' Regional HR Consultants routinely provide HR direction and oversight in the field to individual restaurant managers and Business Developers or Development Agents, including the Franchisee Defendants and its owners, while coordinating directly with the Subway Defendants' Corporate Legal Department in Connecticut.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

195.    These HR Consultants are thus part of the Subway Defendants' system of centralized control and decision-making, which is overseen from their Connecticut headquarters via a reporting chain of command governing the operations of franchisee restaurants that goes all the way up to senior executives of the Subway Defendants.

73

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

196.    As noted above, Defendants Brent Olson, Peter Knoff, and John Clark are part of the Subway Defendants' centralized chain of command in their capacity as Development Agents and, upon information and belief, have received awards from the Subway Defendants for the financial performance of the franchises under their supervision, including the Franchisee Defendants.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

197.    The Subway Defendants were aware, or should have been aware, through the intense oversight and control described above, of the acts and omissions that caused Plaintiff's injuries, including the Franchisee Defendants' decision to hire a convicted sex offender and place him in a negligently unsupervised position of authority over Plaintiff, a vulnerable high school student.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

    D.    **Defendants have actual or constructive knowledge that incidents of sexual harassment, assault, or violence are prevalent across the Subway system and have failed, neglected, or refused to exercise ordinary care or make reasonable efforts to prevent them or reduce their frequency or severity.**

**ANSWER:** This paragraph is a heading to which no response is required. To the extent an answer is deemed necessary, the Franchisee Entity Defendants deny the allegations.

198.     As noted above, Plaintiff is not alone in having suffered the trauma of sexual harassment or assault at the hands of a Subway manager or fellow employee. Indeed, such incidents are prevalent across the Subway system, and Defendants know it, as illustrated by the following non-exhaustive list of similar incidents.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

199.     In September 2023, 49-year-old Stephen Lemmond pled guilty to six count of sex crimes involving several women who worked under his supervision, including four who were under the age of 18, during his time as the manager of two Subway restaurants in Ontario, Canada.[29]

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

200.     In June 2023, 34-year-old David Love was arrested after being accused of raping an employee he supervised during the night shift at an Evansville, Indiana Subway where he was the Manager.[30]

---

[29] https://barrie.ctvnews.ca/former-barrie-subway-manager-sentenced-to-7 years- behind-bars-for-sex-crimes-1.6549922

[30] https://www.wthitv.com/news/police-indiana-subway-manager-accused-of-raping-employee/article_2bec02f1-6b9d-5125-a440-0120e14e19b7.html

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

201.    In September 2021, 35-year-old Justin Nielson, a director-level manager at a Subway in Provo, Utah, was convicted of second-degree forcible sexual abuse of a 16- year-old employee arising out repeated incidents of unwelcome sexual harassment and a sexual assault.[31]

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

202.    In April 2019, 34-year-old Nathan McNeal was arrested, charged with, and ultimately pled guilty to two felonies arising of his sexual misconduct with a 15-year-old employee he supervised at the Fort Wayne, Indiana Subway he managed.[32]

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

203.    In 2018, the EEOC filed a lawsuit on behalf of two 17-year-old women who refused

---

[31] https://ksltv.com/local-news/subway-sexual-abuse-lawsuit/776725/?fbclid=IwY2xjawMm7b5leHRuA2FlbQIxMQBicmlkETFWYjJaV3pBb mhqalZ5STg3AR5TO516uK4Vlq3dcZwJCD_UxUXvtAmJNujkjJH_a_wXXXot2XyjIB QLxZJ3Dg_aem_dBdBgoiEaXEFi6422c_DOQ

[32] https://www.wane.com/news/crime/subway-manager-pleads-guilty-for-relationship- with-employee-15/

the offer of jobs in exchange for sex made by the general manager of a Subway restaurant located in Schenectady, New York.[33]

> **ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

204.    In August 2018, Jordan Matthew Johnson was arrested on preliminary charges of rape and sexual battery for allegedly drugging and raping a co-worker during their shift at a Subway in Evansville, Indiana.[34]

> **ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

205.    In July 2018, a jury rendered a verdict in favor of Sherilee Figueroa, who was fired from her job as the manager of a Subway restaurant in Pennfield, New York after complaining about the "relentless sexual harassment" to which she had been subjected by her supervisor.[35]

---

[33] https://www.hrdive.com/news/subway-franchise-pays-80k-to-settle-claims-that-manager-offered-teens-work/544784/.

[34] https://www.courierpress.com/story/news/crime/2018/08/22/evansville-fast-food-worker-accused-raping-coworker-during-shift/1064186002/

[35] https://www.democratandchronicle.com/story/news/local/columnists/andreatta/2018/07/20/jury-awards-woman-425-000-penfield-subway-sexual-harassment-case/806153002/

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

206.    In May 2018, 25-year-old Christopher Rosario was arrested and charged with rape forcible compulsion, aggravated indecent assault, unlawful restraint of a minor, corruption of minors and endangering the welfare of children in connection with allegations that he assaulted a minor co-worker while during their shift at a Subway restaurant in Western Pennsylvania.[36]

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

207.    In May 2017, Kerri Lureen filed a lawsuit on behalf S.L., her minor child, in South Dakota Federal Court alleging, in relevant part: (a) that while working at a Subway in Watertown, South Dakota, Kiley Ramstorf, the adult male general manager of said Subway, "engaged in inappropriate sexual activities with S.L. on several occasions between February and March 2016;" (b) that "Ramstorf was arrested on March 17, 2016, and charged with Sexual Contact with a Child Less than 16 – Offender 5+ Years Older, Sexual Exploitation of a Minor, and Solicitation of a Minor-Subsequent Violation;" and (c) that "Ramstorf subsequently pleaded guilty to Sexual Exploitation of a Minor and was sentenced to two years in prison."[37] Defendant John Clark who,

---

[36] https://www.pennlive.com/daily-buzz/2018/05/subway_restaurant_employee_acc.html

[37] *Lureen v. Doctor's Associates, Inc., et al.*, Case No. CIV. #17-4016 (D.S.D), ECF No. 1, Compl. ¶¶ 29, 36. 37.

as noted above, is an employee or agent of the Subway Defendants, was also a defendant in the Lureen case (having been named both individually and in his capacity as owner of the Subway restaurant where S.L. worked).

> **ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

208.    In April 2017, 38-year-old Garfield Oates was arrested and charged with three counts of sexual battery in connection with allegations of assault levied by three of his female co-workers, one of whom was only 17-years-old; specifically, those co-workers alleged that Oates groped their breasts or pressed his groin against them from behind while they were working together at a Subway restaurant in Fuquay-Varina, North Carolina.[38]

> **ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

209.    In January 2017, Jessie Danielle Hamilton was charged with first degree sexual assault after turning herself in and admitting to having a sexual relationship with a 16-year-old boy who was under her supervision at the Prairie Grove, Arkansas Subway restaurant where she was the General Manager.[39]

---

[38] https://abc11.com/post/subway-manager-accused-of-sexual-battery-on- employees/1899425/

[39] https://wcel.nwaonline.com/news/2017/jan/25/former-restaurant-manager-charged- 20170/

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

210.    In June 2016, 28-year-old Cameron Miles was charged with, and ultimately convicted of, four counts of sexual assault of a child after raping a teenaged co-worker in the parking lot of the Subway in Denton County, Texas.[40]

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

211.    In August 2015, 37-year-old Jared Fogel, the public face of Subway for more than a decade, was criminally charged for distributing and receiving child pornography and for repeatedly traveling to engage in commercial sex acts with underage minors over the course of several years.[41]

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

212.    In February 2015, Aleka Albert prevailed in a jury trial in which she alleged that she had been fired from her job as a sandwich artist at a Subway in Brooklyn, New York, after she

---

[40] https://dentonrc.com/news/blotter-man-convicted-of-sexual-assault-in-subway-parking- lot-sentenced-to-42-years-in/article_f924baa6-1507-5dbd-863b-487ba93a33cd.html

[41] https://www.justice.gov/usao-sdin/pr/jared-fogle-charged-child-pornography- distribution-and-repeatedly-engaging-commercial

complained of being sexually harassed by her supervisor.[42]

> **ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

213.    In August 2013, 41-year-old Vishnubhai Patel was charged with, and later pled guilty to, sexually assaulting a teenaged employee at the subway in Swatara Township, Pennsylvania where he was the manager.[43]

> **ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

214.    Despite their actual or constructive knowledge of the foregoing matters, and their corresponding actual or constructive knowledge of the fact that incidents of sexual harassment, assault, or violence have been, and continue to be, committed by, between, and among employees across the Subway system, Defendants have failed, neglected, or refused to make reasonable efforts to prevent such incidents of sexual harassment, assault or violence, or to reduce the frequency or severity of their occurrence.

> **ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

---

[42] https://womensrightsny.com/tuckner-sipser-wins-sexual-harassment-wage-theft-trial- against-subway-franchise/

[43] https://cumberlink.com/news/local/crime-and-courts/police-lemoyne-subway-manager-charged-after-assaulting-teen-employee/article_9dbcf884-0bec-11e3-8807- 001a4bcf887a.html

215.    In fact, Defendants have taken actions that have increased the risk of such harassment, assaults, or violence. For example, in answer to an interrogatory propounded in the above-referenced Lureen matter, Defendant Doctor's Associates, Inc., acknowledged that "[i]n 2013, DAI required on person per shift to have completed a sexual harassment course," but admitted that "[t]his course was removed in 2014, and DAI no longer requires this training."

**ANSWER:** Franchisee Entity Defendants deny the first sentence of this paragraph to the extent "Defendants" means Franchisee Defendants, and lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

216.    Additionally, Subway's Employee Training Manual, designed and implemented by the Subway Defendants, further enabled Rangel's unlawful conduct, by instructing, in relevant part, that "[i]f you do happen to have an issue with the manager or with a particular employee, you must try to get along with them in order to maintain a pleasant atmosphere."

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

## CAUSES OF ACTION

### COUNT I
### CLAIM FOR VIOLATION OF THE
### TVPRA SEX TRAFFICKING OF
### PLAINTIFF
### (Against all Defendants)

217.    Plaintiff re-alleges each of the foregoing paragraphs of her Complaint as if set forth at length herein.

**ANSWER:** Franchisee Entity Defendants incorporate by reference their answers to the preceding paragraphs as if fully stated here.

218.    Generally speaking, the William Wilberforce Trafficking Victims Protection Reauthorization Act (TVPRA), prohibits the sex trafficking of any person by force, fraud, or coercion. *See* 18 U.S.C. § 1591.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

219.    Pursuant to 18 U.S.C. § 1591(a)(2), an individual who is a victim of a violation of the TVPRA may bring a civil action against the perpetrator of the violation or "[w]however knowingly . . . benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act in violation" of the TVPRA. 18 U.S.C. § 1591(a).

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

220.    Stated another way, a violation of the TVPRA occurs when a defendant has knowingly benefitted financially or has received anything of value by virtue of participating in an act it knew or should have known involved sex trafficking, i.e., the use of "means of force, threats of force, fraud, coercion. . .or any combination of such means" to "cause [a] person to engage in a commercial sex act." 28 U.S.C. § 1591(a).

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

221.    As used in the TVPRA, the term "venture" means "any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(6).

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

222.    As used in the TVPRA, the phrase "participate in a venture" means "knowingly assisting, supporting, or facilitating a violation" of the Act. 18 U.S.C. § 1591(e)(4).

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

223.    As used the TVPRA, the term "coercion" means: "(A) threats of serious harm to or physical restraint against any person; (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or (C) the abuse or threatened abuse of law or the legal process." 18 U.S.C. § 1591(e)(2).

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

224.    As used in the TVPRA, the term "serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or continue performing commercial sexual activity in order to avoid incurring that harm." 18 U.S.C. § 1591(e)(5).

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

225.    As used in the TVPRA, the term "commercial sex act" means "any sex act, on account of which anything of value is given to or received by a person." 18 U.S.C. § 1591(e)(4).

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

226.    As set forth above, Rangel used means of force, threats of force, fraud, coercion, and/or a combination thereof—including but not limited to threats of violence or the termination of Plaintiff's employment, the promise of free food for her family, the promise of career advancement—to cause Plaintiff to engage in commercial sex acts, i.e., sex acts by virtue of which

"anything of value is given to or received by a person;" in this instance, drugs.

> **ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

227.    Through the foregoing conduct, and as set forth above, Rangel subjected Plaintiff to unlawful sex trafficking in violation of the TVPRA.

> **ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

228.    As also set forth above, at all times material herein, Rangel was an employee and/or agent of the Franchisee Defendants, the Development Agent Defendants, and/or the Subway Defendants acting within the scope of his employment, authority, or agency when he engaged in the unlawful sex trafficking, such that said Defendants are vicariously liable for his unlawful conduct.

> **ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

229.    In 2008, Congress amended the TVPRA to permit victims of sex trafficking to bring a civil action against not only the direct perpetrator of the trafficking but also certain beneficiaries of the trafficking. Pub. L. No. 108-193, 117 Stat. 2875 (2003).

> **ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

230. To establish beneficiary liability under the TVPRA, a plaintiff must show a defendant (1) "knowingly benefit[ted] financially or by receiving anything of value" (2) from participation in a venture that defendant "knew or should have known has engaged in" sex trafficking.[44]

> **ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

231. All Defendants herein each knowingly benefited financially and/or received something of value from Rangel's sex trafficking of Plaintiff, which, as set forth above, each of Defendants, either individually or through their respective employees or agents, knew or should have known was occurring.

> **ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

232. For example, each Defendant knowingly benefitted from franchise fees, royalty payments, transfer fees, and/or portions of the gross revenue generated by operation of the subject Subway Restaurant, including the revenue generated by the continued work performed by Plaintiff in exchange for the commercial sex acts coerced by Rangel.[45]

---

[44] *Lundstrom v. Holiday Hosp.* Franchising, LLC, No. 1:22-CV-056, 2023 WL 4424725, at *3 (D.N.D. May 22, 2023) (quoting 18 U.S.C. § 1595(a)).

[45] *Id.* at *6 (noting that "'[T]he rental of a hotel room constitutes a financial benefit for am relationship with the trafficker sufficient to meet this element of the [§] 1595(a) standard.") (citation omitted).

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

233.    Each Defendant herein also knew or should have known about the sex trafficking, either individually or based on the physical presence of their employees or agents involved in the regular close inspection and oversight of the operations of the subject Subway Restaurant where the trafficking occurred, including but not limited to then GM Letcher and Brent Olson, Richard Olson, John Clark, and Peter Knoff.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

234.    Additionally, as noted above, Plaintiff alerted GM Letcher that Plaintiff needed help and wanted to transfer stores or shifts, but GM Letcher, acting on behalf of the Defendants and pursuant to the training and direction of the Subway Defendants, ignored Plaintiff's report.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

235.    Additionally, the Development Agent Defendants were obligated to "inspect all units in [their] Territory at least once per month," including the subject Subway Restaurant, to ensure its operations were in compliance with the Subway Defendants' "Operating Manual and Rules and the Company's Compliance Manual."[46] Upon information and believe, the Development Agent Defendants failed or neglected to perform such inspections, or performed them negligently such that they failed to discover Rangel's unlawful sex trafficking.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

---

[46] ECF No. 10-2 at ¶2(o).

236.    Accordingly, the Franchisee Defendants and Development Agent Defendants are directly liable for violation of the TVPRA.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

237.    The Subway Defendants are likewise directly liable for violation of the TVPRA, and they are indirectly liable as well given the existence of an agency relationship between the Subway Defendants on the one hand and the Development Agent Defendants and Franchisee Defendants on the other. Indeed, as set forth above, at all times material herein, based on their relationship, conduct, course of dealings, and communications, the Development Agent Defendants and Franchisee Defendants were agents, either actual or ostensible, of the Subway Defendants and were acting on behalf of the Subway Defendants with actual or apparent authority and subject to their direction and control.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

238.    As a direct result of Defendants' TVPRA violations, and of the corresponding physical, sexual, and mental abuse and other traumas she was forced to endure while working at the subject Subway Restaurant, Plaintiff has suffered permanent physical and psychological injuries, has dropped out of high school, has experienced periods of homelessness as she has battled drug addiction and the ongoing consequences of said abuse and trauma, and has otherwise suffered damages as described herein.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

**COUNT II**
**CLAIM FOR NEGLIGENCE**
**(Against all Defendants)**

239.    Plaintiff re-alleges each of the foregoing paragraphs of her Complaint as if set forth at length herein.

**ANSWER:** Franchisee Entity Defendants incorporate by reference their answers to the preceding paragraphs as if fully stated here.

240.    At all times material herein, Defendants owed Plaintiff various duties of care, including but not limited to the duty to "abstain from injuring the person or property of another or infringing upon that person's rights";[47] the duty to exercise "ordinary care or skill in the management of [their] property or self;"[48] the duty "to act reasonably to protect others from harm" (including Plaintiff);[49] and, with respect to the Subway Defendants, the duty to act reasonably in exercising the control they retained over the operations of the Franchisee Defendants and/or the Development Agent Defendants, including those relating to the day-to-day operation of the subject Subway Restaurant and the vetting, hiring, training, supervision, and retention of development agents, franchise owners, managers, supervisors, and employees, as well as the safety of said employees.

---

[47] N.D. Cent. Code § 9-10-01

[48] N.D. Cent Code § 9-10-06

[49] *Dinger ex rel. Dinger v. Strata Corp.*, 2000 ND 41, ¶ 16, 607 N.W.2d 886, 891.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

241.    Defendants breached those duties in myriad respects, including but not limited to by:

       a.    failing and neglecting to develop, adopt, implement and/or enforce adequate policies, procedures, or practices with respect to the performance of background checks or other pre-employment screening measures;

       b.    either: (1) failing or neglecting to perform adequate screening or background checks on Rangel prior to hiring him (as noted above, any such screening or background check would have revealed that Rangel was a registered sex offender who was then on probation following his conviction for crimes involving sexual assault and violence directed at persons similar in age to Plaintiff); or (2) performing a background check and hiring Rangel anyway, thereafter knowingly placing him, a registered sex offender, in a supervisory position over Plaintiff;

       c.    failing and neglecting to warn Plaintiff of the dangers that confronted her in her workplace, including but not limited to the fact that her supervisor was a registered sex offender who was then on probation following his conviction for crimes involving sexual assault and violence directed at persons similar in age to Plaintiff;

       d.    failing or neglecting to adequately supervise Rangel, despite actual or constructive knowledge of his status as a registered and convicted sex offender, which resulted in him having unrestricted access to minor victims including Plaintiff;

       e.    continuing to employ Rangel and allowing him to supervise underaged employees, including Plaintiff, when Defendants had information pertaining to Plaintiff's discomfort with working with Rangel and her request to be transferred to another Subway store or to another shift;

       f.    failing or neglecting to properly investigate or address Plaintiff's complaints of discomfort with continuing to work on the same shift with Rangel;

g.    failing and neglecting to properly address other employees' complaints of abuse, harassment, assault, sexual offenses, and/or unlawful activity;

h.    failing or neglecting to take reasonable steps to prevent or curtail the sexual exploitation and abuse of employees at Subway restaurants, including Plaintiff, despite Defendants actual or constructive knowledge that incidents of sexual harassment, assault, or violence have been, and continue to be, committed by, between, and among employees of Subway restaurants across the country;

i.    failing and neglecting to develop, adopt, implement, and/or enforce adequate policies and procedures regarding sexual harassment, misconduct, or assault and other misconduct, and the reporting thereof;

j.    failing and neglecting to adequately train employees of Subway restaurants, including Plaintiff, on how to identify, address, and report incidents of violence, sexual harassment, sexual assault and/or battery, and a sexually hostile or violent work environment;

k.    failing and neglecting to adequately train employees of Subway restaurants, including Plaintiff, on how to identify, address, and report incidents pertaining to drinking, drugs, and unknown illicit substances in the workplace (including when offered/given to her as a minor);

l.    failing and neglecting to ensure compliance with, and/or failing and neglecting to ensure that the subject Subway Restaurant was being operated in compliance with, the Operations Manual, the Subway Systems Standards, the applicable Franchise Agreement, the applicable Development Agent Agreement, and/or the Code of Conduct;

m.    failing and neglecting to conduct adequate inspections of the operations and conditions that prevailed at the subject Subway Restaurant, or failing and neglecting to ensure such inspections were conducted, which inspections would have revealed the unlawful conduct to which Plaintiff was being subjected while working there; and

n.    committing other negligent acts or omissions.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

242.    As set forth above, in addition to being liable for their own direct negligence, tortious, or otherwise unlawful conduct, the Subway Defendants are vicariously liable for the negligence, tortious, or otherwise unlawful conduct of the Franchisee Defendants and the

Development Agent Defendants either as a joint employer of Plaintiff or under an integrated enterprise or agency theory.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

243.    As set forth above, in addition to being liable for their own direct negligence, tortious, or otherwise unlawful conduct, the Development Agent Defendants are vicariously liable for the negligence, tortious, or otherwise unlawful conduct of the Franchisee Defendants as a joint employer of Plaintiff.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

244.    As set forth above, in addition to being liable for their own direct negligence, tortious, or otherwise unlawful conduct, the Franchisee Defendants are vicariously liable for the negligence, tortious, or otherwise unlawful conduct of their employees as Plaintiff's or under an integrated enterprise theory.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

245.    By their foregoing negligent acts or omission, Defendants were guilty of oppression, fraud or malice.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

246.    As a direct result of Defendants' negligence, and of the corresponding physical, sexual, and mental abuse and other traumas she was forced to endure while working at the subject Subway Restaurant, Plaintiff has suffered permanent physical and psychological injuries, has

dropped out of high school, has experienced periods of homelessness as she has battled drug addiction and the ongoing consequences of said abuse and trauma, and has otherwise suffered damages as described herein.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.


## COUNT III
## CLAIM FOR NEGLIGENT HIRING
### (Against All Defendants)

247.    Plaintiff re-alleges each of the foregoing paragraphs of her Complaint as if set forth at length herein.

**ANSWER:** Franchisee Entity Defendants incorporate by reference their answers to the preceding paragraphs as if fully stated here.


248.    As set forth above, at all times material herein Defendants were joint employers of Plaintiff and Rangel (and of the other employees who worked with them at the subject Subway Restaurant) and they owed Plaintiff various duties of care, including a duty to conduct a reasonable level of pre-employment screening for potential employees and potential supervisors and to reasonably discover their dangerous propensities to sexually assault and batter minors, including teenagers.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.


249.    As also set forth above, before being hired to work at the subject Subway Restaurant Rangel had propensities to sexually assault and batter children, minors, teenagers, and/or women, and had a documented history of doing so, including criminal convictions for engaging in such

unlawful conduct.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

250.    Rangel's dangerous propensities to sexually assault children and teenagers, and his history of doing so, were reasonably discoverable, and were or would have been apparent to Defendants had they exercised reasonable care.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

251.    As set forth above, however, Defendants failed to do so and either did not perform adequate screening or background checks on Rangel prior to hiring him (which would have revealed he was a registered sex offender then on probation following his conviction for crimes involving sexual assault and violence directed at persons similar in age to Plaintiff); or did perform a background check and hired Rangel anyway, thereafter knowingly placing him, a registered sex offender, in a supervisory position over Plaintiff without warning her of his known dangerous proclivities.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

252.    The above-referenced information pertaining to Rangel being a registered sex offender was reasonably available to Defendants and would have alerted a reasonable employer that Rangel posed a threat to Plaintiff and to other minor employees.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

253.    In short, Defendants failed to exercise reasonable care with respect to their decision to hire Rangel.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

254.    By their foregoing negligent acts or omission, Defendants were guilty of oppression, fraud or malice.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

255.    As set forth above, the Subway Defendants are vicariously liable for the negligence, tortious, or otherwise unlawful conduct of the Franchisee Defendants, including the negligent hiring of Rangel, either as a joint employer of Plaintiff or under an integrated enterprise or agency theory.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required, except the Franchisee Entity Defendants deny engaging in any negligent, tortious or otherwise unlawful conduct. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

256.    As set forth above, the Development Agent Defendants are vicariously liable for the negligence, tortious, or otherwise unlawful conduct of the Franchisee Defendants, including the negligent hiring of Rangel, as a joint employer of Plaintiff.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required except the Franchisee Entity Defendants deny engaging in any negligent,

tortious or otherwise unlawful conduct. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

257.    As a direct result of Defendants' foregoing conduct, and of the corresponding physical, sexual, and mental abuse and other traumas she was forced to endure while working at the subject Subway Restaurant, Plaintiff has suffered permanent physical and psychological injuries, has dropped out of high school, has experienced periods of homelessness as she has battled drug addiction and the ongoing consequences of said abuse and trauma, and has otherwise suffered damages as described herein.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

## COUNT IV:
## CLAIM FOR NEGLIGENT RETENTION
### (Against All Defendants)

258.    Plaintiff re-alleges each of the foregoing paragraphs of her Complaint as if set forth at length herein.

**ANSWER:** Franchisee Entity Defendants incorporate by reference their answers to the preceding paragraphs as if fully stated here.

259.    As set forth above, when Rangel assaulted, battered, and raped Plaintiff, Defendants knew or should have known, through the use of ordinary care, of Rangel's reasonably discoverable status as a sex offender and his propensities to sexually assault and batter minors and, of his history of doing so. Despite that actual or constructive knowledge, Defendants negligently placed, and allowed Plaintiff to continue, under Rangel's supervision or otherwise in a position where Rangel

would have access to potential victims, including Plaintiff, and/or where the threatened harm would come to pass.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

260. The above-referenced information pertaining to Rangel being a registered sex offender was reasonably available to Defendants and would have alerted a reasonable employer that Rangel posed a threat to Plaintiff and to other teenage/minor employees and female employees.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

261. Defendants were aware or should have been aware that Rangel was a danger to others—especially to minors—and that he was unfit for employment in close proximity to underaged employees. Nevertheless, Defendants continued to employ Rangel and assigned or otherwise permitted him to work with Plaintiff without supervision.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

262. Defendants also failed to take corrective measures, such as investigating, or discharging Rangel, even after Plaintiff informed the Franchisee Defendants that she felt uncomfortable working on the shift with Rangel and that she wanted to be transferred to another store or work a different shift where she would not have to interact with him or close the store with him. Upon information and belief, the Franchisee Defendants made no attempt to investigate why Plaintiff felt uncomfortable or take any measures to determine whether Rangel's behavior needed correction.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

263.    In short, Defendants failed to exercise reasonable care with respect to their decision to retain Rangel.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

264.    By their foregoing negligent acts or omission, Defendants were guilty of oppression, fraud or malice.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

265.    As set forth above, the Subway Defendants are vicariously liable for the negligence, tortious, or otherwise unlawful conduct of the Franchisee Defendants, including the negligent retention of Rangel, either as a joint employer of Plaintiff or under an integrated enterprise or agency theory.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required, except Franchisee Entity Defendants deny engaging in any negligent, tortious or otherwise unlawful conduct. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

266.    As set forth above, the Development Agent Defendants are vicariously liable for the negligence, tortious, or otherwise unlawful conduct of the Franchisee Defendants, including the negligent hiring of Rangel, as a joint employer of Plaintiff.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

267.    As a direct result of Defendants' foregoing conduct, and of the corresponding physical, sexual, and mental abuse and other traumas she was forced to endure while working at the subject Subway Restaurant, Plaintiff has suffered permanent physical and psychological injuries, has dropped out of high school, has experienced periods of homelessness as she has battled drug addiction and the ongoing consequences of said abuse and trauma, and has otherwise suffered damages as described herein.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

## COUNT V
## CLAIM FOR NEGLIGENT SUPERVISION
### (Against All Defendants)

268.    Plaintiff realleges each of the foregoing paragraphs of her Complaint as if set forth at length herein.

**ANSWER:** Franchisee Entity Defendants incorporate by reference their answers to the preceding paragraphs as if fully stated here.

269.    As set forth above, when Rangel assaulted, battered, and raped Plaintiff, Defendants knew or should have known, through the use of ordinary care, of Rangel's reasonably discoverable propensities to sexually assault and batter minors, teenagers, and history of doing so. Despite that actual or constructive knowledge, Defendants negligently placed Plaintiff in a position where Rangel would have access to potential victims, including Plaintiff, and/or where the threatened harm would come to pass, and failed to reasonably supervise him.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

270.    The above-referenced information pertaining to Rangel being a registered sex offender, which was reasonably available to Defendants, alerted or should have alerted a reasonable employer that Rangel posed a threat to Plaintiff and to other teenage/minor employees, and yet Defendants failed to reasonably supervise him.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

271.    Defendants were aware or should have been aware that Rangel was a danger to others—especially to minors—and that he was unfit for employment but continued to employ him without supervision.  Defendants did not take measures to ensure Rangel was adequately supervised when working with and supervising Plaintiff and other underage employees.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

272.    In short, Defendants failed to exercise reasonable care with respect to their decision to retain Rangel.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

273.    By their foregoing negligent acts or omission, Defendants were guilty of oppression, fraud or malice.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

274.    As set forth above, the Subway Defendants are vicariously liable for the negligence, tortious, or otherwise unlawful conduct of the Franchisee Defendants, including the negligent supervision of Rangel, either as a joint employer of Plaintiff or under an integrated enterprise or

agency theory.

> **ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required, except that Franchisee Entity Defendants deny engaging in any negligent, tortious or otherwise unlawful conduct. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

275.    As set forth above, the Development Agent Defendants are vicariously liable for the negligence, tortious, or otherwise unlawful conduct of the Franchisee Defendants, including the negligent supervision of Rangel, as a joint employer of Plaintiff.

> **ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

276.    As a direct result of Defendants' foregoing conduct, and of the corresponding physical, sexual, and mental abuse and other traumas she was forced to endure while working at the subject Subway Restaurant, Plaintiff has suffered permanent physical and psychological injuries, has dropped out of high school, has experienced periods of homelessness as she has battled drug addiction and the ongoing consequences of said abuse and trauma, and has otherwise suffered damages as described herein.

> **ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

## COUNT VI
## CLAIM FOR ASSAULT AND BATTERY
### (Against All Defendants)

277.    Plaintiff realleges each of the foregoing paragraphs or her Complaint as if set forth at length herein.

102

**ANSWER:** Franchisee Entity Defendants incorporate by reference their answers to the preceding paragraphs as if fully stated here.

278.    At all times material hereto, the Defendants, collectively and individually, had a duty to maintain a work environment free of assault and battery.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

279.    During each occasion enumerated above, Plaintiff was placed in apprehension of imminent harmful or offensive contact with angel's person, which created a reasonable apprehension of a battery.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

280.    During each occasion enumerated above, Plaintiff was subject to an unwanted touching, which was not consented to (and could not be due to Plaintiff's minor age), excused, or justified.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

281.    The acts of Rangel constitute assault and battery under the law of North Dakota.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

282.    The acts of Defendants, through Rangel, their agent or employee, constitute assault and battery under the law of North Dakota, for which the Defendants are liable under the theory of respondeat superior or otherwise under North Dakota law.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

283.    As set forth above, the Subway Defendants are vicariously liable for the negligence, tortious, or otherwise unlawful conduct of Rangel either as a joint employer or under an integrated enterprise or agency theory.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required, except Franchisee Entity Defendants deny engaging in any negligent, tortious or otherwise unlawful conduct. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

284.    As set forth above, the Development Agent Defendants are vicariously liable for the negligence, tortious, or otherwise unlawful conduct of Rangel as a joint employer.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

285.    By the foregoing unlawful conduct, Defendants were guilty of oppression, fraud or malice.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

286.    As a direct result of Defendants' foregoing conduct, and of the corresponding physical, sexual, and mental abuse and other traumas she was forced to endure while working at the subject Subway Restaurant, Plaintiff has suffered permanent physical and psychological injuries, has dropped out of high school, has experienced periods of homelessness as she has battled drug addiction and the ongoing consequences of said abuse and trauma, and has otherwise suffered damages as described herein.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

## COUNT VII
## CLAIM FOR SEXUAL ASSAULT
### (Against All Defendants)

287.    Plaintiff realleges each of the foregoing paragraphs of her Complaint as if set forth at length herein.

**ANSWER:** Franchisee Entity Defendants incorporate by reference their answers to the preceding paragraphs as if fully stated here.

288.    During each occasion enumerated above, the then-seventeen-year-old Plaintiff (a minor) was placed in apprehension of imminent harmful or offensive contact with Rangel's person, which created a reasonable apprehension of sexual assault.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

289. During each occasion enumerated above, Plaintiff was subject to sexual assault, which was not consented to (and could not be consented to, due to Plaintiff's minor age), excused, or justified.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

290. The acts of Rangel constitute sexual assault under the law of North Dakota.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

291. The acts of the Defendants through their agent or employee, constitute sexual assault under the law of North Dakota, for which Defendants are liable under the theory of *respondeat superior* or otherwise under North Dakota law.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

292.     As set forth above, the Subway Defendants are vicariously liable for the negligence, tortious, or otherwise unlawful conduct of Rangel either as a joint employer or under an integrated enterprise or agency theory.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

293.     As set forth above, the Development Agent Defendants are vicariously liable for the negligence, tortious, or otherwise unlawful conduct of Rangel as a joint employer.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

294.     By the foregoing unlawful conduct, Defendants were guilty of oppression, fraud or malice.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

295.     As a direct result of Defendants' foregoing conduct, and of the corresponding physical, sexual, and mental abuse and other traumas she was forced to endure while working at the subject Subway Restaurant, Plaintiff has suffered permanent physical and psychological injuries, has dropped out of high school, has experienced periods of homelessness as she has battled drug addiction and the ongoing consequences of said abuse and trauma, and has otherwise suffered damages as described herein.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

**COUNT VIII**
**CLAIM FOR FALSE IMPRISONMENT**
**(Against All Defendants)**

296.    Plaintiff realleges each of the foregoing paragraphs of her Complaint as if set forth at length herein.

**ANSWER:** Franchisee Entity Defendants incorporate by reference their answers to the preceding paragraphs as if fully stated here.

297.    During Plaintiff's employment at the subject Subway Restaurant operated and controlled by Defendants, Plaintiff, as a result of and during Rangel's sexual assaults, was physically and unlawfully restrained.

**ANSWER:** Franchisee Entity Defendants deny that the subject Subway Restaurant was operated and controlled by all Defendants, and lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

298.    Specifically, Rangel physically trapped Plaintiff in a bathroom at the subject Subway Restaurant where he and Plaintiff worked in order to assault her.

**ANSWER:** Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

299.    Rangel also physically trapped Plaintiff in his home—as a result of Defendants' requiring Plaintiff to provide Rangel with transportation as part of her job duties—in order to assault her.

**ANSWER:** Franchisee Defendant deny requiring Plaintiff to provide Rangel with transportation as part of her job duties, or that anything occurred as a result of such a purported requirement. Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

300.    Rangel's unlawful restraint of Plaintiff's person occurred at the subject Subway Restaurant operated and controlled by Defendants, while Rangel was acting as an employee and/or agent of Defendants.

**ANSWER:** Franchisee Entity Defendants deny that the subject Subway Restaurant was operated and controlled by all Defendants, and that Rangel was acting as an employee and/or agent of all Defendants. Franchisee Entity Defendants lack knowledge or information sufficient to admit or deny the remaining allegations in this paragraph. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

301.    Rangel's further unlawful restraint of Plaintiff's person occurred at Rangel's home as a result of Defendants' requiring Plaintiff to take provide Rangel with transportation as part of her job duties, while Rangel was acting as an employee and/or agent of Defendants.

**ANSWER:** Franchisee Defendant deny requiring Plaintiff to provide Rangel with transportation as part of her job duties, or that anything occurred as a result of such a

purported requirement, and deny that Rangel was acting as an employee and/or agent of all Defendants. To the extent an answer is deemed necessary, Franchisee Entity Defendants deny.

302.     Rangel's unlawful restraint of Plaintiff constitutes false imprisonment under North Dakota Law.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

303.     The acts of the Defendants through their agent or employee, constitute sexual assault under the law of North Dakota, for which Defendants are liable under the theory of respondeat superior or otherwise under North Dakota law.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

304.     As set forth above, the Subway Defendants are vicariously liable for the negligence, tortious, or otherwise unlawful conduct of Rangel either as a joint employer or under an integrated enterprise or agency theory.

**ANSWER:** The allegations in this paragraph are legal conclusions to which no response is required, except Franchisee Entity Defendants deny engaging in any negligent, tortious or otherwise unlawful conduct. To the extent that an answer is deemed necessary, Franchisee Entity Defendants deny.

305.    As set forth above, the Development Agent Defendants are vicariously liable for the negligence, tortious, or otherwise unlawful conduct of Rangel as a joint employer.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

306.    By the foregoing unlawful conduct, Defendants were guilty of oppression, fraud or malice.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

307.    As a direct result of Defendants' foregoing conduct, and of the corresponding physical, sexual, and mental abuse and other traumas she was forced to endure while working at the subject Subway Restaurant, Plaintiff has suffered permanent physical and psychological injuries, has dropped out of high school, has experienced periods of homelessness as she has battled drug addiction and the ongoing consequences of said abuse and trauma, and has otherwise suffered damages as described herein.

**ANSWER:** Franchisee Entity Defendants deny the allegations in this paragraph.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff C.S. demands judgment against the Defendants, and each of them, for injunctive and equitable relief, and monetary damages in an amount to be proved by the evidence at trial, together with pre-judgment interest and for costs and attorney's fees to the extent recoverable by law, and for such other and further relief as may be just and equitable. Plaintiff places Defendants on notice of her intent to seek leave of Court to amend this Complaint to include a claim for punitive damages.

**ANSWER:** Franchisee Entity Defendants deny that Plaintiff is entitled to the relief sought.

## JURY DEMAND

Plaintiff demands trial by jury on all issues that may be tried before a jury, including arbitrability of any claim.

## AFFIRMATIVE AND OTHER DEFENSES

Further answering, Defendants allege the following affirmative and other defenses:

1.      Plaintiff's Complaint fails, in whole or in part, to state a claim for which relief may be granted.  More specifically, Plaintiff cannot prove all the necessary elements of Plaintiff's claims.  Further, Plaintiff's Complaint fails to state sufficient facts that would support an award of actual, compensatory, treble, punitive, emotional distress, or other damages or fees against Defendants.

2.      Plaintiff's claims may be barred in whole, or in part, because of the applicable statutes of limitations, because it was not timely filed and/or served, and/or because of other applicable statutory filing requirements (including bars to recovery such as waiver, unclean hands, laches, equitable estoppel, and/or mistake).

3.      Plaintiff's claims may be barred in whole, or in part, because of workers' compensation exclusivity.

4.      Plaintiff's claims may be barred, in whole or in part, because the Complaint alleges conduct of nonsupervisory employees of which Defendants were not and should not have been aware.

5.      If any improper or illegal actions were taken by any of Defendants' employees against Plaintiff, they were outside the course and scope of that employee's employment, contrary to Defendants' policies and good faith efforts to comply with the law, and were not ratified, confirmed, or approved by Defendants. Thus, any such actions cannot be attributed or imputed to Defendants.

112

6.      Without admitting any wrongful conduct by Defendants or any of the Defendants' employees, agents, or representatives, Defendants neither authorized nor ratified any alleged wrongful conduct by any employee, agent, or representative of Defendants, and therefore, Defendants cannot be held liable for any punitive or exemplary damages arising out of any alleged wrongful conduct by any of its employees, agents, or representatives.

7.      Plaintiff's claims may be barred in whole, or in part because the claimed damages, if any, were caused by Plaintiff's own conduct, action, and inaction, and by Plaintiff's own comparative fault.

8.      To the extent Plaintiff is seeking punitive damages, such claim is barred because an award of such damages would violate Defendants' Constitutional rights.

9.      To the extent Plaintiff is seeking punitive damages, such a claim is barred because the alleged acts or omissions of Defendants do not rise to the level required to sustain an award of punitive damages, do not evidence malicious or reckless indifference, are not so wanton or willful as to support an award of punitive damages, and do not otherwise entitle Plaintiff to punitive damages.

10.      Plaintiff's claims are barred in whole or in part, or Plaintiff's damages may be reduced, to the full extent of the operation of the doctrine of after-acquired evidence.

11.      The extent to which Plaintiff's Complaint may be barred by any remaining affirmative or other defenses, including those contemplated by the Federal Rules of Civil Procedure, cannot be determined at this time without the benefit of additional discovery. Thus, as a separate and affirmative defense to Plaintiff's Petition, Defendants reserve the right to assert all affirmative defenses and other defenses as appropriate.

WHEREFORE, having responded to the allegations in Plaintiff's Complaint, Defendants hereby request that the Court enter an Order:

A.    Dismissing the Complaint in its entirety, with prejudice, and awarding Defendants their costs and expenses, including reasonable attorneys' fees, as set forth under the law; and

B.    Awarding Defendants such other relief as the Court deems just and proper.

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P. C.**

Dated: November 14, 2025

*/s/ Jasmine Y. McCormick*
Andrew E. Tanick, MN #178573
Capella Tower
225 South Sixth Street, Suite 1800
Minneapolis, MN  55402
Telephone:  612-339-1818
Facsimile:  612-339-0061
andrew.tanick@ogletree.com

Jasmine Y. McCormick, MO #66386
7700 Bonhomme Ave, Suite 650
St. Louis, Missouri 63105
Telephone: 314-802-3935
Facsimile:  314-802-3936
jasmine.mccormick@ogletree.com

**Attorneys for Defendants GRB Investments, LLC, GRB Subway Properties, LLP, Midwest Subway Development, LLP, Brent Olson, Peter Knoff, and John Clark**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing documents was filed electronically with the court using the CM/ECF system on this 14th day of November 2025 and was thereby served upon all counsel of record.

/s/ *Jasmine Y. McCormick*