**UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| C.S. an individual, <br><br> Plaintiff, <br><br> v. <br><br> Subway Worldwide, Inc., <br> Doctor's Associates, LLC, <br> Subway IP, LLC, <br> Franchise World Headquarters, LLC, <br> GRB Investments, LLC, <br> GRB Subway Properties, LLP, <br> Midwest Subway Development, LLP, Brent <br> Olson, Peter Knoff, and John Clark, <br><br> Defendants. | Case No. 3:24-cv-31-PDW-ARS <br><br><br> **GRB INVESTMENTS, LLC,** <br> **GRB SUBWAY PROPERTIES, LLP,** <br> **MIDWEST SUBWAY DEVELOPMENT,** <br> **LLP, BRENT OLSON, PETER KNOFF,** <br> **AND JOHN CLARK'S MEMORANDUM** <br> **IN SUPPORT OF MOTION FOR** <br> **JUDGMENT ON THE PLEADINGS AS** <br> **TO COUNTS II-VIII** |

Defendants GRB Investments, LLC, GRB Subway Properties, LLP, Midwest Subway

Development, LLP, Brent Olson, Peter Knoff, and John Clark (collectively, the "Moving

Defendants"), by their undersigned counsel, respectfully submit this Memorandum of Law in

Support of their Motion for Judgment on the Pleadings on Counts II through VIII of the First

Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(c) and Rule 7.1(A)(1)(a) of

the Local Rules for the District of North Dakota.

**OVERVIEW**

Plaintiff previously worked at a "Subway" restaurant franchise in Jamestown.  She alleges,

in her First Amended Complaint, that she suffered serious and permanent physical and

psychological injuries arising from her employment when her co-worker repeatedly sexually

assaulted and raped her, both on-site and off-site. Plaintiff seeks to impose liability for the co-

worker's conduct on the Moving Defendants, who are non-franchisor businesses and individuals

associated with the restaurant, as well as the franchisor-related Co-Defendants.  To do so, she

alleges that the Defendants all jointly employed her and the co-worker who assaulted her, and that therefore, all of the Defendants are liable for her injuries. Counts II through VIII of the First Amended Complaint allege various state-law common law claims against the Defendants on the basis of their own alleged negligence in connection with the co-worker's hire and employment, as well as vicarious liability, as alleged joint employers, for that employee's tortious conduct.

Plaintiff's common law claims are barred, however, because the North Dakota Workers' Compensation Act expressly abolished all civil liability for employers for work-related injuries, in favor of enabling employees to obtain workers' compensation benefits for such injuries. The sole exception to that rule of exclusivity pertains to actions where the employer itself engages in intentional acts with the conscious purpose of causing an employee's injuries. The Supreme Court of North Dakota has endorsed that rule of exclusivity and the courts' limited role in applying it, holding, "The Legislature is much better suited than courts to identify or set the public policy in this state. …The Legislature has spoken and set the public policy on the limits of a covered employer's liability." *Bartholomay v. Plans Grain & Agronomy,* LLC, 2016 ND 138, ¶ 15, 881 N.W.2d 249, 255 (2016) (internal citation omitted). Because Plaintiff does not allege, in her First Amended Complaint, that the Moving Defendants intentionally hired and retained the offending coworker with the "conscious purpose" of causing her injuries, the First Amended Complaint does not plausibly allege any liability against the Moving Defendants as to Counts II through VIII. Therefore, North Dakota law mandates the dismissal of those Counts.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows for a motion for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. Fed. R. Civ. P. 12(c).  As to the parties to this motion, the pleadings are closed:  Plaintiff filed her First Amended Complaint (Doc. 67) on September 26, 2025, Defendants GRB Investments, LLC, GRB Subway Properties, LLP,

and Midwest Subway Development, LLP, filed their Separate Answer to the First Amended

Complaint (Doc. 74) on November 14, 2025, and Defendants Brent Olson, Peter Knoff and John

Clark filed their Separate Answer to the First Amended Complaint on January 12, 2026 (Doc. 79).

The case is not yet scheduled for trial.

Judgment on the pleadings is appropriate where, taking the facts pled by the non-moving

party as true and drawing all reasonable inferences in favor of the non-moving party, the moving

party is entitled to judgment as a matter of law.  *National Union Fire Ins. Co. of Pittsburgh v.*

*Cargill, Inc.*, 61 F.4th 615, 619 (8th Cir. 2023). "In responding to a motion for judgment on the

pleadings, the plaintiff bears the burden of showing the complaint sufficiently states a claim for

relief that is plausible on its face." *Kiefer v. Isanti Cnty., Minnesota*, 71 F.4th 1149, 1152 (8th

Cir.), *cert. denied*, 144 S. Ct. 353, 217 L. Ed. 2d 189 (2023). "Facial plausibility is demonstrated

when there is sufficient factual content in the complaint allowing a court to draw a reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (affirming judgment on the

pleadings when plaintiff failed to plausibly allege liability of defendant). "In other words,

the pleadings must "possess enough heft to 'sho[w] that the pleader is entitled to relief.'"  *Martin*

*v. Gourneau,* 2024 WL 1640945 *4 (D. N.D. Feb. 28, 2024) (report and recommendation), *quoting*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007), *report and recommendation adopted,* 2024

WL 1637539 (D. N.D. April 16, 2024), *aff'd* 2025 WL 687032 (8th Cir. March 4, 2024) (per

curiam).

Because Counts II-VIII of the First Amended Complaint are clearly barred by the North

Dakota's law of workers' compensation exclusivity, even taking Plaintiff's allegations as true and

drawing all reasonable inferences in her favor, Plaintiff's First Amended Complaint cannot show

"enough heft" to state a plausible cause of action as to those claims.  As such, dismissal under Rule

12(c) is appropriate.

<h2 align="center">PLAINTIFF'S RELEVANT ALLEGATIONS[1]</h2>

Plaintiff alleges that she met a man named Zeferino Carlos Rangel ("Rangel") through their

mutual employment at a Subway restaurant in Jamestown, North Dakota, owned and operated

(according to Plaintiff) by all of the Moving Defendants except Defendant John Clark. (Doc. 67,

First Amended Complaint, ¶¶ 11-12) ("First. Amd. Compl."). She asserts that Rangel was her

supervisor at the restaurant.  (*Id.* at ¶¶ 2, 11, 17, 33, 94, 95, 132, 136, 241(b), 241(c), 251).  Plaintiff

alleges that Rangel was a registered sex offender with a history of sexual violence at the time he

was hired. (*Id.* ¶ 99). She alleges that he provided her with illegal drugs, eventually demanding

that she perform sex acts with him in exchange for more drugs. (*Id.* ¶¶ 121-122, 128-130). She

claims that Rangel sexually assaulted and raped her on multiple occasions, including in the

restaurant. (*Id.* ¶¶ 2, 134-140). She further alleges that when she became pregnant, he "forced

Plaintiff to ingest large quantities of liquor and drugs, demanding Plaintiff take *all of it*, in order

to force an abortion," and as a result she fell unconscious and awoke "bleeding and severely ill"

and "no longer pregnant."  *Id.* at (¶¶ 143-144; emphasis in original). Plaintiff eventually reported

the sexual violence to her high school principal, who called the police. (*Id.* ¶¶ 155-157). Rangel

was arrested and eventually pleaded guilty to several felonies and was sentenced to 25 years in

prison. (*Id.* ¶¶ 163-164).

Plaintiff's Amended Complaint connects Rangel's actions directly to their employment

together at the restaurant. She asserts that Rangel gave her drugs at the restaurant (*Id.* ¶¶ 121, 124,

126, 133), had those drugs delivered to the restaurant (*Id.* ¶ 127), assaulted her "during the shifts

---

[1] While the allegations are taken as true for the purposes of evaluating a Motion for Judgment on the Pleadings, the Moving Defendants do not admit any of Plaintiff's factual allegations.

4

they worked together" and "on work premises" (*Id.* ¶¶ 130, 134), and exchanged drugs for sex when Plaintiff gave him rides to work at the direction of their manager (*Id.* ¶¶ 131-132). She further asserts that she submitted to Rangel's demands because he told her he was her boss and threatened to fire her if she did not comply, and that she therefore feared losing her job if she resisted. (*Id*. ¶¶ 136, 139, 145).

Plaintiff asserts that she suffered both physical and psychological injuries as a result of Rangel's actions. With regard to physical injuries, she alleges that she was subjected to sexual assaults, physical violence, and assault (*Id*. ¶ 17); physical violence (*Id* . ¶ 23); physical and sexual abuse and permanent physical injuries (*Id*. ¶ 36); sexual abuse, assault and rape (*Id*. ¶ 134); physical harm (*Id*. ¶ 141); an involuntarily induced abortion (*Id.* ¶¶ 143-144); sexual violence (*Id.* ¶ 156); severe, permanent and "unimaginable" physical injuries (*Id.* ¶ 167); and physical and sexual abuse and permanent physical injuries (*Id.* ¶¶ 238, 246, 257, 267, 276, 286, 295, 307).

As a result of her alleged work-related physical and psychological injuries, Plaintiff filed this action, asserting against all Defendants the following Counts relevant to this Motion:

- Count II – Negligence;

- Count III – Negligent Hiring;

- Count IV – Negligent Retention;

- Count V – Negligent Supervision;

- Count VI – Assault and Battery;

- Count VII – Sexual Assault; and

- Count VIII – False Imprisonment.

As noted, Plaintiff seeks to hold all of the Defendants liable under the above theories on the grounds that they were all her and Rangel's joint employers. (*Id.* ¶¶ 45, 51. 58. 243. 248).

**DISCUSSION**

Taking as true Plaintiff's claim that all of the Moving Defendants were her employers, as the Court must do on a Rule 12(c) motion, Counts II through VIII of the Amended Complaint fail to state a claim for relief that is plausible on its face, because with one exception not applicable here, employers are entitled to immunity for any civil actions arising out of alleged work-related injuries under the North Dakota Workers' Compensation Act, N.D. Cent. Code Ann. § 65-01-01, *et seq*. (the "Act").

With the goal of protecting the well-being of employees and their families, the North Dakota legislature enacted the Act, a statutory scheme whereby employees may obtain compensation for their workplace injuries, regardless of questions of fault. N.D. Cent. Code Ann. § 65-01-01. The relief that the Act affords to North Dakota employees is complete, and "to the exclusion of every other remedy, proceeding, or compensation, except as otherwise provided in this title, and to that end, ***all civil actions and civil claims for relief for those personal injuries and all jurisdiction of the courts of the state over those causes are abolished*** except as is otherwise provided" in the statute. *Id.* (emphasis added). In other words, "[u]nder the workers' compensation act, an employee generally gives up the right to sue the employer in exchange for sure and certain benefits for all workplace injuries, regardless of fault." *Bartholomay*, 2016 ND at ¶ 6, 881 N.W.2d at 252.

As noted, the rule of workers' compensation exclusivity applies "except as otherwise provided" in the Act.  To that end, the Act contains a single exception to an employer's immunity from civil liability: "an action for an injury to an employee caused by an employer's intentional act done with the conscious purpose of inflicting the injury." N.D. Cent. Code Ann. § 65-01-01.1; *see Scott v. Hydra-Walk, Inc.,* 416 F. Supp. 3d 867, 870 (D. N.D. 2019), *aff'd sub nom. Scott v. Key Energy Servs., Inc.,* 990 F.3d 1101 (8th Cir. 2021).  This statutory exception to workers'

compensation exclusivity "requires both that the employer engage in an 'intentional act' and that the *employer* have a 'conscious purpose of inflicting the injury.'" *Bartholomay*, 2016 ND 138, ¶ 11, 881 N.W.2d at 254 (emphasis added). Thus, the definition relates to the *employer's* intent and purpose, not the intent and purposes of a co-worker or anyone else. Notably, the legislature adopted the above-quoted language in 1999 expressly "to clarify the limited scope of the statutory exception," and "eliminate" the use of a broader standard. *State v. Haskell*, 2017 ND 252, ¶ 9, 902 N.W.2d 772, 775-76 (2017), *citing* 1999 N.D. Sess. Laws ch. 549, § 1; *Hearing on H.B. 1331 Before the House Industry, Business, and Labor Comm.*, 56th N.D. Legis. Sess. (Jan. 19, 1999) (written testimony of David Thiele, Senior Litigation Counsel for North Dakota Workers Compensation Bureau); *Bartholomay*, 2016 ND 138 ¶10, 881 N.W.2d at 253 (amendment clarified prior inconsistency).

Taking to heart the legislature's intent, the North Dakota courts enforce this exception very narrowly, holding that even an employer's failure to protect employees from crime, or an employer's intentional, reckless, culpable, or malicious negligence, are insufficient to impose liability on an employer outside the context of workers' compensation. For example, in *Bartholomay*, the North Dakota Supreme Court affirmed the dismissal of the plaintiff's civil action even though the employer had actual knowledge of the risk of the potential injury (falling off a rail car) and had been cited by OSHA for a "willful" failure to comply with safety laws. In doing so, the Court noted the narrow definition of an "intentional act with a conscious purpose of inflicting the injury":

> Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering employees to perform an extremely dangerous job, willfully failing to furnish a safe place to work, fostering a 'culture' of alcohol use at off-premises, after-hours company events, willfully violating a safety statute, *failing to protect employees from crime*, refusing to respond to an employee's medical needs and restrictions, or withholding information about worksite hazards, the conduct still

falls short of the kind of actual intention to injure that robs the injury of accidental character.

*Bartholomay* 2016 ND 248 at ¶ 10, 881 N.W. at 254 (emphasis added).

Similarly, in *Haskell*, the Supreme Court reversed the trial court's denial of the defendant's summary judgment motion based on the exclusive remedy doctrine, noting the high and difficult standard required to trigger the exception to that rule, and quoting the standard set forth in *Bartholomay*. In *Haskell*, the plaintiff was injured by escaped inmates in the correctional facility where he was employed. *Haskell*, 2017 ND 252, ¶ 2, 902 N.W.2d at 774.  In reversing the trial court, the Court reiterated that "Even if the [employer] knew the [cell] locks were faulty and bound to fail, the legislature's limits on a covered employer's liability" required that the employer to act *purposefully* to cause the injury. 207 ND 252, ¶ 11, 902 N.W.2d at 776.  By alleging that the failure to fix the cell locks caused his injury, the plaintiff essentially alleged that his employer negligently failed to protect him from the crimes of others, which was insufficient to overcome the employer's immunity. *Id.*

Further, the North Dakota District Court in *Rayburn v. Scull Constr. Serv.*, 2017 WL 8682355 *2 (D. N.D. Nov. 7, 2017) dismissed the plaintiff's case by summary judgment, holding that the exception to workers' compensation exclusivity did not apply even though the plaintiff alleged that he was injured due to his employer's knowing failure to provide sufficient training for the uniquely hazardous and dangerous conditions of the job.

These cases, as well as the North Dakota legislature's clear intent and the Act itself, all dictate the dismissal of Plaintiff's state law claims here.  As stated, Plaintiff asserts that the Moving Defendants were negligent and that they are vicariously liable for Rangel's violent conduct; she does *not* allege (nor could she) that the Moving Defendants intentionally hired and retained Rangel for the "conscious purpose of inflicting" injury on her. Thus, even taking all of the allegations in

Plaintiff's First Amended Complaint as true and drawing all reasonable inferences in her favor, there is simply no basis to circumvent the law of workers' compensation exclusivity as to Counts II through VIII of the First Amended Complaint.[2]

## CONCLUSION

The Moving Defendants do not minimize the serious crimes that Rangel committed, nor do they deny that Plaintiff undoubtedly suffered significant harm as a result of those crimes. The plaintiffs in the other cases discussed above also suffered significant harm, but that did not change the result that the law dictated in those cases, nor does it change the result that the law dictates in this case. The rule of workers' compensation exclusivity does not take into account the severity of the employee's injuries.

Taking Plaintiff's First Amended Complaint as true, the Moving Defendants were all her employers, she suffered severe and permanent physical and psychological injuries arising from that employment, and there is no allegation that the Moving Defendants intentionally and purposefully inflicted those injuries. As such, the rule of workers' compensation exclusivity applies, barring Counts II through VIII of that First Amended Complaint. Therefore, the Moving Defendants are entitled to judgment on the pleadings on those Counts.

---

[2] The Moving Defendants do not seek dismissal, based on the state law of workers' compensation exclusivity, as to Count I, which states a purported cause of action under federal law.

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P. C.**

Dated: <u>January 14, 2026</u>

*/s/ Andrew E. Tanick*
Andrew E. Tanick, MN #178573
Capella Tower
225 South Sixth Street, Suite 1800
Minneapolis, MN 55402
Telephone: 612-339-1818
Facsimile: 612-339-0061
andrew.tanick@ogletree.com

Jasmine Y. McCormick, MO #66386
7700 Bonhomme Ave, Suite 650
St. Louis, Missouri 63105
Telephone: 314-802-3935
Facsimile: 314-802-3936
jasmine.mccormick@ogletree.com

**Attorneys for Defendants GRB Investments, LLC, GRB Subway Properties, LLP, Midwest Subway Development, LLP, Brent Olson, Peter Knoff, and John Clark**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was filed electronically with the court using the CM/ECF system on this 14th day of January, 2026 and was thereby served upon all counsel of record.

*/s/ Andrew E. Tanick*

10